**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| JESSE HAMMONS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:20-cv-02088-ELH |
| | ) | |
| UNIVERSITY OF MARYLAND MEDICAL SYSTEM | ) | **ORAL ARGUMENT** |
| CORPORATION, et al. | ) | **REQUESTED** |
| | ) | |
| Defendants. | ) | |
| | ) | |

**<u>MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS</u>**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................1

BACKGROUND .................................................................................................................4

STANDARD .......................................................................................................................8

ARGUMENT ......................................................................................................................8

    I.      Hammons Lacks Standing To Sue The Medical System For His Surgeon's Mis-Scheduled Procedure. ..............................................................8

    II.     Hammons Cannot Sue The Medical System For Alleged Constitutional Violations.............................................................................12

        A.      The Medical System Is A Private Corporation That Could Not Have Violated Hammons' Constitutional Rights................................12

        B.      If The Medical System Were A State Actor, Hammons' Claims Would Be Barred by Sovereign Immunity In Any Event. ...................16

    III.    Hammons Has Failed To Allege A Viable Establishment Clause Claim. ...........................................................................................................16

    IV.    Hammons Has Failed To Allege A Viable Equal Protection Claim...............19

    V.     Hammons' ACA Claim Fails As A Matter Of Law. .........................................21

CONCLUSION .................................................................................................................22

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Agostini v. Felton*,
    521 U.S. 203 (1997)...................................................................................................18

*Am. Legion v. Am. Humanist Assoc.*,
    139 S. Ct. 2067 (2019)..............................................................................................17

*Am. Mfrs. Mut. v. Sullivan*,
    526 U.S. 40 (1999)....................................................................................................12

*Beckham v. Nat'l R.R. Passenger Corp.*,
    569 F. Supp. 2d 542 (D. Md. 2008)..........................................................................16

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)....................................................................................................8

*Bishop v. Bartlett*,
    575 F.3d 419 (4th Cir. 2009) .....................................................................................9

*Borkowski v. Baltimore Cnty.*,
    414 F. Supp. 3d 788 (D. Md. 2019) .........................................................................16

*Bradfield v. Roberts*,
    175 U.S. 291 (1899)............................................................................................18, 19

*Briscoe v. Health Care Service Corp.*,
    281 F. Supp. 3d 725 (N.D. Ill. 2017) .......................................................................21

*Buxton v. Kurtinitis*,
    862 F.3d 423 (4th Cir. 2017) ...................................................................................17

*Clark v. Md. Dep't of Public Safety & Corr'l Servs.*,
    316 F. App'x 279 (4th Cir. 2009) .............................................................................16

*Collier v. Barnhart*,
    473 F.3d 444 (2d Cir. 2007)................................................................................20, 21

*Colon Health Centers of Am., LLC v. Hazel*,
    733 F.3d 535 (4th Cir. 2013) ...................................................................................21

*Doe v. Obama*,
    631 F.3d 157 (4th Cir. 2011) .....................................................................................9

*Doe v. Va. Dep't of State Police*,
713 F.3d 745 (4th Cir. 2013) .................................................................12

*Equity in Athletics, Inc. v. Dep't of Educ.*,
639 F.3d 91 (4th Cir. 2011) ...................................................................19

*Florida Audubon Soc. v. Bentsen*,
94 F.3d 658 (D.C. Cir. 1996) ..................................................................9

*Freilich v. Upper Chesapeake Health, Inc.*,
313 F.3d 205 (4th Cir. 2002) .................................................................20

*Freilich v. Upper Chesapeake Health, Inc.*,
142 F. Supp. 2d 679 (D. Md. 2001) .......................................................21

*Friends of Ferrell Parkway, LLC v. Stasko*,
282 F.3d 315 (4th Cir. 2002) ............................................................9, 12

*Fulani v. Brady*,
935 F.2d 1324 (D.C. Cir. 1991) .............................................................12

*GBA Assoc's. v. Gen. Services Admin.*,
32 F.3d 898 (4th Cir. 1994) ...................................................................11

*Glassman v. Arlington Cnty, Va.*,
628 F.3d 140 (4th Cir. 2010) ...........................................................17, 18

*Glassman v. Arlington Cnty, Va.*,
2010 WL 1488515 (E.D. Va. Apr. 12, 2010) ....................................17, 19

*Kerpen v. Metro. Washington Airports Authority*,
907 F.3d 152 (4th Cir. 2018) .................................................................15

*Lane v. Anderson*,
660 F. App'x 185 (4th Cir. 2016) ..........................................................16

*Lane v. Holder*,
703 F.3d 668 (4th Cir. 2012) ......................................................9, 10, 11

*Larkin v. Grendel's Den, Inc.*,
459 U.S. 116 (1982) ...............................................................................18

*Lawson v. Green*,
2017 WL 3638431 (D. Md. Aug. 23, 2017) ...........................................16

*Lebron v. Nat'l R.R. Passenger Corp.*,
513 U.S. 374 (1995) ..........................................................................14, 15

*Lemon v. Kurtzman,*
    403 U.S. 602 (1971)..................................................................................................17

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992)....................................................................................................9

*McInnes v. Lord Baltimore Empl. Retirement Income Account Plan,*
    823 F. Supp. 2d 360 (D. Md. 2011) ...........................................................................8

*Md. Minority Contractor's Ass'n., Inc. v. Md. Stadium Authority,*
    70 F. Supp. 2d 580 (D. Md. 1998) .....................................................................19, 20

*Meadows v. Atencio,*
    2020 WL 2797787 (D. Idaho May 29, 2020) ..........................................................22

*Meridian Investments, Inc. v. Fed. Home Loan Mortg. Corp.,*
    855 F.3d 573 (4th Cir. 2017) ...................................................................................15

*Mescall v. Burrus,*
    603 F.2d 1266 (7th Cir. 1979) .................................................................................20

*Middlebrooks v. Univ. of Md. at College Park,*
    980 F. Supp. 824 (D. Md. 1997) ..............................................................................16

*Minton v. Dignity Health,*
    Case No. 17-55829 (Sup. Ct. San Fran. Cnty. Apr. 19, 2017)..................................1

*Mirant Potomac River LLC v. EPA,*
    577 F.3d 223 (4th Cir. 2009) ...................................................................................12

*Modaber v. Culpeper Mem. Hospital, Inc.,*
    674 F.2d 1023 (4th Cir. 1982) .................................................................................13

*Moore v. Williamsburg Regional Hosp.,*
    560 F.3d 166 (4th Cir. 2009) .............................................................................12, 13

*Morrison v. Garraghty,*
    239 F.3d 648 (4th Cir. 2001) ...................................................................................19

*Moss v. Spartansburg Cnty. School Dist. Seven,*
    683 F.3d 599 (4th Cir. 2012) ...................................................................................17

*Napata v. Univ. of Md. Med. Sys. Corp.,*
    12 A.3d 144 (Md. 2011) ...........................................................................................14

*New York v. U.S. Dep't of Health & Human Servs,*
    414 F. Supp. 3d 475 (S.D.N.Y. 2019)......................................................................22

*Oh. Nurses Assoc. v. Ashtabula Cnty. Medical Center*,
   2020 WL 4390524 (N.D. Oh. July 31, 2020) .......................................................21

*Pense v. Md. Dep't of Public Safety & Correc'l Servs.*,
   926 F.3d 97 (4th Cir. 2019) ...............................................................................16

*Philips v. Pitt Cnty. Mem. Hosp.*,
   572 F.3d 176 (4th Cir. 2009) ...........................................7, 8, 12, 13, 14, 15

*Samuel v. Hogan*,
   2018 WL 1243548 (D. Md. Mar. 9, 2018)......................................................20, 21

*Schiffbauer v. Schmidt*,
   95 F. Supp. 3d 846 (D. Md. 2015) .................................................................19, 20

*Simon v. East. Kentucky Welfare Rights Org.*,
   426 U.S. 26 (1976)...........................................................8, 9, 10, 11, 12

*Smith v. Jefferson Cnty. Bd. of School Com'rs*,
   788 F.3d 580 (6th Cir. 2015) .......................................................17, 18, 19

*Spokeo, Inc. v. Robins*,
   136 S. Ct. 1540 (2016)....................................................................................9

*Sylvia Dev. Corp. v. Calvert Cnty. Md.*,
   48 F.3d 810 (4th Cir. 1995) ...........................................................................19, 20

*Van Orden v. Perry*,
   545 U.S. 677 (2005).........................................................................................17

*Walker v. Azar*,
   2020 WL 4749859 (E.D.N.Y. Aug. 17, 2020).................................................22

*Walker v. Univ. of Maryland Medical Syst. Corp.*,
   No. CCB-12-3151 (D. Md. May 30, 2013)......................................................13

*Walters v. McMahen*,
   684 F.3d 435 (4th Cir. 2012) ...........................................................................8

*Walz v. Tax Comm'n*,
   397 U.S. 664 (1970).........................................................................................17

*Weinreb v. Xerox Bus. Servs., LLC Health & Welfare Plan*,
   323 F. Supp. 3d 501 (S.D.N.Y. 2018)..........................................................21, 22

*White Tail Park, Inc. v. Stroube*,
   413 F.3d 451 (4th Cir. 2005) ...........................................................................8

*Whitman-Walker Clinic, Inc. v. U.S. Dep't of Health & Human Servs.*,
    2020 WL 5232076 (D.D.C. Sept. 2, 2020) ...............................................................22

*Will v. Michigan Dep't of State Police*,
    491 U.S. 58 (1989) ...........................................................................................................16

*Wood v. Arnold*,
    915 F.3d 308 (4th Cir. 2019) .....................................................................................17, 18

*Ex Parte Young*,
    209 U.S. 123 (1908).........................................................................................................16

*Zeno v. Maryland*,
    2009 WL 3766065 (D. Md. Nov. 9, 2009) ....................................................................20

## Statutes & Other Authorities

U.S. Const. amend. XI .....................................................................................................16

42 U.S.C § 18116.............................................................................................................21

49 U.S.C. § 24307............................................................................................................15

49 U.S.C. § 24311............................................................................................................15

49 U.S.C. § 24321............................................................................................................15

84 Fed. Reg. 23170-01, 2019 WL 2174213 (May 21, 2019)..........................................22

85 Fed. Reg. 37160-01, 2020 WL 3298450 (June 19, 2020)...........................................22

Md. Code Educ. § 13-301 ..........................................................................................5, 13

Md. Code Educ. § 13-302 .....................................................................................4, 5, 13

Md. Code Educ. § 13-303 .........................................................................5, 13, 15, 20

Md. Code Educ. § 13-304 .........................................................................................6, 14

Md. Code Educ. § 13-308 ...............................................................................................16

Md. Code Educ. § 13-310 ..........................................................................................5, 13

Md. Code State Gov't § 12-103 ......................................................................................16

Defendants University of Maryland Medical System Corporation, UMSJ Health System, LLC, and University of Maryland St. Joseph Medical Center, LLC (collectively, the "Medical System"), move to dismiss Plaintiff Jesse Hammons' Complaint.

## INTRODUCTION

Hammons' lawsuit mistakenly targets the Medical System, which proactively supports transgender rights and is committed to providing them with exceptional healthcare, because one of its many hospitals (University of Maryland St. Joseph Medical Center, or "St. Joseph") carries on its century-old Catholic tradition to serve a population who otherwise would not have ready access to vital hospital services.  Despite the charged nature of Hammons' allegations and sweeping claims, this case is thus not about denial of care for transgender individuals.  The Medical System has a Transgender Health Program and is committed to meeting the unique medical needs of transgender individuals.  Instead, Hammons brings this case to have a federal court extinguish the Catholic legacy that St Joseph carries on to ensure patients in the North Baltimore region have access to hospital care *they* need.[1]

The Medical System is a private, non-profit healthcare system and one of the largest private employers in Maryland.  It owns and operates 13 hospitals, as well as hundreds of physician offices and treatment facilities, and provides urgent care services, outpatient occupational therapy services, rehabilitation services, home health care services, and physician services across diverse medical specialties.  Among other services, the Medical System provides trans-specific treatments, including counseling, primary healthcare, and customized case

---

[1]  This case is one of a number of test cases brought by plaintiffs working with the American Civil Liberties Union to prevent Catholic hospitals from abiding the Church's ethical and religious directives – a.k.a., the ERDs.  *See, e.g.*, *Minton v. Dignity Health*, Case No. 17-55829 (Sup. Ct. San Fran. Cnty. Apr. 19, 2017).

management to help these patients "feel more comfortable in their own skin."[2]  These services

are available to all of its patients across the Medical System – including Hammons.

St. Joseph, which is now a juridically-distinct subsidiary of the Medical System, was

founded as a Catholic hospital over one hundred years ago and is a "treasured" community

resource serving "the sick and needy" of the North Baltimore region.[3]  Annually, St. Joseph

handles over 16,000 patient admissions, 33,000 emergency visits, and almost 120,000 outpatient

visits.[4]  As part of its mission, St. Joseph operates diverse community outreach programs to

provide, among other community benefits, free primary care to uninsured and low-income

patients.  The estimated value of those benefits is nearly $50 million annually.

In 2012, the Medical System acquired St. Joseph when financial challenges would have

otherwise forced it to close its doors and thereby deprive tens of thousands of patients in the

North Baltimore region of local (and for many, free) hospital care.  When the Medical System

added St. Joseph to its network, however, it permitted St. Joseph to continue to operate according

to its historic Catholic legacy, including by requiring medical staff and surgeons with admitting

privileges to adhere to the *Ethical & Religious Directives for Catholic Health Care Services*,[5]

---

[2]  *See* Univ. of Md. Children's Hosp., *Transgender Family Health Services*, https://www.umms.org/childrens/health-services/adolescent-young-adult-medicine/transgender-family-health-services (last visited Sept. 24, 2020).

[3]  *See* Thomas B. Smyth, MD, *Message to Our Community*, Univ. of Md. St. Joseph Med. Ctr., https://www.umms.org/sjmc/community/message-to-our-community (last visited Sept. 24, 2020).

[4]  *See* Univ. of Md. St. Joseph Med. Ctr, *Fact Sheet* (Feb. 2019), https://www.umms.org/sjmc/-/media/files/um-sjmc/about/fact-sheet/sjmc-fact-sheet-2020.pdf?upd=20200114205354&la=en&hash=C096D363F94E7749C9288539872718FD3C0B062F.

[5]  ETHICAL & RELIGIOUS DIRECTIVES FOR CATHOLIC HEALTH CARE SERVICES, U.S. CONFERENCE OF CATHOLIC BISHOPS (6th ed. 2018), https://www.usccb.org/about/doctrine/ethical-and-religious-directives/upload/ethical-religious-directives-catholic-health-service-sixth-edition-2016-06.pdf ("ERDs").

also known as the ERDs.  Among other guidelines, the ERDs generally prohibit the performance

of procedures that result in sterilization or impact the functional integrity of the human body,

regardless of gender or gender identity.  While such procedures generally may not be performed

at St. Joseph, they may be performed at other facilities within the Medical System.

Hammons alleges he suffers from gender dysphoria and his physicians recommended a

hysterectomy as treatment.  His surgeon, who has privileges at St. Joseph and other facilities

within the Medical System, scheduled his procedure at St. Joseph, even though he *agreed* not to

perform such procedures there in return for medical staff privileges.  And when Hammons'

procedure did not go forward at St. Joseph, he alleges he suffered pre-operative costs and

emotional distress – and now blames the Medical System.  But Hammons' attempt to convert his

surgeon's mis-scheduling of his procedure into grave constitutional and federal violations falls

short for obvious and fundamental reasons.

The Court need not – and cannot – entertain the merits of Hammons' claims because he

lacks standing to assert them against the Medical System.  Based on his own allegations,

Hammons' injuries flow directly from his surgeon's decision to schedule a procedure at St.

Joseph that he freely agreed not to perform there.  Because Hammons' alleged injuries are the

direct result of his own surgeon's mis-scheduling – not St. Joseph's Catholic legacy – they

cannot be redressed through claims against the Medical System either.  Without standing, this

Court is without jurisdiction to take up Hammons' case.

But even if Hammons had standing to sue the Medical System, his central claims are

premised on a fatal paradox.  At the same time that Hammons alleges that the Medical System, a

private corporation, is an "arm" of Maryland and therefore can be charged with constitutional

violations, he alleges the Medical System cannot claim any sovereign immunity as a bar to such

claims because it is a private corporation.  That cake-and-eat-it-too theory – the Medical System is both a state actor and a private corporation – makes no sense.  It is also contradicted by his allegations and relevant law.  The Medical System is indeed a private corporation – not a state actor, or a private entity with a "close nexus" to Maryland – that cannot be accused of violating Hammons' constitutional rights.  But if Hammons could allege such claims, they would be barred by sovereign immunity.

While the Court need not wade into Hammons' claims, they fail to state any plausible violation of his constitutional or federal rights in any event.  The Medical System has not unconstitutionally promoted any religion, or engaged in any impermissible "excessive entanglements" with the Catholic Church, simply by acquiring St. Joseph and allowing it to continue its Catholic legacy.  Hammons offers none of the specific factual allegations required for him to move forward with his claim.  Nor has he alleged a plausible violation of the Equal Protection Clause.  Because the ERDs apply to all patients of St. Joseph across the board, Hammons has not, and indeed cannot, allege the Medical System intentionally discriminated against him on the basis of sex.  Hammons' claim for violation of Section 1557 of the Affordable Care Act ("ACA") fails for the very same reason.

The Court should grant the Medical System's Motion.

## BACKGROUND

***Medical System.***  The Medical System is a private, not-for-profit corporation providing comprehensive healthcare services through an integrated network of hospitals and clinical enterprises.  While the Medical System was once government-run, that approach proved "unnecessarily costly and administratively cumbersome" and produced patient care of declining quality.  Md. Code Educ. § 13-302(5).  To address those issues, the General Assembly privatized the Medical System to provide patients "the highest quality patient care" with "maximum

-4-

efficiency." *Id.* § 13-302(8).  In doing so, it created a "private, nonprofit, nonstock corporation" formed under Maryland's general corporation laws "independent from any State agency," and transferred all of the medical system's assets to that corporation.  *Id.* §§ 13-301(m) & 13-303(m); *see id.* § 13-302(7).

As a private entity, the Medical System enjoys all the powers of a Maryland corporation, including "the power to convey, lease, mortgage, encumber, and otherwise deal with all its assets." *Id.* § 13-303(b).  It is not "subject to any provisions of law affecting only governmental or public entities," and its internal affairs and funding are entirely independent of Maryland.  *Id.* § 13-303(a)(2).  It has separate "operations, revenues, and obligations" and does not depend on state funding or other intervention.  *Id.* § 13-302(6).  It also lacks any sovereign powers, and cannot bind Maryland or incur debts or obligations on its behalf.  *See id.* § 13-310.  It must pay all obligations and judgments out of its own assets.  *See id.*

Today, the Medical System is one of the largest private employers in Maryland and operates a regional medical system comprised of 13 hospitals with over 150 affiliate physician offices.[6]  It provides wide-ranging healthcare services "without discrimination based upon race, creed, sex, or national origin." *Id.* § 13-303(d).  Among its many services, it has a Transgender Health Program "dedicated" to helping transgender individuals "explore medical treatment options surrounding gender identity."[7]  That program provides transgender individuals counseling, primary healthcare, and customized case management.

While the Medical System is governed by a Board of Directors composed of voting and non-voting members, the Board is not involved in the day-to-day affairs of the Medical System.

---

[6]  *See* Univ. of Md. Med. Sys., *About Us*, https://www.umms.org/about (last visited Sept. 24, 2020).
[7]  *See supra* note 2.

*Id.* § 13-304; Complaint ("Cmplt.") ¶ 20.  No state or local elected official may serve on the Board.  *See* Md. Code Educ. §13-304(c)(2).

 ***St Joseph.***  St. Joseph is a Catholic acute care hospital founded in 1864 that has served the North Baltimore region since 1965.[8]  Its stated mission is to "care for [the] broad community" and provide first-class care.[9]  Over the course of a year, St. Joseph handles more than 16,000 patient admissions, 33,000 emergency visits, and almost 120,000 outpatient visits.[10]  St. Joseph also operates diverse outreach programs to provide community benefits, including free primary care to uninsured and low-income patients, valued at nearly $50 million annually.[11]

 In 2012, St. Joseph faced financial challenges that would have forced it to close its doors.  Cmplt. ¶ 26.  To prevent that outcome – which would have resulted in tens of thousands of patients losing local hospital care – the Medical System acquired St. Joseph and integrated it into its system.  *Id.* ¶¶ 26, 33 & 36; *see id.* ¶ 37 n.20 at 95–96.[12]  When it did so, it allowed St. Joseph to continue its century-old "Catholic healthcare traditions of loving service and compassionate care."[13]  While surgeons must "agree to abide" the ERDs to obtain privileges at St. Joseph, a patient in need of a procedure not available at St. Joseph can obtain it at another facility within the Medical System.  *Id.* ¶ 28.

 The ERDs disfavor procedures that "render procreation impossible," including "direct sterilization of either men or women."  ERDs at 16 & ¶ 53.  Such procedures may be performed

---

[8]  *See* Univ. of Md. St. Joseph Med. Ctr., *About UM SJMC*, https://www.umms.org/sjmc/about (last visited Sept. 24, 2020).
[9]  *See supra* note 3.
[10]  *See supra* note 4.
[11]  *See id.*
[12]  *See* UMSJ Health System, LLC, *IRS* e-file *Signature Authorization for an Exempt Organization,* Form 8879-EO (2017), https://hscrc.maryland.gov/Documents/public-interest/IRS%20990%20-%202017/FY18_UMSJHS_FORM%20990.pdf at 95-96.
[13]  *See supra* note 8.

"when their direct effect is the cure or alleviation of a present and serious pathology and a simpler treatment is not available." *Id.* ¶ 53.  The ERDs also favor preserving the "functional integrity" of the human body, but that "may be sacrificed" to maintain a patient's health or life. *Id.* ¶ 29.  In accordance with the ERDs, hysterectomies and vasectomies are generally not performed at St. Joseph.

**Hammons' Allegations.**  Hammons is transgender; his biological sex is female but he identifies as male.  Cmplt. ¶ 51.  Hammons alleges that he was diagnosed with gender dysphoria and his physicians recommended a hysterectomy as treatment.  *Id.* ¶ 52.

While Hammons' surgeon agreed not to perform hysterectomies at St. Joseph, he nevertheless scheduled Hammons' procedure there.  *Id.* ¶¶ 2 & 28.[14]  When his procedure did not go forward at St. Joseph, Hammons voluntarily delayed obtaining it elsewhere, and alleges he incurred pre-operative costs and suffered continued gender dysphoria.  *Id.* ¶¶ 56–60.[15]

He alleges that the Medical System is responsible for those alleged injuries, which resulted from its violation of his constitutional rights and federal law.  *Id.*  He alleges the Medical System violated the Establishment Clause by purchasing St. Joseph and agreeing to "operate the hospital as a Catholic institution."  *Id.* ¶¶ 35, 62 & 66–67.  He alleges the Medical System violated his right to Equal Protection because his procedure could have been performed

---

[14]  *See* Morgan Eichensehr, *ACLU Sues UMMS Hospital for Allegedly Refusing Care to Transgender Man*, Baltimore Bus. J. (July 17, 2020), https://www.bizjournals.com/baltimore/news/2020/07/17/aclu-sues-towsons-um-st-joseph-medical-center.html.

[15]  Hammons voluntarily delayed having his hysterectomy until June 2020.  Cmplt. ¶ 60.  As publicly reported, which the Court may take notice of, he did so for personal reasons.  *See* Samantha Schmidt, *Transgender Man Sues University of Maryland Hospital After It Canceled His Hysterectomy*, Wash. Post (July 17, 2020), https://www.washingtonpost.com/dc-md-va/2020/07/17/transgender-hysterectomy-lawsuit-maryland/; *Philips v. Pitt Cnty. Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

at St. Joseph if it "had been prescribed as medically necessary treatment for a condition other than gender dysphoria."  *Id.* ¶¶ 74–78.  And Hammons alleges the Medical System violated the ACA by failing to perform his hysterectomy at St. Joseph.  *Id.* ¶ 89.

## STANDARD

The Medical System's Motion is governed by familiar rules.  Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, a court will dismiss a complaint for lack of subject matter jurisdiction if a plaintiff lacks standing.  *See McInnes v. Lord Baltimore Employee Retirement Income Account Plan*, 823 F. Supp. 2d 360, 362 (D. Md. 2011).  Faced with a motion to dismiss for want of standing, the plaintiff bears the burden of demonstrating otherwise.  *See White Tail Park, Inc. v. Stroube*, 413 F.3d 451, 459 (4th Cir. 2005).

Under Rule 12(b)(6), a court will dismiss a complaint where the plaintiff fails to allege facts that "state a plausible claim" for relief.  *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012).  To avoid dismissal on this ground, a plaintiff must allege "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action[ ]."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Walters*, 684 F.3d at 439.  The Court need not "accept the plaintiff's legal conclusions" or "unwarranted inferences, unreasonable conclusions, or arguments" either.  *Philips*, 572 F.3d at 180.  On application of these standards, the Court should dismiss Hammons' Complaint.

## ARGUMENT

I.  **Hammons Lacks Standing To Sue The Medical System For His Surgeon's Mis-Scheduled Procedure.**

Hammons' claims should be dismissed because he is without Article III standing to assert any against the Medical System.  That requirement is "fundamental to the judiciary's proper role in our system of government," *Simon v. East. Kentucky Welfare Rights Org.*, 426 U.S. 26, 37–38

-8-

(1976), and ensures our federal courts entertain only those disputes they can appropriately resolve, *Doe v. Obama*, 631 F.3d 157, 160 (4th Cir. 2011).  To come within that "fundamental limit" on this Court's constitutional jurisdiction, Hammons must show an injury directly "traceable" to the action he challenges that would be redressed by a favorable decision.  *Lane v. Holder*, 703 F.3d 668, 673 (4th Cir. 2012); *see Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  But here, Hammons' alleged injuries are neither traceable to the Medical System nor redressed by a favorable decision in his suit.  For this basic failure alone, the Court should dismiss his suit.

*First*, Hammons' injuries are *not* directly traceable to the Medical System.  The requirement that an injury be traceable to a challenged action is a critical linchpin in the standing analysis because it ensures the plaintiff sues the right party.  *See Florida Audubon Soc. v. Bentsen*, 94 F.3d 658, 663–64 (D.C. Cir. 1996).  A plaintiff's injury is not traceable to a defendant's action when the alleged injury is caused by an "independent action of some third party not before the court."  *Bishop v. Bartlett*, 575 F.3d 419, 425 (4th Cir. 2009); *see Simon*, 426 U.S. at 40–42.  Nor is it so when an "intermediary stands directly between the plaintiffs and the challenged conduct."  *Lane*, 703 F.3d at 673–674.  Instead, a plaintiff must show a "causal connection" between his injuries and the defendant's actions, *Lujan*, 504 U.S. at 560; *Friends of Ferrell Parkway, LLC v. Stasko*, 282 F.3d 315, 320 & 324–26 (4th Cir. 2002), which is "substantially more difficult" when a plaintiff's alleged harm arises from regulation of a third party's conduct, *Lane*, 703 F.3d at 674.

Here, it is clear from the face of the Complaint that Hammons' alleged injuries are not traceable to the Medical System.  He alleges that he incurred costs and suffered alleged emotional distress when his surgery did not go forward as scheduled at St. Joseph.  But those

alleged injuries do not flow from St. Joseph's Catholic legacy; instead, they stem directly from his surgeon's mis-scheduling a procedure that he knew could not be performed at St. Joseph. Hammons cannot try to fit the Medical System into the direct causal chain between his injuries and his surgeon's independent action by pointing to the fact that his surgeon voluntary agreed to comply with the ERDs when accepting admitting privileges at St. Joseph.  Cmplt. ¶¶ 28, 53 & 59–60.  St. Joseph's "regulation" of his surgeon's conduct was a voluntary agreement entered by his surgeon, and his surgeon's failure to abide that agreement does not give Hammons standing to sue St. Joseph for his surgeon's conduct.  *See Lane*, 703 F.3d at 673–74.

Where, as here, a plaintiff seeks redress for injuries allegedly flowing from a third party's conduct, rather than the defendant's, courts readily find that intermediary's action breaks the causal "traceability" chain and deprives the plaintiff of standing.  *See id.*; *Simon*, 426 U.S. at 40–42.  For example, in *Simon*, the plaintiffs alleged the government violated federal law by extending tax benefits to hospitals that refused to provide care based on indigent status.  *See Simon*, 426 U.S. at 33.  But the Supreme Court held the plaintiffs lacked standing to sue the government, because it was the hospitals (not the government) that had supposedly denied them care.  *See id.* at 41.  As the Court explained, the plaintiffs' injuries were traceable to the individual decisions of the relevant hospitals, not the government's extension of tax benefits to them.  *See id.* at 41–42.  As such, the plaintiffs did not have standing to sue the government based on "injury at the hands" of third-party hospitals.  *Id.* at 41.

The same reasoning applies with full force here.  Just as the plaintiffs in *Simon* could not sue the government for violating federal law for independent actions taken by third-party hospitals, Hammons cannot sue the Medical System or St. Joseph based on the independent action of his surgeon to mis-schedule a procedure at a hospital where the surgeon agreed not to

perform the procedure, when the surgeon could have scheduled the procedure at any other hospital within the Medical System.

The Fourth Circuit reached the same, on-point conclusion in *Lane*.  There, the plaintiffs alleged a gun control law resulted in dealers charging plaintiffs additional fees on their firearm purchases.  *Lane*, 703 F.3d at 671.  But the court held the plaintiffs lacked standing to sue the government because their alleged injuries were traceable to the dealers that independently charged them more fees.  *Id.* at 673–74.  Because the plaintiffs' alleged injuries were "not directly linked to the challenged law," they were not traceable to the defendant.  *Id.* at 674.

As in *Simon* and *Lane*, here, Hammons' alleged injuries are traceable to his surgeon's mis-scheduling his procedure at a hospital where he agreed not to perform it, *not* St. Joseph's Catholic legacy.  All of Hammons' alleged injuries – delay, costs, and emotional distress – are "directly linked" to his surgeon's conduct, *not* to St. Joseph's ERDs.  Cmplt. ¶¶ 2 & 27–29; *Lane*, 703 F.3d at 673–74; *Simon*, 426 U.S. at 41.[16]  Indeed, if Hammons' surgeon had mis-scheduled his procedure at another medical hospital at which the surgeon did not have clinical privileges, no one would think Hammons would have standing to sue that hospital (instead of his surgeon) for any delay caused by the procedure not going forward there.  That commonsense reality does not change just because St. Joseph happens to maintain its Catholic heritage.

*Second*, because there is no direct causal link between Hammons' alleged injuries and the Medical System, his injuries also would not be redressed by a favorable outcome in this suit. That is because an injury "must result from the actions" of the defendant to be redressable, "not

---

[16]  Hammons delayed rescheduling his procedure for personal reasons as well, and thus has no standing to pursue relief against the Medical System for delays (and associated costs and distress) of his own making.  *See GBA Assoc's. v. Gen. Services Admin.*, 32 F.3d 898, 901 (4th Cir. 1994).

from the actions of a third party." *Doe v. Va. Dep't of State Police*, 713 F.3d 745, 755 (4th Cir. 2013); *see Simon*, 426 U.S. at 41–42; *Fulani v. Brady*, 935 F.2d 1324, 1330 (D.C. Cir. 1991). But here, Hammons' alleged injuries resulted from the actions of a third party: his surgeon's mis-scheduling of his procedure. *See Stasko*, 282 F.3d at 320; *Mirant Potomac River LLC v. EPA*, 577 F.3d 223, 226 (4th Cir. 2009). Forcing St. Joseph to abandon its Catholic legacy would thus not redress injuries that his surgeon caused.

## II.     Hammons Cannot Sue The Medical System For Alleged Constitutional Violations.

Even if Hammons had standing to sue the Medical System – which he does not – his central claims are premised on a fatal paradox. He alleges the Medical System is an "arm" of Maryland, while at the same alleging it is a private corporation not entitled to sovereign immunity. Cmplt. ¶¶ 35, 62–64 & 70–72. Hammons cannot have it both ways, of course, and the reality is he has sued a private corporation (rather than some state official) that is not subject to any liability under Section 1983 or the Fourteenth Amendment. But even if it were a state actor – as Hammons theorizes – his claims would then be barred by sovereign immunity.

### A.     The Medical System Is A Private Corporation That Could Not Have Violated Hammons' Constitutional Rights.

Hammons brings his constitutional claims against a private corporation, the Medical System, not any Maryland official. But to state a claim under Section 1983, a plaintiff must allege the defendant deprived him of a constitutional right "under color of state law." *Am. Mfrs. Mut. v. Sullivan*, 526 U.S. 40, 50 (1999); *Philips*, 572 F. 3d at 180. A plaintiff cannot target "merely private conduct." *Philips*, 572 F.3d at 181.[17] That is all Hammons does though. He correctly alleges the Medical System is a private corporation, "independent from any State

---

[17]   The same analysis for assessing whether an action was taken "under color of state law" also applies for purposes of the Fourteenth Amendment. *See Moore v. Williamsburg Regional Hosp.*, 560 F.3d 166, 178 (4th Cir. 2009); Cmplt. ¶¶ 62–63 & 70–71.

agency." Md. Code Educ. §§ 13-301(m) & 13-303(a)(2) & (m); *see Walker v. Univ. of Maryland Medical Syst. Corp.*, No. CCB-12-3151, at *1 n.1 (D. Md. May 30, 2013); Cmplt. ¶¶ 64 & 72. The Medical System manages its own affairs and maintains separate "operations, revenues, and obligations" from Maryland. Md. Code § 13-302(6)–(7). It has no governmental powers, and cannot bind Maryland or incur debts or obligations on its behalf. *See id.* § 13-310. Given its legal separation and independence from Maryland, and lack of any "attributes of sovereignty," the Medical System is a private, not state, actor. *Philips*, 572 F.3d at 183–85; *see Moore*, 560 F.3d at 168–69 & 178–79.

Because the Medical System is a private actor, Hammons' claims may only proceed against the Medical System if there is some "close nexus" between Maryland "and the challenged action of the regulated entity." *Moore*, 560 F.3d at 179. That kind of "close nexus" exists where the private actor exercises powers "exclusively reserved to the state," shares the "rewards and responsibilities of a private venture with the state," or the state has "directed or encouraged" the challenged act. *Modaber v. Culpeper Mem. Hospital, Inc.*, 674 F.2d 1023, 1025 (4th Cir. 1982). But Hammons alleges no such "close nexus" here, and it is clear there is not one. He does not allege the Medical System exercises any powers "exclusively reserved" to Maryland; it does not. *Id.* at 1026 (holding healthcare is not a power "traditionally" reserved to the state). He does not allege Maryland receives any profits or other benefits from the Medical System; it does not. *Id.* And he does not allege Maryland is involved in any way with scheduling of procedures at St. Joseph; it is not. *See id.* at 1027.

Hammons alleges Maryland has "ultimate authority and control" over the Medical System because the Governor appoints its board members. Cmplt. ¶¶ 20–22. But, as the Fourth Circuit made clear in *Philips*, the fact a private entity has government appointees as board

members does not convert a private entity's conduct into state action.  572 F.3d at 183–84.
There, a doctor asserted a Section 1983 due process claim against a hospital with board members
exclusively appointed by two governmental entities.  *Id.* at 178–79 & 183–84.  Despite having
government-appointed board members, the Fourth Circuit held, at the pleading stage, the hospital
was not a state actor because the plaintiff did not allege the "appointing governmental entities
played any role in the specific decision" to suspend his privileges, or were acting within the
scope of official state duties.  *Id.* at 183–84.  So, too, here, Hammons has not alleged any board
members played any role whatsoever in relevant decision-making at St. Joseph, or that any such
decision-making is among their official duties.  They are not: the Medical System's board
members, by law, play no role in its day-to-day affairs.  *See* Md. Code Educ. § 13-304.

Even though bare legal conclusions cannot masquerade as factual allegations, *Philips*,
572 F.3d at 180, Hammons alleges the Medical System is a state actor based on the holdings of
*Napata v. Univ. of Md. Med. Sys. Corp.*, 12 A.3d 144 (Md. 2011), and *Lebron v. Nat'l R.R.
Passenger Corp.*, 513 U.S. 374 (1995).  Cmplt. ¶¶ 22 & 24.  But neither of these cases holds the
Medical System is a state actor for claims under Section 1983 or the Fourteenth Amendment, and
they are properly distinguished for obvious reasons.  While the court in *Napata* concluded that
the University of Maryland Medical System Corporation was an instrumentality of the state for
purposes of complying with Maryland's Public Information Act, its decision turned on the
meaning of the term "instrumentality" as defined in that statute.  *See Napata*, 12 A.3d at 149.
The *Napata* court did not have any reason to consider whether the University of Maryland
Medical System Corporation was a state actor for purposes of Section 1983, and thus did not
even analyze the issue under governing law.  *Napata*'s holding that the University of Maryland
Medical System Corporation was an "instrumentality" under Maryland's public records statute

-14-

thus cannot reasonably be read to mean that the court also held that the entire Medical System is a state actor that can be charged with violating federal constitutional provisions under Section 1983, especially where that issue was not presented and the court necessarily did not consider it.

*Lebron* is even further afield, as the Fourth Circuit has recognized by its limited reliance on that case.[18]  In *Lebron*, the Court held Amtrak was part of the federal government for First Amendment purposes because the government exerted control over Amtrak's affairs as its primary stockholder and "as a policymaker."  513 U.S. at 399.  The federal government is indeed heavily involved in and exerts extensive control over Amtrak's affairs.  *See, e.g.*, 49 U.S.C. §§ 24307 & 24321.  It also owns and enjoys full voting power for all of Amtrak's preferred stock.  *See Lebron*, 513 U.S. at 384–85.  And Amtrak is imbued with "attributes of sovereignty" – namely, eminent domain powers.  *Philips*, 572 F.3d at 185; *see* 49 U.S.C. § 24311.

The Medical System is a stark contrast to Amtrak, and *Lebron* is not determinative of, or even relevant to, whether or not it is a state actor.  If anything, *Lebron* signals the Medical System is *not* a state actor for purposes of Section 1983.  Unlike in *Lebron*, the Medical System is a private corporation entirely independent of Maryland, and Maryland has no involvement in (or control over) its day-to-day affairs.  *See* 513 U.S. at 384–86 & 399; Md. Code Educ. § 13-303.  The Medical System also enjoys no attributes of sovereignty, and Maryland owns no stock in it.  *See Lebron*, 513 U.S. at 384–86 & 399; *Philips*, 572 F.3d at 185.

---

[18]  The Fourth Circuit has only invoked *Lebron* twice in the twenty five years since it was decided, and distinguished it from the case before it each time.  *See Kerpen v. Metro. Washington Airports Authority*, 907 F.3d 152 (4th Cir. 2018) (holding entity was not federal instrumentality); *Meridian Investments, Inc. v. Fed. Home Loan Mortg. Corp.*, 855 F.3d 573 (4th Cir. 2017) (same).

B.      If The Medical System Were A State Actor, Hammons' Claims Would Be Barred by Sovereign Immunity In Any Event.

Instead of suing a Maryland official, Hammons alleges the Medical System itself is a state actor.  But if that were true, his claims would be barred by the Eleventh Amendment, which vests states (and their "arms") with sovereign immunity against suits in federal courts.  *See* Const. amend. XI; *Borkowski v. Baltimore Cnty.*, 414 F. Supp. 3d 788, 805 (D. Md. 2019); *Beckham v. Nat'l R.R. Passenger Corp.*, 569 F. Supp. 2d 542, 549–52 & 556 (D. Md. 2008); *Middlebrooks v. Univ. of Md. at College Park*, 980 F. Supp. 824, 827–28 (D. Md. 1997); *see also Lane v. Anderson*, 660 F. App'x 185, 195 (4th Cir. 2016).

While there are narrow exceptions to the Eleventh Amendment's bar, Hammons' suit does not fit any.  He has not sued a state official for declaratory or injunctive relief.  *See Ex Parte Young*, 209 U.S. 123 (1908).  And far from "express[ly] consent[ing] to suit in federal court," *Pense v. Md. Dep't of Public Safety & Correctional Services*, 926 F.3d 97, 102 (4th Cir. 2019); *Beckham*, 569 F. Supp. 2d at 550–51, Maryland has expressly reserved its sovereign immunity – which would, under Hammons' theory, extend to the Medical System.  *See* Md. Code Educ. § 13-308(f); Md. Code State Gov't § 12-103(2).  Indeed, if the Medical System were an arm of Maryland as Hammons alleges, he could not assert any 1983 claim against it because arms of a state are not "persons."  *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 70–71 (1989); *Clark v. Md. Dep't of Public Safety & Corr'l Servs.*, 316 F. App'x 279, 282 (4th Cir. 2009); *Lawson v. Green*, 2017 WL 3638431, at *4 (D. Md. Aug. 23, 2017).

III.    Hammons Has Failed To Allege A Viable Establishment Clause Claim.

Hammons' Establishment Clause claim also fails on its own terms.  He alleges the Medical System violated the Establishment Clause by acquiring St Joseph and allowing it to continue its Catholic legacy.  Cmplt. ¶ 66.  But the Establishment Clause does not require "total

separation" of church and state.  *Moss v. Spartansburg Cnty. School Dist. Seven*, 683 F.3d 599,

608 (4th Cir. 2012); *see Walz v. Tax Comm'n*, 397 U.S. 664, 669 (1970).  It only bars state action

that has "the primary effect of advancing religion."  *Glassman v. Arlington Cnty.*, 628 F.3d 140,

146 (4th Cir. 2010).

Accordingly, under the longstanding standard announced in *Lemon v. Kurtzman*, 403

U.S. 602, 612–13 (1971), a government action involving religion is permissible if it has a secular

purpose, has the principal or primary effect of neither advancing nor inhibiting religion, and does

not foster excessive entanglement with religion.  *See Buxton v. Kurtinitis*, 862 F.3d 423, 432 (4th

Cir. 2017).  While the "*Lemon* test" affords useful "guideposts," *Van Orden v. Perry*, 545 U.S.

677, 692 (2005), its factors are also not to be mechanically applied.  *See Am. Legion v. Am.*

*Humanist Assoc.*, 139 S. Ct. 2067, 2080–81 (2019).  Instead, a court must "examine[ ] the entire

context surrounding the challenged practice," not just "the contested portion" in isolation.  *Wood*

*v. Arnold*, 915 F.3d 308, 314–15 (4th Cir. 2019); *see Van Orden*, 545 U.S. at 687; *Smith v.*

*Jefferson Cnty. Bd. of School Com'rs*, 788 F.3d 580, 587 (6th Cir. 2015).

Here, Hammons has failed to "allege specific facts" that, if true, would violate the *Lemon*

test.  *Glassman v. Arlington Cnty, Va.*, 2010 WL 1488515, at *10, 2010 WL 1488515 (E.D. Va.

Apr. 12, 2010), *aff'd*, 628 F.3d 140 (4th Cir. 2010).  *First*, Hammons' allegations show the

Medical System's acquisition and operation of St. Joseph serves the secular purpose of

preserving hospital care for patients in the North Baltimore region.  *See Glassman*, 628 F.3d at

147.  As Hammons alleges, the Medical System agreed to operate St. Joseph according to its

Catholic legacy to keep its doors open.  Cmplt. ¶¶ 26 & 32.

*Second*, Hammons has not alleged any specific facts from which it could reasonably be

concluded the Medical System's ownership of St. Joseph endorses Catholicism.  *See Wood*, 915

F.3d at 316–317.  Hammons alleges St. Joseph operated as a Catholic hospital for over a century, and that legacy was continued to serve patients in the North Baltimore region.  Cmplt. ¶¶ 25 & 32; *Smith*, 788 F.3d at 591–92.  St. Joseph is also a "small part" of the Medical System, and, despite its Catholic roots, treats (and makes accommodations for) patients of all faiths.[19]  *Wood*, 915 F.3d at 317.  And any procedure outside of the scope of care able to be provided at St. Joseph can be provided at another facility in the Medical System.

*Third*, Hammons also has not alleged any specific facts showing any entanglement – let alone any "excessive" entanglement – between Maryland and Catholicism.  *Agostini v. Felton*, 521 U.S. 203, 232 (1997).  While he alleges that St. Joseph adheres to the ERDs, he does not allege St. Joseph maintains any ties to the Catholic Church that impact its operations or that "suggest that the Church in any way" controls or directs its operations or activities.  *Glassman*, 628 F.3d at 148–49.  Nor has Hammons alleged the Medical System delegated medical decisions related to him or any other patient to the Church.  *See id.*; *cf. Larkin v. Grendel's Den, Inc.*, 459 U.S. 116, 126–27 (1982) (holding Establishment Clause violated where statute vests churches with power to veto applications for liquor licenses).  The lack of any such allegations is fatal: Without any allegations the Catholic Church controls or is involved in the Medical System's actions or affairs, there can be no excessive entanglement.  *See Glassman*, 628 F.3d at 148–49. Bare allegations of mere "interaction[s]" between the Medical System and the Church are not enough to survive a motion to dismiss.  *Id.* at 146–48.

Courts have found far greater and more direct levels of "entanglement" between the government and religion acceptable under the Establishment Clause.  For example, in *Bradfield v. Roberts*, 175 U.S. 291 (1899), which was decided at the pleading stage, the Court upheld an

---

[19]  *See supra* note 8.

agreement between the D.C. Commissioners and a private Catholic hospital where Congress agreed to pay for the construction of a new building on the grounds of the hospital.  *Id.* at 297. The hospital operated "under the auspices" of the Catholic Church, was staffed by Catholic clergy, and was built on land owned by the Church.  *Id.*  Nevertheless, the Court held those religious connections were insufficient to alter the secular character of the corporation that owned the hospital and would receive the funds.  *Id.* at 298.

Similarly, in *Smith v. Jefferson*, the Sixth Circuit upheld in the face of an Establishment Clause challenge a public school program that delegated to a Christian private school "all facets" of educating public school students at a campus filled with religious imagery.  *Smith*, 788 F.3d at 583–85.  The court held the program served the secular purpose of saving the county money, the private school did not target public school students with religious material, and the private school only managed one of the county's programs.  *Id.* at 587–95.  As in *Bradfield* and *Smith,* merely alleging that the Medical System operates one of many hospitals according to its Catholic legacy to keep its doors open – and ensure that the population it serves continues to have access to hospital care – does not amount to "specific facts" of an excessive entanglement between the Medical System and the Catholic Church.  *Glassman*, 2010 WL 1488515, at *10.

## IV.    Hammons Has Failed To Allege A Viable Equal Protection Claim.

Hammons' Equal Protection claim also founders.  To make out that claim, he must allege facts showing he "was treated differently from others who were similarly situated" *and* that unequal treatment resulted from intentional discrimination or discriminatory animus.  *See, e.g., Schiffbauer v. Schmidt*, 95 F. Supp. 3d 846, 856 (D. Md. 2015).[20]  He has done neither.

---

[20]  *See Equity in Athletics, Inc. v. Dep't of Educ.*, 639 F.3d 91, 108 (4th Cir. 2011); *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001); *Sylvia Dev. Corp. v. Calvert Cnty. Md.*, 48 F.3d 810, 819 (4th Cir. 1995); *Md. Minority Contractor's Ass'n., Inc. v. Md. Stadium Authority*, 70 F.

While Hammons alleges the Medical System treated him differently from non-transgender patients seeking hysterectomies, the ERDs that Hammons alleges that St. Joseph follows prohibit procedures for the "[d]irect sterilization of either men or women" or those that impact the "functional integrity" of the human body.  ERDs ¶¶ 29 & 53.  The ERDs are facially neutral, do not require decision-making based on gender or gender identity, and sterilization procedures are not generally performed at St. Joseph at all, on any patients, man or woman, transgender or not.  *Id.*  Hammons has simply failed to allege he was treated differently from other patients seeking a sterilization procedure at St. Joseph.

Nor has Hammons sufficiently alleged he was treated differently as a result of any intentional discrimination or discriminatory animus.  He offers the conclusory allegation that the Medical System discriminated against him "because he is a man who is transgender."  Cmplt. ¶ 74.  But he does not allege that St. Joseph interpreted, intended to apply, or applied the ERDs' gender-neutral guidance against sterilization procedures and those impacting the integrity of the human body in any discriminatory way.  That failure is telling given the Medical System operates "without discrimination" and offers dedicated transgender care.  Md. Code Educ. § 13-303(d).[21]  Without any allegations that the Medical System acted with a "purposeful" or "discriminatory" intent, Hammons' Equal Protection claim cannot proceed.  *Zeno*, 2009 WL 3766065, at *4 (decided on motion to dismiss); *see Mescall v. Burrus*, 603 F.2d 1266, 1271 (7th Cir. 1979) (same); *Schiffbauer*, 95 F. Supp. 3d at 856 (same).[22]

---

Supp. 2d 580, 592 (D. Md. 1998); *Zeno v. Maryland*, 2009 W 3766065, at *4 (D. Md. Nov. 9, 2009); *see also Collier v. Barnhart*, 473 F.3d 444, 448 (2d Cir. 2007).

[21]  *See supra* note 2.

[22]  Without any allegation of intentional discrimination, the Medical System's conduct is reviewed only for a rational basis – which presumes the validity of government action.  *See Freilich v. Upper Chesapeake Health, Inc.*, 313 F.3d 205, 211 (4th Cir. 2002); *Sylvia Dev. Corp.*, 48 F.3d at 819; *Collier*, 473 F.3d at 449; *Samuel v. Hogan*, 2018 WL 1243548, at *7–8 (D. Md.

**V.      Hammons' ACA Claim Fails As A Matter Of Law.**

Hammons' ACA claim fails for the same reason as his Equal Protection claim.  Section 1557 of the ACA prohibits covered entities from discriminating in healthcare services, and incorporates Title IX's sex-discrimination protections.[23]  *See* 42 U.S.C. § 18116(a).  To state a claim under Section 1557, a plaintiff must therefore allege the defendant discriminated against him on the basis of sex, the discrimination was intentional, and the discrimination was a "substantial" or "motivating factor" for the defendant's actions.  *Oh. Nurses Assoc. v. Ashtabula Cnty. Medical Center*, 2020 WL 4390524, at *5 (N.D. Oh. July 31, 2020); *see Weinreb v. Xerox Bus. Servs., LLC Health & Welfare Plan*, 323 F. Supp. 3d 501, 521 (S.D.N.Y. 2018); *Briscoe v. Health Care Service Corp.*, 281 F. Supp. 3d 725, 738–39 (N.D. Ill. 2017).

Here, Hammons has not alleged any facts demonstrating the Medical System intentionally discriminated against him on the basis of sex or that his sex was a substantial or motivating factor for why his procedure did not go forward at St. Joseph.  While he alleges, in conclusory fashion, that the Medical System "canceled" his procedure because he is transgender, he does not allege any facts about "Defendants' intentions to interpret and apply the [ERDs] in a discriminatory way."  *Weinreb*, 323 F. Supp. 3d at 521–22.  And his sheer speculation that his procedure could have gone forward at St. Joseph if it "had been prescribed as medically necessary" for a condition other than gender dysphoria is not supported by any factual allegations and contradicted by his allegation that St. Joseph operates according to the ERDs

Mar. 9, 2018).  There is one here: The Medical System's purpose of acquiring and operating St. Joseph in accordance with the ERDs advances the legitimate end of ensuring North Baltimore patients have access to critical hospital services.  *See Colon Health Centers of Am., LLC v. Hazel*, 733 F.3d 535, 548 (4th Cir. 2013); *Freilich v. Upper Chesapeake Health, Inc.*, 142 F. Supp. 2d 679, 692–93 (D. Md. 2001).

[23]  A covered entity is "any health program or activity" that receives federal funds.  42 U.S.C § 18116(a).

with respect to *all* patients – not just transgender patients.  Cmplt. ¶ 90.  Without plausible and specific allegations of intentional discrimination, his ACA claim should be dismissed.  *See Weinreb*, 323 F. Supp. 3d at 521–22; *Meadows v. Atencio*, 2020 WL 2797787, at *6 (D. Idaho May 29, 2020).[24]

## **CONCLUSION**

The Court should grant the Medical System's Motion and dismiss the Complaint with prejudice.

Dated: September 25, 2020

*/s/ Denise Giraudo*
Denise Giraudo (Bar No. 29015)
Paul Werner (*pro hac vice*)
Imad Matini (*pro hac vice*)
SHEPPARD, MULLIN, RICHTER &
HAMPTON LLP
2099 Pennsylvania Ave., N.W., Suite 100
Washington, D.C. 20036
Tel: 202-747-1906
Fax: 202-747-3933
dgiraudo@sheppardmullin.com
pwerner@sheppardmullin.com
imatini@sheppardmullin.com

---

[24]  The U.S. Department of Health and Human Services promulgated regulations implementing Section 1557 that amended the definitions of "on the basis of sex," "gender identity," and "sex stereotyping" and incorporated Title IX's religious exemption.  *See* 85 Fed. Reg. 37160-01, 2020 WL 3298450 (June 19, 2020).  But the effectiveness of those regulatory changes has been enjoined.  *See Whitman-Walker Clinic, Inc. v. U.S. Dep't of Health and Human Servs.*, 2020 WL 5232076 (D.D.C. Sept. 2, 2020); *Walker v. Azar*, 2020 WL 4749859 (E.D.N.Y. Aug. 17, 2020). Certain HHS conscience regulations were also recently enjoined and vacated.  *See New York v. U.S. Dep't of Health and Human Servs.*, 414 F. Supp. 3d 475 (S.D.N.Y. 2019); 84 Fed. Reg. 23170, 2019 WL 2174213 (May 21, 2019).  As such, the Medical System necessarily reserves its right to present additional arguments based on HHS's regulatory changes.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 25, 2020, Plaintiff's counsel was served with the

foregoing document through the Court's Electronic Case Filing System.

<u>___ /s/ Denise Giraudo_____</u>
Denise Giraudo