**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| JESSE HAMMONS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:20-cv-02088-ELH |
| | ) | |
| UNIVERSITY OF MARYLAND MEDICAL SYSTEM | ) | **ORAL ARGUMENT** |
| CORPORATION, et al. | ) | **REQUESTED** |
| | ) | |
| Defendants. | ) | |
| | ) | |

**REPLY MEMORANDUM IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS**

## TABLE OF CONTENTS

Page

INTRODUCTION.................................................................................................................1

ARGUMENT .......................................................................................................................3

    I.     The Court Should Dismiss Hammons' Suit Because He Lacks
          Standing To Sue The Medical System For Injuries Directly Traceable
          To His Own Surgeon's Mis-scheduling Decision. .................................................3

    II.    Hammons Cannot Allege Any Viable Constitutional Claims Against
          the Medical System. ..............................................................................................5

          A.    The Medical System Is A Private Corporation With No "Close
                Nexus" To The State Of Maryland.............................................................5

          B.    Hammons' Claims Are Barred By Sovereign Immunity Under
                His Flawed State Action Theory.................................................................7

    III.   Hammons Has Failed To Allege A Plausible Establishment Clause
          Claim. .....................................................................................................................9

    IV.   Hammons' Equal Protection Claim Fails As A Matter Of Law......................12

    V.    Hammons' ACA Claim Also Fails As A Matter Of Law. ...............................14

CONCLUSION ..................................................................................................................15

## TABLE OF AUTHORITIES

**Page(s)**

Cases

*Barghout v. Bureau of Kosher Meat & Food Control*,
   66 F.3d 1337 (4th Cir. 1995) ...............................................................................10

*Bennet v. Spear*,
   520 U.S. 154 (1997)................................................................................................3

*Bishop v. Bartlett*,
   575 F.3d 419 (4th Cir. 2009) ................................................................................3

*Borkowski v. Baltimore Cnty.*,
   414 F. Supp. 3d 788 (D. Md. 2019).......................................................................8

*Bostock v. Clayton Cnty.*,
   140 S. Ct. 1731 (2020).........................................................................................14

*Boyden v. Conlin*,
   341 F. Supp. 3d 979 (W.D. Wisc. 2018)..............................................................13

*Briscoe v. Health Care Serv. Corp.*,
   281 F. Supp. 3d 725 (N.D. Ill. 2017) .....................................................................4

*Buxton v. Kurtinitis*,
   862 F.3d 423 (4th Cir. 2017) ...........................................................................9, 11

*Carey v. Nevada Gaming Control Bd.*,
   279 F.3d 873 (9th Cir. 2002) ................................................................................8

*Commack Self-Serve Kosher Meats, Inc. v. Weiss*,
   294 F.3d 415 (2d Cir. 2002)...........................................................................11, 12

*Cooksey v. Futrell*,
   721 F.3d 226 (4th Cir. 2013) ................................................................................3

*Doe v. Elmbrook Sch. Dist.*,
   687 F.3d 840 (7th Cir. 2012) ..............................................................................12

*Doe v. Va. Dep't of State Police*,
   713 F.3d 745 (4th Cir. 2013) ................................................................................5

*Equity In Athletics, Inc. v. Dep't of Educ.*,
   639 F.3d 91 (4th Cir. 2011) ................................................................................13

*Flack v. Wisc. Dep't of Health Servs.*,
   328 F. Supp. 3d 931 (W.D. Wisc. 2018)..............................................................13

*Friends of Ferrell Parkway, LLC v. Stasko*,
     282 F.3d 315 (4th Cir. 2002) .......................................................................5

*Fulani v. Brady*,
     935 F.2d 1324 (D.C. Cir. 1991) ...................................................................5

*Glassman v. Arlington Cnty.*,
     628 F.3d 140 (4th Cir. 2010) ................................................................11, 12

*Glassman v. Arlington Cnty.*,
     No. 01:09-cv-1249, 2010 WL 1488515 (E.D. Va. Apr. 12, 2010) ...........9

*Grimm v. Gloucester Cty. Sch. Bd.*,
     972 F.3d 586 (4th Cir. 2020) .....................................................................13

*Hutto v. South Carolina Retirement Sys.*,
     773 F.3d 536 (4th Cir. 2014) .......................................................................8

*June v. Thomasson*,
     No. GLR-14-2450, 2017 WL 3642944 (D. Md. Aug. 24, 2017).............11

*Kadel v. Folwell*,
     446 F. Supp. 3d 1 (M.D.N.C. 2020) ..........................................................13

*Lambeth v. Bd. of Comm'rs of Davidson Cnty.*,
     407 F.3d 266 (4th Cir. 2005) .....................................................................11

*Lane v. Anderson*,
     660 F. App'x 185 (4th Cir. 2016) ................................................................8

*Lane v. Holder*,
     703 F.3d 668 (4th Cir. 2012) ...............................................................3, 4, 5

*Larkin v. Grendel's Den, Inc.*,
     459 U.S. 116 (1982).....................................................................................10

*Lebron v. Nat'l R.R. Passenger Corp.*,
     513 U.S. 374 (1995)...............................................................................2, 6, 7

*Lee v. Weisman*,
     505 U.S. 577 (1992).....................................................................................12

*Lemon v. Kurtzman*,
     403 U.S. 602 (1971).......................................................................................9

*Linda R.S. v. Richard D.*,
     410 U.S. 614 (1973).......................................................................................3

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992)...........................................................................................3

*Mackey v. Dorsey*,
    104 Md. App. 250 (Md. 1995) ........................................................................4

*Marshall v. Meadows*,
    105 F.3d 904 (4th Cir. 1997) .........................................................................4

*Mellen v. Bunting*,
    327 F.3d 355 (4th Cir. 2003) ...................................................................11, 12

*Mentavlos v. Anderson*,
    249 F.3d 301 (4th Cir. 2001) ......................................................................6, 7

*Mirant Potomac River LLC v. EPA*,
    577 F.3d 223 (4th Cir. 2009) .........................................................................5

*Moore v. Williamsburg Regional Hosp.*,
    560 F.3d 166 (4th Cir. 2009) .........................................................................7

*Myers v. Loudoun Cnty. Pub. Sch.*,
    418 F.3d 395 (4th Cir. 2005) ........................................................................12

*Napata v. Univ. of Md. Med. Sys. Corp.*,
    12 A.3d 144 (Md. 2011) .................................................................................8

*Oh. Nurses Assoc. v. Ashtabula Cnty. Med. Ctr.*,
    1:20CV1656, 2020 WL 4390524 (N.D. Oh. July 31, 2020).........................14

*Personnel Adm'r of Ma. v. Feeney*,
    442 U.S. 256 (1979).......................................................................................14

*Philips v. Pitt Cnty. Mem. Hosp.*,
    572 F.3d 176 (4th Cir. 2009) .................................................................4, 6, 7

*Rosenberger v. Rector of Univ. of Va.*,
    515 U.S. 819 (1995).................................................................................11, 12

*Schiffbauer v. Schmidt*,
    95 F. Supp. 3d 846 (D. Md. 2015) ...............................................................14

*Simon v. East. Ky. Welfare Rights Org.*,
    426 U.S. 26 (1976).....................................................................................3, 5

*Smith v. Jefferson Cnty. Bd. of Sch. Comm'rs*,
    788 F.3d 580 (6th Cir. 2015) ........................................................................10

*Spokeo, Inc. v. Robins*,
  136 S. Ct. 1540 (2016) ...................................................................................3

*Stone v. Trump*,
  356 F. Supp. 3d 505 (D. Md. 2018) ..............................................................13

*Sylvia Dev. Corp. v. Calvert Cnty.*,
  48 F.3d 810 (4th Cir. 1995) ..........................................................................13

*Toomey v. Arizona*,
  No. CV-19-00035-TUC-RM , 2019 WL 7172144 (D. Ariz. Dec. 23, 2019) .........13

*U.S. v. Virginia*,
  518 U.S. 515 (1996) ......................................................................................13

*United States v. Head*,
  340 F.3d 628 (8th Cir. 2003) ........................................................................11

*Weinreb v. Xerox Bus. Servs., LLC Health & Welfare Plan*,
  323 F. Supp. 3d 501 (S.D.N.Y. 2018) .....................................................14, 15

*Will v. Mich. Dep't of State Police*,
  491 U.S. 58 (1989) ..........................................................................................9

*Wood v. Arnold*,
  915 F.3d 308 (4th Cir. 2019) .............................................................9, 10, 11

Statutes

42 U.S.C. § 18116 ....................................................................................2, 14, 15

49 U.S.C. § 24307 ................................................................................................6

49 U.S.C. § 24311 ................................................................................................6

49 U.S.C. § 24321 ................................................................................................6

Md. Code § 12-103 ..........................................................................................7, 8

Md. Code § 13-308 ..........................................................................................7, 8

Md. Code § 13-302 ..........................................................................................7, 8

Md. Code § 13-303 ....................................................................................7, 8, 12

Md. Code § 13-304 ..............................................................................................8

Nev. Stat. § 41.031 ..............................................................................................8

Other Authorities

Const. Amend. XI ..............................................................................................................8

84 Fed. Reg. 23170, 2019 WL 2174213 (May 21, 2019)............................................15

85 Fed. Reg. 37160-01, 2020 WL 3298450 (June 19, 2020)......................................15

Defendants University of Maryland Medical System Corporation, UMSJ Health System, LLC, and University of Maryland St. Joseph Medical Center, LLC (collectively, the "Medical System"), submits this Reply Memorandum in support of its Motion To Dismiss Plaintiff Jesse Hammons' ("Hammons") Complaint.[1]

## INTRODUCTION

 Hammons sued the Medical System because, while there is no question that it supports transgender rights and is committed to providing them exceptional healthcare, one of its hospitals – St. Joseph – carries on its century-old Catholic tradition serving a population without ready access to alternative medical care.  But as the Medical System explained in its Motion, his case suffers flaws, both procedural and substantive, that should prevent it from proceeding any further.

While Hammons ramps up his rhetoric in opposition, his theories and precedents perfectly demonstrate just how far he asks this Court to go to allow his case to proceed.  In arguing he has constitutional standing, he asks the Court to rely on tort theories of proximate causation – rather than any Article III case or controversy precedent – to hold that alleged injuries flowing directly from his surgeon's independent mis-scheduling decision were really caused by St. Joseph's Catholic legacy.  And while Hammons says his claims could be redressed by ordering the Medical System to pay him compensatory damages, the Medical System cannot sensibly be ordered to pay damages caused by his own surgeon.  Without standing, the Court cannot – and therefore should not – wade any deeper into the merits of his claims.

---

[1]  The University of Maryland St. Joseph Medical Center is referred to as "St. Joseph."  The *Ethical & Religious Directives for Catholic Health Care Services* (6th ed. 2018), are referred to as the "ERDs," *available at* https://www.usccb.org/about/doctrine/ethical-and-religious-directives/upload/ethical-religious-directives-catholic-health-service-sixth-edition-2016-06.pdf (last visited Dec. 21, 2020).

Even if Hammons had standing, his contradictory and nonsensical theories – backed by a scattershot of misdirected cases – only confirm that he cannot assert valid claims against the Medical System.  To overcome yet another procedural bar to his claims, Hammons stretches *Lebron v. Nat'l R.R. Passenger Corp.*, 513 U.S. 374 (1995), beyond all recognition to argue a private medical system is just the same as the government-created and government-run Amtrak. Under more relevant Fourth Circuit precedent, it is clear that the Medical System bears no required "close nexus" with the State of Maryland.  Nor is it remotely plausible, or supported by any legal precedent, that the Medical System is an "arm" of Maryland, but enjoys no sovereign immunity – despite the State's express statutory reservation of that important right.

Hammons' defense of his claims on the merits takes the Court even further afield. Hammons argues the Medical System has committed "egregious" Establishment Clause violations by acquiring St. Joseph and maintenance of its Catholic legacy.  But, no matter what constitutional theory applies (and the *Lemon* test indeed controls in the Fourth Circuit), his barebones allegations do not come close to pleading a viable claim.  And while Hammons argues he need not allege any intentional discrimination by the Medical System on the basis of sex to challenge the facially neutral ERDs that apply to *all* St. Joseph's patients irrespective of any protected classification, his off-point cases all involve facially discriminatory policies and explicit classifications.  Without any allegations of intentional discrimination by the Medical System, Hammons' claim cannot move forward.  This failure dooms his claim under 42 U.S.C. § 18116, or Section 1557 of the Affordable Care Act ("ACA"), too.

The Court should grant the Medical System's Motion.

**ARGUMENT**

I.     **The Court Should Dismiss Hammons' Suit Because He Lacks Standing To Sue The Medical System For Injuries Directly Traceable To His Own Surgeon's Mis-scheduling Decision.**

Hammons argues that he has standing because his injuries are (1) traceable to the Medical System's alleged conduct *after* his surgeon mis-scheduled his procedure, and (2) redressable through compensatory damages.  Br. at 7–13.  His arguments are mistaken, and his case is properly dismissed for want of standing.

**1.**  Hammons argues that his injuries directly flow from the Medical System as the "final actor" that allegedly caused his surgery not to proceed.  But he cannot short-circuit the traceability requirement by picking and choosing the conduct that supposedly caused his injuries.  Br. at 9; Cmplt. ¶ 2.  To satisfy Article III standing, Hammons must show his injury is directly "traceable" to the action he challenges – that is, St. Joseph's Catholic legacy.  *Lane v. Holder*, 703 F.3d 668, 673 (4th Cir. 2012); *see Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *Simon v. East. Ky. Welfare Rights Org.*, 426 U.S. 26, 37–39 (1976); *Linda R.S. v. Richard D.*, 410 U.S. 614, 618 (1973).  But he cannot do so where his injuries result from the "independent action of some third party not before the court."  *Bishop v. Bartlett*, 575 F.3d 419, 425 (4th Cir. 2009); *see Simon*, 426 U.S. at 40–42.  That is the case here.[2]

Hammons' injuries are the direct result of his surgeon mis-scheduling his surgery.  He alleges that his surgeon voluntarily agreed to abide the ERDs to receive admitting privileges at

---

[2]  Hammons also cannot demonstrate traceability by relying on distinguishable cases involving claims subject to "relaxed" standing requirements, such as free speech violations, *Cooksey v. Futrell*, 721 F.3d 226, 235 (4th Cir. 2013), or federal statutes broadly conferring standing on "any person" aggrieved by an agency action, *Bennet v. Spear*, 520 U.S. 154, 165–66 (1997).  None of those lowered standing requirements apply in this case.

St. Joseph, and then violated their terms by scheduling Hammons' hysterectomy at St. Joseph. Cmplt. ¶¶ 2, 28 & 58–60.[3]  Thus, based on his own allegations, Hammons' surgery did not proceed because *his surgeon* scheduled the procedure at St. Joseph, and he suffered financial and emotional injuries as a result.  *Id.* ¶¶ 56–60.  As such, any injuries he suffered because his procedure did not go forward at St. Joseph's are directly traceable to the "decision" and actions of Hammons' surgeon, *not* of St. Joseph or the Medical System.  *Marshall v. Meadows*, 105 F.3d 904, 906 (4th Cir. 1997).

While Hammons further argues the Medical System "picked the [causal] chain back up" after his surgeon's mis-scheduling by canceling his surgery, that theory makes no sense and finds no support in any of his precedents.  Br. at 9.  Based on his own allegations, Hammons' surgeon's conduct is *the but for cause* of St. Joseph's cancellation: It could not have occurred absent his surgeon's violation of the terms of his admitting privileges.  Cmplt. ¶¶ 2, 28 & 58–60.

But even if Hammons' theory had any logical appeal – it does not – it finds no support in any relevant case law.  Instead, Hammons looks far afield, to cases addressing proximate causation for *negligence claims* having nothing do with standing.  *See Mackey v. Dorsey*, 104 Md. App. 250, 270 (Md. 1995).  However, courts do not apply proximate causation principles to determine traceability under Article III, but rather routinely hold a plaintiff's injury is not traceable to a defendant's action where, as here, an "intermediary stands directly between the plaintiff and the challenged conduct" and thus "breaks the causal chain."  *Lane*, 703 F.3d at 673–74.  Here, Hammons' surgeon "stands directly" between the Medical System and his injuries

---

[3]  Hammons argues the Medical System has improperly cited public materials.  Br. at 10.  But this Court may consider materials in the public domain, including the ERDs and interviews by Hammons on this litigation.  *See Philips v. Pitt Cnty. Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

-4-

because his surgeon mis-scheduled a procedure that he knew could not be performed at St. Joseph. *Id.*

**2.**   Hammons also argues that he has standing because his injuries are allegedly redressable by compensatory damages.  Br. at 13.  But for his injuries to be redressable at all, they must be traceable to the Medical System, which they are not.  *See Doe v. Va. Dep't of State Police*, 713 F.3d 745, 755 (4th Cir. 2013); *see also Simon*, 426 U.S. at 41–42; *Fulani v. Brady*, 935 F.2d 1324, 1330 (D.C. Cir. 1991).  Because Hammons' alleged injuries resulted from the actions of his surgeon's mis-scheduling of his procedure, his injuries are not redressable through relief from the Medical System.  *See Mirant Potomac River LLC v. EPA*, 577 F.3d 223, 226 (4th Cir. 2009); *Friends of Ferrell Parkway, LLC v. Stasko*, 282 F.3d 315, 320 (4th Cir. 2002).

Therefore, because Hammons lacks standing to bring any claims against the Medical System, the Court should dismiss his complaint on this ground alone.

## II.   Hammons Cannot Allege Any Viable Constitutional Claims Against the Medical System.

Even if Hammons had standing – he does not – his claims suffer another procedural defect.  They are based on the contradictory theory the Medical System is both an arm of the state and a private corporation not entitled to sovereign immunity.  Br. at 13–22.  But in reality, Hammons sued a private corporation that is not subject to liability under Section 1983 or the Fourteenth Amendment.  And if the Medical System were somehow a state actor, sovereign immunity would bar Hammons' claims against it anyway.

### A.   The Medical System Is A Private Corporation With No "Close Nexus" To The State Of Maryland.

Hammons alleges the Medical System is a private corporation but also a state actor subject to liability under Section 1983.  Cmplt. ¶¶ 9–11, 64–65 & 72–73; Br. at 13–15.  This makes no sense and is wrong as a matter of law.

As a private corporation, the Medical System can be a state actor "*only if*" Hammons alleges a "close nexus" between the Medical System and the State of Maryland. *Mentavlos v. Anderson*, 249 F.3d 301, 310 (4th Cir. 2001) (emphasis added). But Hammons' makes no such allegations in his Complaint. *See id.*

In the face of this defect, Hammons argues the close nexus requirement is "irrelevant" and that the Medical System is a state actor based *solely* on *Lebron v. Nat'l R.R. Passenger Corp.*, 513 U.S. 374 (1995). Br. at 17. But Hammons' reliance on *Lebron* is misplaced because the Medical System and its relationship with Maryland cannot reasonably be compared to that of Amtrak and the United States Government. In *Lebron*, the Court held Amtrak was part of the federal government for First Amendment purposes in light of Amtrak's unique and deep ties to the federal government and because the government exerts control over Amtrak's affairs as its primary stockholder and "as a policymaker." 513 U.S. at 399. There is no doubt the federal government is heavily involved in and exerts extensive control over Amtrak's daily affairs. *See* 49 U.S.C. §§ 24307 & 24321; *Lebron*, 513 U.S. at 383–84. Among other things, the federal government owns and enjoys full voting power for all of Amtrak's preferred stock, and the President appoints a majority of Amtrak's external directors. *See Lebron*, 513 U.S. at 384–85 & 399. And Amtrak has traditional governmental powers, such as eminent domain. *See* 49 U.S.C. § 24311. Those unique attributes of Amtrak are why the Fourth Circuit has held the *Lebron* factors are not "conclusive" for finding state action against other entities, *Mentavlos*, 249 F.3d at 312, and why a plaintiff must allege a close nexus for state action and cannot merely invoke *Lebron*'s "rigid" framework, *Philips*, 572 F.3d at 182.

Even if *Lebron* applied, the Medical System does not "plainly" fit within its framework. Br. at 15–16. Unlike Amtrak, the Medical System manages its own day-to-day affairs and

maintains separate "operations, revenues, and obligations" from Maryland.  Md. Code §§ 13-302(6)–(7) & 13-303.  It also has no governmental powers, and cannot bind Maryland or incur debts or obligations on its behalf.  *See id.* § 13-310.  Unlike the federal government's ownership of stock in Amtrak, Maryland does not own any stock in the Medical System.  *See Lebron*, 513 U.S. at 384–86 & 399; *Philips*, 572 F.3d at 185.  And while the Governor appoints a majority of the Medical System's directors, that is not "conclusive" in light of the Medical System's many private attributes.  *Mentavlos*, 249 F.3d at 312.  Even under *Lebron*, the Medical System is thus a private, not state, actor.  *See Philips*, 572 F.3d at 183–85; *Moore v. Williamsburg Regional Hosp.*, 560 F.3d 166, 168–69 & 178–79 (4th Cir. 2009).

### B.    Hammons' Claims Are Barred By Sovereign Immunity Under His Flawed State Action Theory.

Hammons alleges the Medical System is an "arm" of Maryland, Cmplt. ¶¶ 35, 62–64 & 70–72, but cannot assert Eleventh Amendment immunity.  Br. at 19–22.  But Maryland has expressly reserved sovereign immunity and Hammons has alleged facts that would extend immunity to the Medical System even under his own theory.[4]  Cmptl. ¶¶ 15–24.

Hammons argues Maryland stripped the Medical System of sovereign immunity by declaring it a private entity.  Br. at 19; Md. Code § 13-303(a)(2).  But he bases his argument on a flawed reading of *Lebron*.  Br. at 19–20.  There, the Supreme Court noted in dicta that Congress likely deprived Amtrak of its sovereign immunity because its special statute declared Amtrak "will not be" an "establishment of the United States."  *Lebron*, 513 U.S. at 391.  But unlike Amtrak, the Medical System's originating statute contains an *express reservation* of Maryland's sovereign immunity against suits in federal court.  *See* Md. Code § 13-308(f); *id.* § 12-103(2).

---

[4]  The Medical System did not limit its sovereign immunity argument to one Defendant.  Br. at 13 n.6.  It argued sovereign immunity applies to *all* Defendants.  Mot. at 16.

Where, as here, there is an express and clear reservation of Eleventh Amendment immunity, courts give it full force and effect. *See, e.g.*, *Carey v. Nevada Gaming Control Bd.*, 279 F.3d 873, 877–78 (9th Cir. 2002); *compare, e.g.*, Md. Code § 13-308(f) *and id.* § 12-103(2), *with* Nev. Stat. § 41.031. And, under Hammons' theory, that immunity would extend to the Medical System as an arm of the state. *See* U.S. Const. amend. XI; *Lane v. Anderson*, 660 F. App'x 185, 195 (4th Cir. 2016); *Borkowski v. Baltimore Cnty.*, 414 F. Supp. 3d 788, 804–05 (D. Md. 2019).

In order to overcome this clear reservation, Hammons argues the Medical System cannot assert sovereign immunity because the Medical System (and not Maryland) must pay any judgment against it. Br. at 21. But that alone is not determinative of whether the Medical System enjoys sovereign immunity. Rather, a court must assess "the degree of control" the State exercises over the entity, the "scope of the entity's concerns," and the "manner in which State law treats the entity." *Hutto v. South Carolina Retirement Sys.*, 773 F.3d 536, 546–57 (4th Cir. 2014). Under those factors, the Medical System enjoys sovereign immunity under Hammons' theory. Hammons alleges that Maryland "exercise[s] ultimate authority and control over the governance" of the Medical System by appointing its directors. Cmplt. ¶¶ 5 & 20; *see* Md. Code §§ 13-303(a)(1) & 13-304(b), (c)(5) & (d)(4). It provides medical services and care "to all citizens of the State," and the broad scope of its operations weighs in favor of sovereign immunity. Md. Code § 13-302(2); *Hutto*, 773 F.3d at 548; Cmplt. ¶¶ 17–18. And Maryland law treats the Medical System as an arm of the State under limited circumstances. Cmplt. ¶ 22; *see Hutto*, 773 F.3d at 548; *Napata v. Univ. of Md. Med. Sys. Corp.*, 12 A.3d 144, 151 (Md. 2011).

Thus, under Hammons' theory, as an "arm" of the State, the Medical System enjoys sovereign immunity and Hammons cannot assert constitutional claims against it. And, further, under his theory, because the Medical System is an arm of Maryland, he cannot assert any

Section 1983 claim against it because arms of a state are not "persons" under that statute.  *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70–71 (1989).

### III.   Hammons Has Failed To Allege A Plausible Establishment Clause Claim.

**1.**  Hammons argues he has sufficiently alleged "egregious" violations of the Establishment Clause.  Br. at 22.  But his rhetoric is not supported by the law.  A government action involving religion is permissible if it has a secular purpose, has the principal or primary effect of neither advancing nor inhibiting religion, and does not foster excessive entanglement with religion.  *See Lemon v. Kurtzman*, 403 U.S. 602, 612–13 (1971); *Buxton v. Kurtinitis*, 862 F.3d 423, 432 (4th Cir. 2017).  Here, the Medical System does not violate any prong of the *Lemon* test, and Hammons fails to allege any "specific facts" showing otherwise.  *Glassman v. Arlington Cnty., Va.*, No. 01:09-cv-1249, 2010 WL 1488515, at *10 (E.D. Va. Apr. 12, 2010).

*First*, Hammons fails to allege the Medical System acquired and operated St. Joseph under its Catholic legacy for a non-secular purpose.  *Lemon*, 403 U.S. at 612.  Hammons alleges just the opposite – that, before the Medical System acquired St. Joseph, the hospital suffered from "financial distress" and would not "surviv[e]," thus jeopardizing critical medical care to tens of thousands of patients in Northern Baltimore.  Cmplt. ¶ 26.  Hammons alleges that the Medical System agreed to operate St. Joseph according to its century-old Catholic legacy to keep its doors open and ensure "care" for patients as a condition of the deal.  *Id.* ¶ 32.  As Hammons alleges, allowing St. Joseph to maintain its Catholic legacy serves the secular purpose of preserving essential care for patients in the North Baltimore region.

*Second*, nowhere does Hammons allege the Medical System's ownership of St. Joseph advances any religion, or that a reasonable observer would think so.  *See Lemon*, 403 U.S. at 612; *Wood v. Arnold*, 915 F.3d 308, 314–15 (4th Cir. 2019).  Instead, Hammons relies on isolated posts on St. Joseph's website describing its Catholic legacy to argue an observer would

conclude the Medical System endorses Catholicism over other faiths.  Br. at 27.  But the Fourth

Circuit has *expressly rejected* such a narrow analysis, and has held that a court must examine

"the entire context surrounding the challenged practice" to determine whether a reasonable

observer would find an endorsement of religion.  *Wood*, 915 F.3d at 314–15.

Here, while St. Joseph maintains a century-old Catholic legacy of providing essential care

to patients in the North Baltimore region, it is only one of over 150 facilities affiliated with the

Medical System.  Moreover, St. Joseph widely advertises to the public that it accommodates

patients of all faiths and beliefs.[5]  Put in context, no reasonable observer would conclude the

Medical System endorses Catholicism.  *See id.*; *Smith v. Jefferson Cnty. Bd. of Sch. Comm'rs*,

788 F.3d 580, 587 (6th Cir. 2015).

*Third*, Hammons has failed to allege facts showing "excessive entanglement" between

the Medical System and the Church.  *Wood*, 915 F.3d at 318.  While Hammons equates the

application of the ERDs to delegating authority to the Church, Br. at 24 & 27, his cases

demonstrate his allegations come nowhere close to alleging any excessive entanglement.  They

involve governments vesting one religious group with legislative and executive powers over

traditionally public functions.  *See id.*

For example, in *Larkin v. Grendel's Den, Inc.*, 459 U.S. 116, 123–25 (1982), the

Supreme Court held a state statute violated the entanglement prong of *Lemon* because it vested a

church with zoning powers and veto authority over liquor license applications.  And in *Barghout

v. Bureau of Kosher Meat & Food Control*, 66 F.3d 1337, 1343–44 (4th Cir. 1995), the Fourth

Circuit held there was excessive entanglement where a statute vested a Jewish oversight board

---

[5]  *See* Spiritual Care, UNIV. OF MD. ST. JOSEPH MED. CTR., https://www.umms.org/sjmc/patients-visitors/for-patients/spiritual-care (last visited Dec. 21, 2020).

with power to decide kosher food standards and advise on punishment for violations.  *See also Commack Self-Serve Kosher Meats, Inc. v. Weiss*, 294 F.3d 415, 429 (2d Cir. 2002) (same).  But here, Hammons has not alleged any involvement of the Church in medical decisions or the day-to-day affairs of either the Medical System or St. Joseph, and therefore failed to plead a viable Establishment Clause claim.  *See Glassman v. Arlington Cnty*, 628 F.3d 140, 148–49 (4th Cir. 2010).

**2.**   Hammons further argues the Medical System "waived" arguments because it considered Hammons' claim under the *Lemon* test rather than other variations of that framework. Br. 23 n.10.  Not so.  The Fourth Circuit has formally adopted the *Lemon* test – not any of the other theories he invokes – to evaluate Establishment Clause claims.  *See Wood*, 915 F.3d at 315; *Buxton*, 862 F.3d at 425; *Lambeth v. Bd. of Comm'rs of Davidson Cnty.*, 407 F.3d 266, 268 (4th Cir. 2005); *Mellen v. Bunting*, 327 F.3d 355, 367 (4th Cir. 2003).  The other "theories" Hammons points to are merely additional factors courts may consider under the *Lemon* framework, and the Medical System addressed those theories in its Motion.  *See, e.g.*, *Wood*, 915 F.3d at 314–15; Mot. at 16–19.

In any event, Hammons has still failed to allege an Establishment Clause claim under the other variations of the *Lemon* test.[6]  Under the so-called "neutrality test," the government must exercise civil power in a religiously neutral manner.  *See Rosenberger v. Rector of Univ. of Va.*, 515 U.S. 819, 839 (1995).  Regarding the Medical System's "power" to acquire hospitals, Hammons argues the Medical System provides Catholic hospitals with "special status" and has

---

[6]  Even if the Medical System did not address other variations of the Establishment Clause framework, the Medical System may address it on reply because Hammons briefed the issue in his opposition.  *See June v. Thomasson*, No. GLR-14-2450, 2017 WL 3642944, at *5 (D. Md. Aug. 24, 2017); *see United States v. Head*, 340 F.3d 628, 630 n.4 (8th Cir. 2003).

not "assur[ed]" it will acquire hospitals with ties to other faiths.  Br. at 25.  But Hammons does

not allege the Medical System sought to acquire and maintain only historically Catholic hospitals

and no others.  *See Rosenberger*, 515 U.S. at 839.  Nor does St. Joseph only treat Catholic

patients:  It provides care to patients of all faiths and backgrounds, regardless of their "creed."[7]

Md. Code § 13-303(d); *see Rosenberger*, 515 U.S. at 839.

Hammons' allegations also fail to meet the "coercion test," under which a government

"may not coerce anyone to support or participate in a religion or its exercise."  *Lee v. Weisman*,

505 U.S. 577, 587 (1992).  That test is generally reserved for cases, unlike this one, involving

religious activities at schools because of the "receptivity of schoolchildren to endorsed religious

messages."  *Doe v. Elmbrook Sch. Dist.*, 687 F.3d 840, 851 (7th Cir. 2012); *see Myers v.*

*Loudoun Cnty. Pub. Sch.*, 418 F.3d 395, 406 (4th Cir. 2005); *Mellen*, 327 F.3d at 370.  But even

if it applied, Hammons has not alleged St. Joseph or the Medical System coerced doctors and

patients to adhere to Catholic teachings or practice Catholicism.[8]  *See Myers*, 418 F.3d at 407.

## IV.     Hammons' Equal Protection Claim Fails As A Matter Of Law.

Hammons summarily argues he does not have to allege the Medical System treated him

differently as a result of intentional discrimination or discriminatory animus because the ERDs

are "discriminatory on [their] face."  Br. at 31–32.  But his argument is belied by the plain

language of the ERDs, which prohibit procedures for the "[d]irect sterilization of either *men or*

---

[7] *See supra* note 5.
[8] Hammons also argues for a "delegation test" where the government may not delegate any traditional state powers to religions groups or institutions.  Br. at 24.  But that is not a separate test.  Courts assess the delegation of state power when considering *Lemon*'s excessive entanglement prong.  *See, e.g.*, *Commack Self-Service Kosher Meats, Inc.*, 294 F.3d at 429; *supra* at 9.  Even if the Court considered it a separate test, Hammons would not satisfy it because he has failed to allege the Medical System has delegated medical care or operation decisions to the Church – which are not state powers in any event.  *See supra* at 11; Mot. at 16–19; *Glassman*, 628 F.3d at 148–49.

*women*" or those that impact the "functional integrity" of the human body.  ERDs ¶¶ 29 & 53 (emphasis added).  On their face, the ERDs do not compel decision-making based on gender or gender identity, and thus are facially neutral.  *Id.*; *see Sylvia Dev. Corp. v. Calvert Cnty.*, 48 F.3d 810, 819–20 (4th Cir. 1995).

In that critical respect, the ERDs are nothing like the facially discriminatory policies at issue in the cases Hammons cites.  Br. at 31.  *Every single* sex-based equal protection case Hammons cites involves policies or directives that facially classify on the basis of gender and gender identity.  For example, in *Grimm v. Gloucester Cty. Sch. Bd.*, 972 F.3d 586 (4th Cir. 2020), the Fourth Circuit determined restroom policies designating facilities for men and women facially classify on the basis of gender.  *See id.* at 608–09.  And in *U.S. v. Virginia*, 518 U.S. 515, 520 (1996), the Supreme Court considered a public college's *male-only* admissions policy.

Hammons' other cases involve explicit classifications based on gender and gender identity, including bans on transgender individuals from serving in the U.S. military, *Stone v. Trump*, 356 F. Supp. 3d 505, 513 (D. Md. 2018), and insurance policy exclusions for transgender-specific treatments only, *see, e.g.*, *Kadel v. Folwell*, 446 F. Supp. 3d 1, 18 (M.D.N.C. 2020).[9]  Such explicit classifications are not facially neutral, and they are unlike the ERDs, which do not rely on gender classifications and maintain a general policy of disallowing sterilization procedures for any patient, man or woman, transgender or not.  ERDs ¶¶ 29 & 53.

Because the ERDs are facially neutral, Hammons must allege he was treated differently because of *intentional* discrimination or discriminatory animus.  *See Equity In Athletics, Inc. v. Dep't of Educ.*, 639 F.3d 91, 108 (4th Cir. 2011); *Schiffbauer v. Schmidt*, 95 F. Supp. 3d 846,

---

[9]  *See also Toomey v. Arizona*, No. CV-19-00035-TUC-RM, 2019 WL 7172144, at *1 (D. Ariz. Dec. 23, 2019); *Flack v. Wisc. Dep't of Health Servs.*, 328 F. Supp. 3d 931, 950 (W.D. Wisc. 2018); *Boyden v. Conlin*, 341 F. Supp. 3d 979, 988 (W.D. Wisc. 2018).

856 (D. Md. 2015).  That is, at a minimum, Hammons must allege that the Medical System "selected or reaffirmed a particular course of action. . . . *because of* its adverse effects upon an identifiable group."  *Personnel Adm'r of Ma. v. Feeney*, 442 U.S. 256, 279 (1979).  But he nowhere alleges St. Joseph or the Medical System intended to apply the ERDs to deny Hammons' surgery "because of" the alleged harm it would cause him as a transgender patient. *Id.*  That deficiency is fatal to his equal protection claim.  *See id.*

## V.    Hammons' ACA Claim Also Fails As A Matter Of Law.

Hammons' ACA claim also cannot proceed for an obvious, but fatal, flaw.  To state his claim under Section 1557, which incorporates Title IX's sex-discrimination protections, Hammons must allege the Medical System discriminated against him on the basis of sex, the discrimination was intentional, and the discrimination was a "substantial" or "motivating factor" for their actions.  *Weinreb v. Xerox Bus. Servs., LLC Health & Welfare Plan*, 323 F. Supp. 3d 501, 521 (S.D.N.Y. 2018); *see* 42 U.S.C. § 18116(a).  But here, Hammons has not alleged, because he cannot allege, any facts plausibly demonstrating the Medical System intentionally discriminated against him on the basis of sex.  The ERDs are facially neutral, ERDs ¶¶ 29 & 53, and Hammons has not alleged the Medical System intentionally discriminated against him on the basis of sex or that his sex was a substantial or motivating factor for why his procedure did not go forward at St. Joseph.  *See Weinreb*, 323 F. Supp. 3d at 521.

Hammons is mistaken that he does not have to allege any intentional discrimination and motive under *Bostock v. Clayton Cnty.*, 140 S. Ct. 1731 (2020).  Br. at 35.  In *Bostock*, the Court reaffirmed that a plaintiff *must* plead discriminatory intent and motive.  *See Bostock*, 140 S. Ct. at 1740.  And every court that has addressed a Section 1557 required a plaintiff to plead and prove those elements too.  *See, e.g.*, *Oh. Nurses Assoc. v. Ashtabula Cnty. Medical Center*, No. 1:20CV1656, 2020 WL 4390524, at *5 (N.D. Oh. July 31, 2020); *Weinreb*, 323 F. Supp. 3d at

-14-

521; *Briscoe v. Health Care Service Corp.*, 281 F. Supp. 3d 725, 738–39 (N.D. Ill. 2017).

Accordingly, because Hammons has not alleged any intentional discrimination or motive by the

Medical System, his ACA claim must be dismissed.  *See Weinreb*, 323 F. Supp. 3d at 521–22.[10]

## CONCLUSION

The Court should grant the Medical System's Motion.


Dated: December 21, 2020

*/s/ Denise Giraudo*
Denise Giraudo (Bar No. 29015)
Paul Werner (*pro hac vice*)
Imad Matini (*pro hac vice*)
SHEPPARD, MULLIN, RICHTER &
HAMPTON LLP
2099 Pennsylvania Ave., N.W., Suite 100
Washington, D.C. 20036
Tel: 202-747-1906
Fax: 202-747-3933
dgiraudo@sheppardmullin.com
pwerner@sheppardmullin.com
imatini@sheppardmullin.com

---

[10]  Hammons is mistaken that the currently enjoined regulations promulgated by the U.S. Department of Health and Human Services ("HHS") implementing Section 1557 are irrelevant here.  Br. at 34.  Although currently enjoined, those regulations address many relevant issues such as the definitions of "gender identity," religious conscience exemptions, and Title IX's religious exemption.  *See* 85 Fed. Reg. 37160-01, 2020 WL 3298450 (June 19, 2020); 84 Fed. Reg. 23170, 2019 WL 2174213 (May 21, 2019).  Accordingly, the Medical System reserves its right to present additional arguments based on those regulations.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 21, 2020, Plaintiff's counsel was served with the

foregoing document through the Court's Electronic Case Filing System.

<u>__ /s/ Denise Giraudo_____</u>
Denise Giraudo