# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

JESSE HAMMONS,                   )

                        )

            Plaintiff,          )

                        )

    v.                        )      Case No. 20-cv-2088-DKC

                        )

UNIVERSITY OF MARYLAND MEDICAL SYSTEM   )

     CORPORATION, et al.,       )

                        )

            Defendants.        )

                        )

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION
## FOR PARTIAL RECONSIDERATION OR, IN THE ALTERNATIVE,
## <u>CERTIFICATION OF INTERLOCUTORY APPEAL</u>

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...............................................................................................1

LEGAL STANDARD...........................................................................................................4

ARGUMENT .....................................................................................................................5

I.      THE COURT SHOULD RECONSIDER ITS ASSUMPTION THAT THE TEST
        FOR STATE ACTION UNDER *LEBRON* IS SYNONYMOUS WITH THE
        TEST FOR SOVEREIGN IMMUNITY.......................................................................5

        A.      Under *Lebron*, Government-Created Corporations Can Be State Actors for
                Purposes of Individuals' Constitutional Rights Without Being Vested with
                the Government's Sovereign Immunity..........................................................6

        B.      Plaintiff Does Not Argue That Maryland "Waived" UMMS's Sovereign
                Immunity ...................................................................................................9

II.     THE COURT SHOULD RECONSIDER ITS CONCLUSION THAT UMMS IS
        ENTITLED TO SOVEREIGN IMMUNITY UNDER THE *RAM DITTA*
        FACTORS.........................................................................................................13

        A.      The Second *Ram Ditta* Factor Weighs Strongly Against Sovereign
                Immunity.................................................................................................14

        B.      The Fourth *Ram Ditta* Factor Is Neutral ....................................................18

III.    IF RECONSIDERATION IS DENIED, THE COURT SHOULD CERTIFY
        COUNTS I AND II FOR INTERLOCUTORY APPEAL ...............................................21

CONCLUSION..................................................................................................................23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.S. Abell Pub. Co. v. Mezzanote*,
   297 Md. 26 (1983) ...................................................................................................18

*Am. Canoe Ass'n v. Murphy Farms, Inc.*,
   326 F.3d 505 (4th Cir. 2003) ................................................................................4, 5

*Bank of U.S. v. Planters' Bank of Ga.*,
   22 U.S. 904 (1824)..................................................................................................10

*Bedoya v. Am. Eagle Express*,
   No. CV 14-2811 (ES) (JAD), 2017 WL 4330351 (D.N.J. Sept. 29, 2017) ...........23

*Burks v. Allen*,
   238 Md. App. 418 (2018) ........................................................................................19

*Bushek v. Wash. Suburban Sanitary Comm'n*,
   155 F. Supp. 2d 478 (D. Md. 2001)..............................................................3, 15, 17

*Butler v. DirectSAT USA, LLC*,
   307 F.R.D. 445 (D. Md. 2015) (Chasanow, J.)......................................................22

*Byrd v. Deveaux*,
   No. CV DKC 17-3251, 2018 WL 305838
   (D. Md. Jan. 5, 2018) (Chasanow, J.) ....................................................................14

*Cal. v. Deep Sea Research, Inc.*,
   523 U.S. 491 (1998)................................................................................................10

*Carlson v. Bos. Sci. Corp.*,
   856 F.3d 320 (4th Cir. 2017) ...................................................................................4

*Cash v. Granville Cty. Bd. of Educ.*,
   242 F.3d 219 (4th Cir. 2001) ..................................................................................16

*Coal. For Equity & Excellence In Md. Higher Educ. v. Md. Higher Educ.
   Comm'n*, No. CIV. CCB-06-2773,
   2015 WL 4040425 (D. Md. June 29, 2015)............................................................22

*Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*,
   527 U.S. 666 (1999)...........................................................................................10, 11

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

*Crowe v. Or. State Bar*,
989 F.3d 714 (9th Cir. 2021) ........................................................................7

*Fowlkes v. Choudhry*,
No. 24-C-16-001919, — A.3d —, 2021 WL 1381348 (Md. Mar. 26, 2021) ........................19

*Glenn v. Marsh*,
806 F. App'x 252 (4th Cir. 2020) ........................................................................13

*Hammons v. Univ. Md. Med. Sys. Corp.*,
No. CV DKC-20-2088, 2021 WL 3190492 (D. Md. July 28, 2021) ............................... *passim*

*Hess v. Port Auth. Trans-Hudson Corp.*,
513 U.S. 30 (1994) ........................................................................16

*Humane Soc'y of the U.S. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*,
No. CV DKC 13-1822,
2016 WL 3668028 (D. Md. July 11, 2016) (Chasanow, J.)........................................14

*Hutto v. S.C. Ret. Sys.*,
773 F.3d 536 (4th Cir. 2014) ........................................................................11, 19, 20

*Jacobson v. Comcast Corp.*,
No. 1:09-CV-562, 2010 WL 5463084 (D. Md. Dec. 29, 2010) .............................................23

*JTH Tax, Inc. v. Aime*,
984 F.3d 284 (4th Cir. 2021) ........................................................................4

*In re Kapla*,
485 B.R. 136 (Bankr. E.D. Mich. 2012),
*aff'd*, No. ADV 12-4000, 2014 WL 346019 (E.D. Mich. Jan. 30, 2014) ..................................7

*In re Trump*,
958 F.3d 274 (4th Cir. 2020), *cert. granted, judgment vacated as moot*, 141 S.
Ct. 1262 (2021) ........................................................................21

*In re Wood*,
993 F.3d 245 (4th Cir. 2021) ........................................................................12

*Lake Country Estates, Inc. v. Tahoe Reg'l Planning Agency*,
440 U.S. 391 (1979)........................................................................8

*Lane v. Anderson*,
660 F. App'x 185 (4th Cir. 2016) ........................................................................7, 8

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Lane v. Pena*,
  518 U.S. 187 (1996) .................................................................................11

*Lebron v. Nat'l R.R. Passenger Corp.*,
  513 U.S. 374 (1995) ............................................................................. *passim*

*Manning v. Caldwell for City of Roanoke*,
  930 F.3d 264 (4th Cir. 2019) (en banc) .................................................7

*Md. Bd. of Physicians v. Geier*,
  241 Md. App. 429 (2019) .......................................................................20

*MedSense, LLC v. Univ. Sys. of Md.*,
  420 F. Supp. 3d 382 (D. Md. 2019) .......................................................12

*Miller v. Ill. Cent. R.R. Co.*,
  474 F.3d 951 (7th Cir. 2007) ...................................................................7

*Mohawk Indus., Inc. v. Carpenter*,
  558 U.S. 100 (2009) ..........................................................................22, 23

*Napata v. Univ. of Maryland Med. Sys. Corp.*,
  417 Md. 724 (2011) ............................................................................. *passim*

*N.C. ex rel. Biser v. U.S.*,
  No. CV 20-1783, — F.4th —, 2021 WL 3197042 (4th Cir. July 29, 2021) ...........................11

*Parrett v. Se. Boll Weevil Eradication Found., Inc.*,
  155 F. App'x. 188 (6th Cir. 2005) ............................................................7

*Ram Ditta v. Md. Nat'l Capital Park & Planning Comm'n*,
  822 F.2d 456 (4th Cir. 1987) ................................................................ *passim*

*Rose v. Harloe Mgmt. Corp.*,
  No. CV GLR-16-761, 2017 WL 193295 (D. Md. Jan. 17, 2017) ...........................13

*U.S. ex rel. Oberg v. Penn. Higher Educ. Assistance Agency*,
  745 F.3d 131 (4th Cir. 2014) ................................................................ *passim*

*U.S. ex rel. Oberg v. Penn. Higher Educ. Assistance Agency*,
  804 F.3d 646 (4th Cir. 2015) ................................................................ *passim*

*Wagner v. Warden*,
  No. CV ELH-14-791, 2016 WL 1169937 (D. Md. Mar. 24, 2016) ................................4, 9, 13

iv

**TABLE OF AUTHORITIES**

**(continued)**

**Page(s)**

*Wash. Suburban Sanitary Comm'n v. Phillips*,
   413 Md. 606 (2010) .................................................................................18

*Williams v. Big Picture Loans, LLC*,
   929 F.3d 170 (4th Cir. 2019) ...................................................................11

**Statutes**

28 U.S.C. § 1292 ................................................................................... *passim*

49 U.S.C. § 24301 ...........................................................................................7

Md. Code Ann., Educ. § 13-301 .............................................................12, 19

Md. Code Ann., Educ. § 13-302 .......................................................16, 19, 21

Md. Code Ann., Educ. § 13-303 .......................................................10, 16, 17

Md. Code Ann., Educ. § 13-306 ...................................................................17

Md. Code Ann., Educ. § 13-308 .......................................................11, 12, 19

Md. Code Ann., Educ. § 13-309 ...................................................................17

Md. Code Ann., Educ. § 13-310 ...................................................................20

Md. Code Ann., State Gov't § 12-104 ..........................................................20

**Other Authorities**

Fed. R. Civ. P. 54 ...................................................................................1, 4, 24

For the reasons set forth below, Plaintiff Jesse Hammons ("Plaintiff" or "Mr. Hammons") respectfully moves pursuant to Federal Rule of Civil Procedure 54(b) for the Court to reconsider its July 28, 2021 Memorandum Opinion and Order (ECF Nos. 52 and 53) to the extent it dismissed Mr. Hammons's constitutional claims based on a finding that Defendants University of Maryland Medical System Corporation ("UMMS"), UMSJ Health System, LLC, and University of Maryland St. Joseph Medical Center, LLC (collectively, "Defendants"), enjoy Eleventh Amendment sovereign immunity.  In the alternative, Mr. Hammons moves pursuant to 28 U.S.C. § 1292(b) for certification of an interlocutory appeal.

## PRELIMINARY STATEMENT

In its Memorandum Opinion granting Defendants' motion to dismiss Mr. Hammons's constitutional claims, this Court agreed with Mr. Hammons that UMMS is a state actor under *Lebron v. National Railroad Passenger Corp.*, 513 U.S. 374 (1995), but nevertheless held that UMMS is protected by sovereign immunity from suit in federal court.  Mr. Hammons respectfully submits that the Court's conclusion that UMMS is entitled to sovereign immunity should be reconsidered for at least two reasons.

*First*, this Court faulted Mr. Hammons for trying to "have it both ways" by arguing that UMMS *is* a state actor under *Lebron* but is *not* protected by sovereign immunity.  The Court assumed that the inquiry into whether a corporation is a state actor under *Lebron* is "synonymous" with the inquiry into whether that corporation has sovereign immunity. *Hammons v. Univ. Md. Med. Sys. Corp.*, No. CV DKC-20-2088, 2021 WL 3190492, at *12-13 (D. Md. July 28, 2021) ("Opinion").  But *Lebron* squarely rejected that assumption.  *Lebron* explained that Amtrak was part of the government for purposes of individual rights, but Congress's statutory disavowal of Amtrak's agency status in the corporation's charter "deprive[d]" Amtrak of sovereign immunity.  *Lebron*, 513 U.S. at 392.  Defendants' "cannot

1

have it both ways" argument, which the Court characterized as "correct," Opinion, 2021 WL 3190492, at *7, is in fact directly contrary to the holding of *Lebron*.

Here, just as the organizational statute creating Amtrak disavowed the corporation's status as an agency of the federal government, the organizational statute creating UMMS disavowed the corporation's status as an agency of the State of Maryland.  As a result, *Lebron* instructs that UMMS—like Amtrak—is a state actor, but has not been clothed with sovereign immunity.

Instead of holding Defendants to their burden of establishing that UMMS was vested with sovereign immunity despite the statute's disavowal of UMMS's agency status, the Court misapprehended Mr. Hammons as arguing that the disavowal of agency status "waived" sovereign immunity.  The Court faulted Mr. Hammons for failing to identify an "express and unequivocal" waiver of sovereign immunity, Opinion, 2021 WL 3190492, at *15, but Mr. Hammons's burden to establish a waiver of sovereign immunity does not arise until Defendants carry their burden of establishing that UMMS has any sovereign immunity to waive.  Because *Lebron* instructs that a statutory disavowal of agency status deprives a government-created corporation of sovereign immunity, and because UMMS's authorizing statute disavows UMMS's status as an agency or governmental entity, Defendants have failed to establish that UMMS has been clothed with sovereign immunity.  Respectfully, the Court's decision to the contrary warrants reconsideration.

*Second*, Mr. Hammons requests that the Court grant reconsideration because it resolved the *Ram Ditta* factors in Defendants' favor without the benefit of proper briefing on the issue.  In their opening brief, Defendants gave scant attention to the issue of sovereign immunity, incorrectly contending that, if UMMS was found to be a government actor for purposes of

2

individual constitutional rights, then, *ipso facto*, UMMS would also be entitled to claim sovereign immunity.  Defendants did not cite *Ram Ditta v. Maryland National Capital Park & Planning Commission*, 822 F.2d 456, 457 (4th Cir. 1987), or address any of the *Ram Ditta* factors.  As a result, Mr. Hammons did not comprehensively address *Ram Ditta* in his opposition brief.  Defendants ultimately raised the *Ram Ditta* factors for the first time in their reply brief, but still failed to meaningfully address how the relevant factors weighed in Defendants' favor. Instead of holding that Defendants had forfeited reliance on the *Ram Ditta* factors by failing to raise that test in their opening brief, the Court faulted Mr. Hammons for failing to fully address *Ram Ditta* in his opposition.  *See* Opinion, 2021 WL 3190492, at *14.  As a result, Mr. Hammons was deprived of the opportunity to meaningfully respond to any *Ram Ditta* argument.

Without the benefit of proper briefing, the Court erroneously concluded that Defendants satisfied the *Ram Ditta* arm-of-state test, contrary to Fourth Circuit precedent in *United States ex rel. Oberg v. Pennsylvania Higher Education Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014) ("*Oberg II*"), and *United States ex rel. Oberg v. Pennsylvania Higher Education Assistance Agency*, 804 F.3d 646, 668 (4th Cir. 2015) ("*Oberg III*").  In resolving the *Ram Ditta* factors in favor of Defendants, this Court relied heavily on *Napata v. University of Maryland Medical System Corp.*, 417 Md. 724 (2011), a case which held that "UMMS is an 'instrumentality of the State' for purposes of [Maryland's Public Information Act ("PIA")]," *id.* at 727.  But when determining whether an entity is sufficiently independent of a state to lack sovereign immunity, *Ram Ditta* requires courts to examine different indicia of autonomy than the ones considered by the Maryland Court of Appeals in *Napata*.  *See Oberg II*, 745 F.3d at 137; *Oberg III*, 804 F.3d at 668; *Bushek v. Wash. Suburban Sanitary Comm'n*, 155 F. Supp. 2d 478, 482 (D. Md. 2001).  And, even under Maryland state law, as the Court itself recognized, *Napata*

3

"did not concern state sovereign immunity and thus has no bearing on this specific issue."

Opinion, 2021 WL 3190492, at *15.  Mr. Hammons respectfully submits if the Court had applied

*Ram Ditta* in accordance with the Fourth Circuit's analysis in *Oberg II* and *Oberg III*, it would

have been bound by precedent to conclude that the *Ram Ditta* factors weigh heavily *against*

sovereign immunity.

For these reasons, reconsideration is warranted.  If the Court declines reconsideration,

however, Mr. Hammons respectfully requests that this issue be certified for immediate,

interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

## LEGAL STANDARD

Interlocutory orders may be "revised at any time before the entry of a judgment

adjudicating all the claims and all the parties' rights and liabilities."  Fed. R. Civ. P. 54(b).

"Motions for reconsideration of interlocutory orders are not subject to the strict standards

applicable to motions for reconsideration of a final judgment."  *Am. Canoe Ass'n v. Murphy

Farms, Inc.*, 326 F.3d 505, 514 (4th Cir. 2003); *see also JTH Tax, Inc. v. Aime*, 984 F.3d 284,

289 n.2 (4th Cir. 2021).  The power to reconsider interlocutory orders "is committed to the

discretion of the district court, and doctrines such as law of the case . . . have evolved as a means

of guiding that discretion" in light of "concerns of finality and judicial economy."  *Am. Canoe

Ass'n*, 326 F.3d at 515 (internal punctuation omitted).

A court "may depart from the law of the case" based on "(1) a subsequent trial producing

substantially different evidence; (2) a change in applicable law; or (3) clear error causing

manifest injustice."  *Carlson v. Bos. Sci. Corp.*, 856 F.3d 320, 325 (4th Cir. 2017) (internal

punctuation omitted).  "Clear error or manifest injustice occurs where a court has patently

misunderstood a party, or has made a decision outside the adversarial issues presented to the

Court by the parties, or has made an error not of reasoning but of apprehension."  *Wagner v.*

*Warden*, No. CV ELH-14-791, 2016 WL 1169937, at *3 (D. Md. Mar. 24, 2016) (internal

punctuation omitted).  The Fourth Circuit has also emphasized that reconsideration is more

readily available where a "decision on the issue was . . . rendered early in the litigation, before

there had been much factual development, discovery, or opportunity . . . to consult experts." *Am.*

*Canoe Ass'n*, 326 F.3d at 516.  "The ultimate responsibility of the federal courts, at all levels, is

to reach the correct judgment under law." *Id.* at 515.

Separately, a district court may permit an interlocutory appeal pursuant to 28 U.S.C.

§ 1292(b), if it determines that an order involves "a controlling question of law as to which there

is substantial ground for difference of opinion and that an immediate appeal from the order may

materially advance the ultimate termination of the litigation."

## ARGUMENT

**I.    THE COURT SHOULD RECONSIDER ITS ASSUMPTION THAT THE
TEST FOR STATE ACTION UNDER *LEBRON* IS SYNONYMOUS WITH
THE TEST FOR SOVEREIGN IMMUNITY**

Respectfully, Mr. Hammons submits that the Court made a clear error of law causing

manifest injustice by equating the test for whether a corporation is a state actor under *Lebron*

with the test for whether a corporation is vested with sovereign immunity, and concluding that

because UMMS is a state actor under *Lebron*, it must therefore enjoy sovereign immunity.  The

Court accepted as "correct" Defendants' argument that Mr. Hammons's constitutional claims are

premised on a "fatal paradox," reasoning that Mr. Hammons "cannot have it both ways" and that

the claims must either be dismissed for failure to state a claim (because UMMS is not a state

actor) or for lack of subject matter jurisdiction (because UMMS enjoys sovereign immunity).

Opinion, 2021 WL 3190492, at *7.  In choosing the latter course, the Court stated:

> It may seem strained to rely on *Lebron* to determine whether UMMS is part and parcel of
> government for purposes of state action, and then deploy a separate test to determine
> whether UMMS is an arm of the state for purposes of sovereign immunity.  ***Indeed, the***

> *inquiries are really synonymous and the arm-of-the-state analysis answers both questions*.

*Id.* at \*13 (emphasis added).  Although the Court continued to analyze sovereign immunity under the *Ram Ditta* factors, its discussion nonetheless treated sovereign immunity as a foregone conclusion once UMMS's state actor status was established.  But neither Defendants nor the Court cited authority for the proposition that the test for state action under *Lebron* and the test for sovereign immunity are synonymous.  To the contrary, *Lebron* itself makes plain that, in fact, the two inquiries are divorced, and that in the precise circumstances presented here—a state-created corporation that disclaims agency status by statute—the corporation is a state actor, but holds no sovereign immunity.

A.     **Under *Lebron*, Government-Created Corporations Can Be State Actors for Purposes of Individuals' Constitutional Rights Without Being Vested with the Government's Sovereign Immunity**

*Lebron* squarely establishes that Defendants' "cannot have it both ways" argument is incorrect.  The Supreme Court held in *Lebron* that Amtrak was part of the government for purposes of individual rights because (a) it is a government corporation "created by special law" (b) "for the furtherance of governmental objectives," and (c) the government "retains for itself permanent authority to appoint a majority of the directors."  513 U.S. at 399.  But the Supreme Court also explained that, because Amtrak's statutory charter stated that the corporation was not an agency of the United States, Amtrak did not possess the "inherent powers and immunities of Government agencies."  *Id.* at 392.  In particular, the Court said it had "no doubt" that the statutory disavowal of Amtrak's agency status *"deprives Amtrak of sovereign immunity from suit.*"  *Id.* (emphasis added).  The statutory disclaimer was "*assuredly dispositive*" of that issue, as a matter within Congress's power to control and eliminate.  *Id.* (emphasis added).

In accordance with *Lebron*'s plain terms, Courts applying *Lebron* have consistently

recognized that a corporation may be part of the government under *Lebron* but still not be

clothed with sovereign immunity from suit.  *See Miller v. Ill. Cent. R.R. Co.*, 474 F.3d 951, 957

(7th Cir. 2007) ("[T]he fact that Amtrak's organic statute says that Amtrak 'is not a department,

agency, or instrumentality of the United States Government,' 49 U.S.C. § 24301(a)(3), is a

disclaimer of sovereign immunity."); *Parrett v. Se. Boll Weevil Eradication Found., Inc.*, 155 F.

App'x. 188, 192 (6th Cir.  2005) (applying *Lebron* to a government-created corporation and

concluding that "*Lebron* itself suggests that the inquiry over sovereign immunity differs from the

inquiry over whether an organization may be subject to constitutional claims"); *In re Kapla*, 485

B.R. 136, 148 (Bankr. E.D. Mich. 2012) ("[T]he test for determining whether a corporation may

invoke sovereign immunity is different than the test for determining whether a corporation is a

government actor for purposes of constitutional claims, even though those tests may overlap."),

*aff'd,* No. ADV 12-4000, 2014 WL 346019 (E.D. Mich. Jan. 30, 2014).[1]

     There is nothing anomalous about *Lebron*'s distinction between state action and

sovereign immunity.  *See Crowe v. Or. State Bar*, 989 F.3d 714, 730 (9th Cir. 2021) ("Finding

that an entity is the 'state' for purposes of the First Amendment or the Due Process and Equal

Protection Clauses, however, is not the same as concluding that the entity is the 'state' for

purposes of the Eleventh Amendment.  [The] tests for state action . . . are quite different from

[the] factors required for sovereign immunity.").  It is well-settled that "not every entity

exercising a 'slice of state power' is entitled to [the] protection" of sovereign immunity from

---

[1] Even if the *Lebron*'s conclusions regarding sovereign immunity were considered dicta, the Court would not be "free to ignore it."  *Manning v. Caldwell for City of Roanoke*, 930 F.3d 264, 281-82 (4th Cir. 2019) (en banc).  "To the contrary, [lower courts] routinely afford substantial, if not controlling deference to dicta from the Supreme Court.  Respect for the rule of law demands nothing less: lower courts grappling with complex legal questions of first impression must give due weight to guidance from the Supreme Court, so as to ensure the consistent and uniform development and application of the law."  *Id.*

suit.  *Lane v. Anderson*, 660 F. App'x 185, 195 (4th Cir. 2016) (quoting *Lake Country Estates,*

*Inc. v. Tahoe Reg'l Planning Agency*, 440 U.S. 391, 400-01 (1979)).  For example, state-created

municipal corporations and political subdivisions are state actors for purposes of respecting

individual constitutional rights, but "the [Supreme] Court has consistently refused to construe the

[Eleventh] Amendment to afford protection to political subdivisions such as counties and

municipalities."  *Lake Country Estates*, 440 U.S. at 401.

     Moreover, even if *Lebron* had not itself recognized such a distinction, a simple

comparison between *Lebron*'s three-part test for state action and the *Ram Ditta*'s four-part test

for sovereign immunity makes clear that the two inquiries are far from "synonymous."  As

discussed in greater depth, *infra*, in determining whether a state-created entity is clothed with the

state's sovereign immunity from suit in federal court, *Ram Ditta* instructs courts to consider

(1) whether the state treasury will be responsible for paying any judgment that might be

awarded; (2) whether the entity exercises a significant degree of autonomy from the state;

(3) whether it is involved with local, as opposed to statewide, concerns; and (4) how the entity is

treated as a matter of state law.  But under *Lebron*, a corporation may be considered part of the

government for purposes of respecting constitutional rights regardless of whether a judgment

against it would be paid by the state treasury (*Ram Ditta* factor 1), regardless of whether the

corporation addresses state or local concerns (*Ram Ditta* factor 3), and regardless of how the

corporation is treated under state law (*Ram Ditta* factor 4).  Both *Lebron* and *Ram Ditta*'s second

factor inquire into whether a corporation has autonomy, but the two tests ask very different

questions.  Under *Lebron*—as this Court recognized—a court does not "look beyond the

composition of a board of directors to ascertain governmental control."  Opinion, 2021 WL

3190492, at *11.  By contrast, when determining whether an entity has been clothed with the

State's sovereign immunity under *Ram Ditta*, the court must look beyond the composition of the Board to "other indicia relevant to the autonomy analysis," including an entity's "source of funding, control over its revenues, and corporate powers."  *Oberg II*, 745 F.3d at 139.

For all these reasons, the Court's acceptance of Defendants' argument that Mr. Hammons "cannot have it both ways" warrants reconsideration.  As Mr. Hammons argued in opposition to Defendants' motion, *Lebron* squarely dictates that Defendants' "cannot have it both ways" argument is incorrect.  But the Court did not address Mr. Hammons's argument or otherwise explain how Defendants' sovereign immunity arguments could be squared with *Lebron*'s instruction that Amtrak lacked sovereign immunity.  Thus reconsideration is appropriate here.

### B.    Plaintiff Does Not Argue That Maryland "Waived" UMMS's Sovereign Immunity.

Instead of addressing Mr. Hammons's argument that Maryland's disavowal of UMMS's agency status deprived UMMS of sovereign immunity under *Lebron*, the Court misapprehended Mr. Hammons to be arguing that "the Maryland legislature waived UMMS's sovereign immunity."  Opinion, 2021 WL 3190492, at *12.  Mr. Hammons respectfully submits that the Court's misreading of Mr. Hammons's argument was "an error not of reasoning but of apprehension," warranting reconsideration.  *Wagner*, 2016 WL 1169937 at *3.

Mr. Hammons does not argue that Maryland waived sovereign immunity.  Mr. Hammons argues that—under *Lebron*—the organizing statute for UMMS created an entity that was never vested with sovereign immunity in the first place.  As discussed above, the Supreme Court in *Lebron* explained that, because Amtrak's statutory charter stated that the corporation was not an agency of the United States, Amtrak did not possess the "inherent powers and immunities of Government agencies."  513 U.S. at 392.  In particular, the Court said it had "no doubt" that the statutory disavowal of Amtrak's agency status *"deprives Amtrak of sovereign immunity from*

*suit*." *Id.* (emphasis added).  The authorizing statute for UMMS contains a virtually identical disclaimer of UMMS's status as an agency or governmental entity.  *See* Md. Code Educ. § 13-303(a)(2) (providing that UMMS "shall not be a State agency, political subdivision, public body, public corporation, or municipal corporation and is not subject to any provisions of law affecting only governmental or public entities").  Accordingly, *Lebron*, whose analysis of federal sovereign immunity is closely analogous to the Eleventh Amendment issue presented here, establishes that Maryland's "statutory disavowal" of UMMS's governmental status deprives UMMS of Maryland's sovereign immunity from suit.  *See Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 682 (1999) (explaining that federal sovereign immunity is "obviously the closest analogy" to state Eleventh Amendment immunity); *Cal. v. Deep Sea Research, Inc.*, 523 U.S. 491, 506-07 (1998) ("In considering whether the Eleventh Amendment applies . . . this Court has recognized a correlation between sovereign immunity principles applicable to States and the Federal Government."); *cf. Lebron*, 513 U.S. at 398-99 (relying on *Bank of U.S. v. Planters' Bank of Ga.*, 22 U.S. 904 (1824), an Eleventh Amendment case, for the proposition that Amtrak lacked the "privilege[]" of sovereign immunity, but noting that it "does not contradict" *Planter's Bank* "to hold that a corporation is an agency of the Government, for purposes of the constitutional obligations of Government rather than the 'privileges of the government'").

Because the Court misunderstood Mr. Hammons to be arguing that the statutory disavowal of UMMS's agency status "waived" UMMS's sovereign immunity, the Court did not properly analyze the terms of the statutory disclaimer.  Opinion, 2021 WL 3190492, at *15.  The Court correctly observed that Maryland's statutory disavowal of UMMS's agency status did not "contain an express waiver of sovereign immunity." *Id.*  But the same observations apply to the

disclaimer of agency status in *Lebron*.  Like waivers of states' sovereign immunity, a waiver of the federal government's sovereign immunity "must be unequivocally expressed in statutory text."  *Lane v. Pena*, 518 U.S. 187, 192 (1996); *accord N.C. ex rel. Biser v. U.S.*, No. CV 20-1783, — F.4th —, 2021 WL 3197042, at *4 (4th Cir. July 29, 2021); *Fla. Prepaid*, 527 U.S. at 682 (explaining that there is "no reason why the rule should be different" for waiver of state and federal sovereign immunity).  Yet the *Lebron* Court found that Congress's disavowal of Amtrak's agency status was sufficient to "deprive" Amtrak of sovereign immunity even though the statutory disclaimer did not expressly mention sovereign immunity, liability for lawsuits, or potential remedies against Amtrak.  The *Lebron* Court said that the statutory disavowal "deprived" Amtrak of sovereign immunity, not that the disavowal constituted a "waiver."

By misconstruing Mr. Hammons's argument as one of waiver, the Court misallocated the burden of proof.  Defendants are the parties that bear the burden of establishing whether UMMS is entitled to sovereign immunity.  *Hutto v. S.C. Ret. Sys.*, 773 F.3d 536, 542-43 (4th Cir. 2014).  Mr. Hammons's burden to establish a clear and unequivocal waiver of sovereign immunity does not arise until Defendants establish that UMMS has any sovereign immunity to waive.  *See Williams v. Big Picture Loans, LLC*, 929 F.3d 170, 177 (4th Cir. 2019) ("Once a defendant has [shown it is clothed in sovereign immunity], the burden to prove that immunity has been abrogated or waived would then fall to the plaintiff.").  The Court's misallocation of burdens is apparent from the portion of the Opinion in which the Court appeared to credit Defendants' argument that UMMS enjoys sovereign immunity because its organizing statute expressly preserves sovereign immunity for "the State" and "the University."  Md. Code Ann., Educ. § 13-308(f).  The Court recognized that the statute did not actually indicate that UMMS has sovereign immunity—and thus gave no support to Defendants' position.  Opinion, 2021 WL 3190492, at

11

*15.  But the Court nevertheless held that "[e]ven assuming that the provision relied upon by Defendants does not pertain to UMMS specifically, [Mr. Hammons's] argument still fails because the statutory language he cites [disavowing UMMS's agency status] does not contain an express waiver of sovereign immunity." *Id.*  By misconstruing Mr. Hammons's argument as an argument about "waiver," the Court improperly placed the burden on Mr. Hammons to establish waiver by clear and unequivocal language, instead of placing the burden on Defendants to show that the statutory provision they cited actually demonstrated that they have any sovereign immunity to begin with.

Further, the statutory reservation of immunity in fact confirms that UMMS has no sovereign immunity to preserve.  UMMS's organizing statutes explicitly distinguish between UMMS (referred to as the "Medical System Corporation" within the statutes) and the University of Maryland (referred to as the "University").  Md. Code Ann., Educ. § 13-301(m), (u).[2]  In Section 13-308, UMMS is generally assigned the medical system's liabilities, and given other legal responsibilities regarding its relationship with the University.  *Id.* at § 13-308(a)-(e).  In its final clause, Section 13-308 expressly reserves sovereign immunity—but only as to "the State" and "the University."  *Id.* at § 13-308(f).  The conspicuous omission of any reference to UMMS—within a statute devoted to setting out UMMS's legal duties—is a strong indication that the legislature did not clothe UMMS in sovereign immunity.  *See In re Wood*, 993 F.3d 245, 252 (4th Cir. 2021) (under "a straightforward application of the *expressio unius* canon," a statute's "narrow, specifically articulated exception" implies that other exceptions are not permitted).

*       *       *

---

[2] The University—unlike UMMS—has repeatedly been recognized as an agency of the State of Maryland, vested with sovereign immunity.  *See MedSense, LLC v. Univ. Sys. of Md.*, 420 F. Supp. 3d 382, 391 (D. Md. 2019).

For all these reasons, Mr. Hammons respectfully requests that the Court grant reconsideration to correct its assumption that the three-part test in *Lebron* is synonymous with the inquiry into whether an entity has sovereign immunity, and to analyze Mr. Hammons's arguments as addressing whether UMMS's authorizing statute clothed the corporation with sovereign immunity in the first instance, instead of analyzing Mr. Hammons's arguments as addressing whether sovereign immunity was waived.

## II.   THE COURT SHOULD RECONSIDER ITS CONCLUSION THAT UMMS IS ENTITLED TO SOVEREIGN IMMUNITY UNDER THE *RAM DITTA* FACTORS

While *Lebron* instructs that the statutory disavowal deprives UMMS of sovereign immunity, this conclusion is confirmed by proper consideration of the *Ram Ditta* factors.  Mr. Hammons respectfully submits that the Court committed clear error resulting in manifest injustice by resolving the *Ram Ditta* factors in favor of the Defendants, despite Defendants' failure to raise the *Ram Ditta* factors in their opening brief.  In doing so, the Court "made a decision outside the adversarial issues presented to the Court by the parties." *Wagner*, 2016 WL 1169937 at *3.  Reconsideration is, therefore, warranted to allow the Court to fully consider the *Ram Ditta* factors with the benefit of proper adversarial briefing.

Despite bearing the burden on the issue of sovereign immunity, Opinion, 2021 WL 3190492, at *7, Defendants failed to raise the *Ram Ditta* test in their opening brief, waiving it for purposes of their motion.  ECF No. 39-1 at 16; *see Rose v. Harloe Mgmt. Corp.*, No. CV GLR-16-761, 2017 WL 193295, at *6 n.3 (D. Md. Jan. 17, 2017) (holding that defendants waived potential ground for dismissal "[b]y failing to raise and argue this point in their initial Motion").[3]

---

[3] The Fourth Circuit has also recently explained that "the district court should not . . . raise[] this [sovereign immunity] defense on its own initiative." *Glenn v. Marsh*, 806 F. App'x 252, 253 (4th Cir. 2020).

Only after Mr. Hammons "identified [Defendants]' failure even to address" the *Ram Ditta*

factors did they chose to "present[] arguments" on this point, in their reply brief.  *Humane Soc'y*

*of the U.S. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, No. CV DKC 13-1822, 2016 WL

3668028, at *4 (D. Md. July 11, 2016) (Chasanow, J.) (declining to consider arguments raised

for the first time in reply); *Byrd v. Deveaux*, No. CV DKC 17-3251, 2018 WL 305838, at *2 (D.

Md. Jan. 5, 2018) (Chasanow, J.) (same).  Even then, Defendants spent only three sentences on

the topic.  ECF No. 48 at 8.

Because Defendants failed to address the *Ram Ditta* factors in their opening

memorandum, Mr. Hammons did not have a full and fair opportunity to brief this issue.  In

resolving the *Ram Ditta* factors in favor of Defendants, the Court specifically noted that Mr.

Hammons did not address various *Ram Ditta* factors, Opinion, 2021 WL 3190492, at *14, but

the Court overlooked Defendants' own failure to raise *Ram Ditta* in their opening brief, or to

provide any meaningful analysis of the *Ram Ditta* factors in their reply.  Reconsideration is

appropriate to allow the Court to fully consider the *Ram Ditta* factors with the benefit of proper

adversarial briefing.

Mr. Hammons respectfully submits that the Court committed clear error in holding, based

on the Maryland Court of Appeals' decision in *Napata*, that the second and fourth *Ram Ditta*

factors weigh against Mr. Hammons and in favor of arm-of-state status.

### A.    The Second *Ram Ditta* Factor Weighs Strongly Against Sovereign Immunity

The second *Ram Ditta* factor requires courts to consider the "degree of autonomy

exercised by the entity."  *Oberg II*, 745 F.3d at 136.  To evaluate this factor, courts must look to:

> [T]he degree of autonomy exercised by the entity, including such circumstances as who
> appoints the entity's directors or officers, who funds the entity, and whether the State
> retains a veto over the entity's actions.  Also relevant to the autonomy inquiry is the
> determination whether an entity has the ability to contract, sue and be sued, and purchase

and sell property, and whether it is represented in legal matters by the state attorney
general.

*Oberg III*, 804 F.3d at 668; *see also Oberg II*, 745 F.3d at 137.

Instead of analyzing the specific criteria discussed in *Oberg II* and *Oberg III*, the court
concluded that this factor weighed in favor of arm-of-state status, largely because it viewed
*Napata* as teaching that, "although UMMS may function like an independent corporate medical
system in some respects, it is nevertheless tethered to State government and subject to State
oversight in important ways."  Opinion, 2021 WL 3190492, at *14.  But the test under *Ram Ditta*
is whether an entity has "a significant degree of autonomy"—not complete insulation from any
state oversight.  822 F.2d at 457-58; *see also Oberg III*, 804 F.3d 646, 672-73 (courts must assess
"whether the entity functions independently of the state *despite* the state regulation to which it is
subject").  While these considerations overlap with the analysis in *Napata* to some degree, the
two inquiries differ in critical respects.  *See Bushek*, 155 F. Supp. 2d at 482 (concluding that the
Sanitation Commission did not have sovereign immunity under *Ram Ditta* even though the
Maryland Court of Appeals had held that the commission was a state agency, because some
factors that "may be compelling in resolving the state law sovereign immunity question . . . are
not themselves sufficient to confer upon the agency enough attributes of the State to entitle it to
Eleventh Amendment immunity").

The specific criteria applicable to the second *Ram Ditta* factor (as opposed to the criteria
examined in *Napata*) weigh in favor of Mr. Hammons, and against arm-of-state status.  "Most
critically, [UMMS] is financially independent."  *Oberg II*, 745 F.3d at 139.  UMMS generates its
own funding; as Defendants argued in their motion, UMMS's "internal affairs and funding are
entirely independent of Maryland."  ECF No. 39-1 at 5.  And UMMS "has separate 'operations,
revenues, and obligations' and does not depend on state funding or other intervention."  *Id.*

15

(quoting Md. Code Ann., Educ. § 13-302(6)).  In addition, Maryland law authorizes UMMS to "own, lease, manage, and operate the medical system."  Md. Code Ann., Educ. § 13-303(b).  And UMMS has been granted "all powers of a Maryland corporation which are not expressly limited by this subtitle; such powers include the power to convey, lease, mortgage, encumber, and otherwise deal with all its assets including the medical system assets, without limitation or regard to their source . . . ."  *Id.*  Finally, as demonstrated in this very action, UMMS is not represented by the attorney general.  At this stage of the litigation, these facts "strongly suggest that [UMMS] is not an arm of the state."  *Oberg II*, 745 F.3d at 139.

To be sure, there are certain countervailing considerations, which were highlighted in *Napata* as demonstrating that "the State remains a visible and compelling force in UMMS's operations."  417 Md. at 737.  But in the *Oberg* cases, the Fourth Circuit reasoned that even greater constraints did not undercut a state-created entity's operational autonomy.

- First, *Napata* observed that the board of UMMS was appointed by the State and could be dissolved by the State.  *See Napata*, 417 Md. at 737.  But the entity in *Oberg* had the same features.  *See Oberg II*, 745 F.3d at 139 (recounting that the board is "composed of gubernatorial appointees and state legislators or officials") and *Oberg III*, 804 F.3d at 672 (observing that the entity may be dissolved by Commonwealth).  Moreover, "the State may destroy or reshape *any* unit it creates . . . .  [Y]et cities and counties do not enjoy Eleventh Amendment immunity."  *Cash v. Granville Cty. Bd. of Educ.*, 242 F.3d 219, 226 (4th Cir. 2001) (emphasis added) (quoting *Hess v. Port Auth. Trans-Hudson Corp.*, 513 U.S. 30, 47 (1994)).

- Second, *Napata* observed that UMMS is subject to certain financial constraints,

such as requiring approval for an annual contract with the University. *Napata*, 417 Md. at 730, 737 (citing Md. Code Ann., Educ. §§ 13-303(g)-(j), 13-306(a)).[4] But those constraints are far less onerous than those at issue in *Oberg*, where the entity required the approval of the Treasurer for "*all* expenditures," the approval of the Governor for "*all* . . . debt issuances," and the approval of the Attorney General for "*all* . . . contracts in excess of $20,000." *Oberg III*, 804 F.3d at 668 (emphasis added).

- Third, *Napata* observed that UMMS is eligible for some degree of state financial support, with the caveat that UMMS may only receive those funds as loans, and only if such funds were appropriated by the legislature. *Napata*, 417 Md. at 730, 737 (citing Md. Code Ann., Educ. § 13-309). And it appears that UMMS in fact has not received any such funding. ECF No. 39-1 at 5 (Defendants' motion, stating that UMMS does not receive state funding). The entity in *Oberg* was eligible for state funding too. *Oberg III*, 804 F.3d at 669 (observing that entity was eligible for, but had not in many years received, "appropriated funds for operational support").

- Finally, and importantly, in *Oberg*, the entity was required to deposit its funds with the state treasury—a factor absent here. *Oberg III*, 804 F.3d at 672.

Analyzing all these considerations in *Oberg III*, the Fourth Circuit held that "that the autonomy factor weighs *heavily* against arm-of-state status." 804 F.3d at 673 (emphasis added); *see also Bushek* 155 F. Supp. 2d at 480-81 (finding that "minor restrictions on [sanitation

---

[4] While *Napata* stated that "annual contracts must be approved by the Regents of the University," the statute it cites for this proposition provides only for approval of a single annual contract with the University, *id.* at 730, 737 (citing Md. Code Ann., Educ. § 13-306(a)).

commission's] autonomy are . . . not significant in comparison to [its] abilities to govern itself, set its own budget, and litigate separately from State control").

The Court's conclusion that the second *Ram Ditta* factor weighed in favor of sovereign immunity merely because it is "tethered to State government and subject to State oversight in important ways," Opinion, 2021 WL 3190492, at *14, is directly contrary to the Fourth Circuit's reasoning in *Oberg II* and *Oberg III*, and warrants reconsideration.

### B.      The Fourth *Ram Ditta* Factor Is Neutral

The Court also erred in concluding that the fourth and final arm-of-state factor—"how the entity is treated under state law," *Oberg II*, 745 F.3d at 138—weighed in favor of sovereign immunity.

In analyzing this factor, the Court again looked exclusively to *Napata*, giving little weight to the statutory disclaimer of UMMS's state agency status.  Opinion, 2021 WL 3190492, at *14.  But, as the Court recognized elsewhere in its opinion, the Court of Appeals' decision in *Napata* "did not concern state sovereign immunity and thus has no bearing on this specific issue."  *Id.* at *15.  Rather, *Napata* was limited to the statutory question of whether UMMS is "an instrumentality of the State . . . *for purposes of the corporation's inclusion in the scope of the PIA*." 417 Md. at 736-37) (emphasis added).  Thus, by its own terms, the decision did not purport to hold that UMMS was a state instrumentality "for any and all purposes."  *Wash. Suburban Sanitary Comm'n v. Phillips*, 413 Md. 606, 632 (2010) (concluding that sanitation commission was a state agency for some purposes but not for others); *see also A.S. Abell Pub. Co. v. Mezzanote*, 297 Md. 26, 35 (1983) (calling for an individualized inquiry to determine "whether a statutorily-established entity is an agency or instrumentality of the State *for a particular purpose*." (emphasis added)).  And, even if *Napata* had determined that UMMS enjoyed state sovereign immunity, such a finding would be insufficient to show that UMMS is entitled to

18

claim Eleventh Amendment sovereign immunity here.  *See Ram Ditta*, 822 F.2d at 460 (finding

that entity lacks Eleventh Amendment immunity, despite Maryland Court of Appeals decision

holding that entity enjoys state sovereign immunity).

Other elements of UMMS's treatment under state law cut against arm-of-state status.  For

example, the disclaimer demonstrates that state law does not regard UMMS as a state

"agency"—notwithstanding *Napata*'s conclusion that UMMS is a state "instrumentality" under

the PIA.  *Cf. Hutto*, 773 F.3d at 548 (finding that fourth factor pointed towards arm-of-state

status where state statutory law "repeatedly uses the term 'State agency' to refer to" the entity).

In addition, UMMS's origination statutes repeatedly refer to UMMS as a "private . . .

corporation," Md. Code Ann., Educ. § 13-301(m), § 13-302(7), and set out the legislature's view

that "[i]t is fiscally desirable for the State of Maryland to separate the operations, revenues, and

obligations of the medical system from the State," *id.* at § 13-302(6).  The statutes also do not

contemplate that UMMS's employees will be state personnel.  *See id.* at §§ 13-301(q), 13-

308(d)-(e) (providing that only *University* personnel contracted to work for UMMS may be

entitled to representation or indemnification pursuant to laws protecting state employees, without

indication that UMMS employees may have any similar right).

UMMS's lack of sovereign immunity is also confirmed by UMMS's own practices.

*Napata* held in 2011 that UMMS is a state instrumentality under the PIA.  But despite this now

ten-year-old ruling, UMMS remains subject to routine suit for medical malpractice claims in

excess of $400,000.  *See, e.g.*, *Burks v. Allen*, 238 Md. App. 418, 440 (2018) (affirming

judgment of approximately $900,000 against UMMS and physician); *Fowlkes v. Choudhry*, No.

24-C-16-001919, — A.3d —, 2021 WL 1381348, at *1 n.2 (Md. Mar. 26, 2021) (recounting that

multi-million dollar claim against UMMS was litigated to trial).  Such suits would not be

permissible if UMMS were entitled to sovereign immunity, as Maryland has only waived sovereign immunity for tort liability up to $400,000.  Md. Code Ann., State Gov't § 12-104(a).[5] While UMMS has every incentive to raise a sovereign immunity defense in these expensive and recurring malpractice suits, it has not invoked that doctrine to escape liability.

Accordingly, given the mixed treatment of UMMS under state law, and the lack of a state court decision addressing UMMS's state sovereign immunity, this fourth factor is neutral.

\*        \*        \*

Balancing all four factors together demonstrates that UMMS is not entitled to arm-of-state status:

- The Court properly determined that the first factor—"whether any judgment against the entity as defendant will be paid by the State," *Oberg II*, 745 F.3d at 136—is "the most important consideration," *Hutto*, 773 F.3d at 543 (quoting *Ram Ditta*, 822 F.2d at 457).  As the Court correctly concluded, and as the Defendants themselves recognized, "the State would not pay any judgment against UMMS."  Opinion, 2021 WL 3190492, at \*13 (citing ECF No. 39-1 at 20; Md. Code Educ. § 13-310).  "Thus, the first factor strongly suggests that UMMS is not an arm of the state." *Id.*

- Under *Oberg II* and *Oberg III*, the second factor also weighs heavily against arm-of-the state-status.

- The third factor—"whether the entity is involved with state concerns as distinct from non-state concerns, including local concerns," *Oberg II*, 745 F.3d at 137—tilts against Mr. Hammons and in favor of arm-of-state status, given statutory emphasis on

---

[5] This limit was recently revised upwards; the statute previously only permitted for claims up to $200,000.  *See Md. Bd. of Physicians v. Geier*, 241 Md. App. 429, 462 (2019).

UMMS's state-wide concerns.[6]

- The fourth factor is neutral.

In the *Oberg* cases, the Fourth Circuit found that a weaker balance still demonstrated that the entity was not entitled to claim arm-of-state status. *See Oberg II*, 745 F.3d at 140 ("[A]lthough the third and fourth factors suggest that [the entity] is an arm of the state, the first (strongly) and second (albeit less strongly) point in the opposite direction. At this early [motion to dismiss] stage, . . . we must conclude that . . . [the entity] is not an arm of the state."); *Oberg III*, 804 F.3d at 676 (ruling against arm-of-state status after finding that first and second factors weighed "heavily against arm-of-state status," while third and fourth factors "both weigh in favor").

Accordingly, by analyzing the *Ram Ditta* factors based solely on *Napata* and without the benefit of proper adversarial briefing, the Court committed clear error causing manifest injustice. Reconsideration is warranted.

## III. IF RECONSIDERATION IS DENIED, THE COURT SHOULD CERTIFY COUNTS I AND II FOR INTERLOCUTORY APPEAL

In the alternative, Mr. Hammons requests that the Court certify an interlocutory appeal pursuant to 28 U.S.C. § 1292(b), which authorizes the district court to certify an interlocutory order for immediate appeal when the court determines that the "order [1] involves a controlling question of law [2] as to which there is substantial ground for difference of opinion and [3] that an immediate appeal from the order may materially advance the ultimate termination of the litigation." Certification pursuant to Section 1292 is "vested first in the discretion of the district court." *In re Trump*, 958 F.3d 274, 283 (4th Cir. 2020), *cert. granted, judgment vacated as moot*,

---

[6] Even here, however, there are countervailing considerations. By statute, UMMS must serve "the citizens of the State *and region*," indicating potential out-of-state concerns. Md. Code Ann., Educ. § 13-302 (1), (7). Discovery may reveal additional out-of-state services. Or, discovery may show a more local than state-wide focus. In either event, this factor would be pulled closer to neutral.

141 S. Ct. 1262 (2021).  "[D]istrict courts should not hesitate to certify an interlocutory appeal"

if the "ruling involves a new legal question or is of special consequence."  *Mohawk Indus., Inc.*

*v. Carpenter*, 558 U.S. 100, 111 (2009).

Certification is plainly warranted here.  As to the first factor, whether UMMS is entitled

to sovereign immunity is clearly a controlling question of law.  *See Coal. For Equity &*

*Excellence In Md. Higher Educ. v. Md. Higher Educ. Comm'n*, No. CIV. CCB-06-2773, 2015

WL 4040425, at *4 (D. Md. June 29, 2015) ("The term 'question of law,' for purposes of

§ 1292(b), refers to a question of the meaning of a statutory or constitutional provision,

regulation, or common law doctrine—as opposed to whether the party opposing summary

judgment had raised a genuine issue of material fact."); *Butler v. DirectSAT USA, LLC*, 307

F.R.D. 445, 452 (D. Md. 2015) (Chasanow, J.) ("[A] 'controlling question of law' applies to a

narrow question of pure law. . . .[A] controlling question of law includes every order that, if

erroneous, would be reversible error on final appeal.").  Mr. Hammons contends that this issue

may be resolved looking exclusively to the statutory disclaimer of UMMS's agency status and

*Lebron*.  Even if an arm-of-state inquiry were required, at this stage of the litigation, the inquiry

would turn on UMMS's origination statutes and relevant case law, rather than factual inquiry.

Further, the Court's ruling prevents Mr. Hammons from litigating his constitutional claims, and

would be grounds for reversal on appeal.

As to the second factor—substantial ground for difference of opinion—as the Court itself

observed, there is a paucity of authority regarding the sovereign immunity of *Lebron*-type

entities.  Opinion at *13; *see also Coal. For Equity*, 2015 WL 4040425, at *6 ("A substantial

ground for difference of opinion may exist where there is a dearth of precedent . . . or where a

court's challenged decision conflicts with decisions of several other courts.").  At a minimum,

22

even if the Court concludes that Mr. Hammons has failed to show that reconsideration is warranted, Mr. Hammons has raised at least a substantial ground for difference of opinion.  As explained, the Court's ruling is contrary to the express mandates of *Lebron*, as well as binding Fourth Circuit arm-of-state precedent.

As to the third factor—whether an immediate appeal may materially advance the ultimate termination of the litigation—a definitive ruling on whether UMMS can be held liable in federal court for violating the constitutional rights of Mr. Hammons and other patients seeking medical care will allow this litigation to conclude more expeditiously.  A ruling from the Fourth Circuit would either allow the parties to litigate Mr. Hammons's claims all at once, or would allow the parties to focus the litigation on the remaining statutory claim, without any appeal on the constitutional claims looming over the proceedings.  *See Jacobson v. Comcast Corp.*, No. 1:09-CV-562, 2010 WL 5463084, at *1 (D. Md. Dec. 29, 2010) (finding material advancement prong satisfied where it "may [be] that this litigation would be further complicated and delayed" in the absence of an immediate appeal); *see also Bedoya v. Am. Eagle Express*, No. CV 14-2811 (ES) (JAD), 2017 WL 4330351, at *3 (D.N.J. Sept. 29, 2017) ("Certification is more likely to materially advance the litigation where the appeal occurs early in the litigation, before extensive discovery has taken place and a trial date has been set."). (clean)

At bottom, the Court's sovereign immunity ruling holds that UMMS is a state actor, but nonetheless has permissibly operated a Catholic hospital and engaged in a religion-based practice of medicine.  Thus UMMS's claim to sovereign immunity "involves a new legal question or is of special consequence," warranting certification.  *Mohawk Indus.*, 558 U.S. at 111.

## CONCLUSION

For these reasons, Mr. Hammons respectfully requests that the Court grant reconsideration pursuant to Rule 54(b).  If reconsideration is denied, Mr. Hammons respectfully

requests an immediate appeal pursuant to 28 U.S.C. § 1292(b).


Date: August 11, 2021

Respectfully submitted,

*/s/Louis J. Ebert*

Louis J. Ebert (Fed. Bar No. 02031)
ROSENBERG MARTIN GREENBERG,
LLP
25 South Charles Street, 21st Floor
Baltimore, Maryland 21201
Telephone: (410) 727-6600
Fax: (410) 727-1115
lebert@rosenbergmartin.com

Aron Fischer (*pro hac vice*)
Jonah M. Knobler (*pro hac vice*)
Andrew D. Cohen (*pro hac vice*)
Abigail E. Marion (*pro hac vice*)
Emily H. Harris (*pro hac vice*)
Jonathan S. Z. Hermann (*pro hac vice*)
PATTERSON BELKNAP WEBB &
TYLER LLP
1133 Avenue of the Americas
New York, NY 10036
(212) 336-2000
afischer@pbwt.com
jknobler@pbwt.com
acohen@pbwt.com
amarion@pbwt.com
eharris@pbwt.com
jhermann@pbwt.com

Joshua A. Block (*pro hac vice*)
Leslie Cooper (*pro hac vice*)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
Tel: (212) 549-2627
Fax: (212) 549-2650
jblock@aclu.org
lcooper@aclu.org

24

Daniel Mach (*pro hac vice*)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
915 15th Street, NW
Washington, DC 20005
Tel: (202) 675-2330
Fax: 202-546-0738
dmach@aclu.org

*Counsel for Plaintiff Jesse Hammons*