# Exhibit 16

```
 1  JESSE HAMMONS,                    UNITED STATES DISTRICT
                                      COURT
 2
                    Plaintiff        FOR THE DISTRICT OF
 3                                   MARYLAND

 4  vs.                             CASE NO.
                                    1:20-cv-02088-DKC
 5
    UNIVERSITY OF MARYLAND
 6  MEDICAL SYSTEM CORPORATION,
    et al.
 7
                    Defendants
 8
    _____/
 9

10

11

12          The deposition of MONICA BUESCHER, M.D. was

13  held on Monday, March 21, 2022 commencing at 9:02 a.m.

14  Via Zoom before Eric Leichter, Notary Public.

15

16

17

18

19

20

21  REPORTED BY:  Eric Leichter
```



```
 1    APPEARANCES:

 2

 3        ON BEHALF OF THE PLAINTIFF:

 4        EDWARD J. DELMAN, ESQUIRE

 5            PATTERSON BELKNAP WEBB & TYLER LLP

 6            1133 Avenue of the Americas

 7            New York, NY 10036

 8            212-336-2000

 9            edelman@pbwt.com

10

11        ON BEHALF OF THE DEFENDANT:

12        DANIELLE VRABIE, ESQUIRE

13            SHEPPARD MULLIN

14            30 Rockefeller Plaza

15            New York, NY 10112

16            212-653-8700

17            dvrabie@sheppardmullin.com

18

19

20

21
```



```
 1                            INDEX

 2           Deposition of MONICA BUESCHER, M.D.

 3                      March 21, 2022

 4

 5    Examination by:                           Page

 6    Mr. Delman                                   5

 7

 8    Exhibit No.                              Marked

 9    Exhibit 1  Spreadsheet                     45

10    Exhibit 2  E-mail                          56

11    Exhibit 3  E-mail                          78

12    Exhibit 4  E-mail                          94

13    Exhibit 5  E-mail                          96

14    Exhibit 6  E-mail                         115

15    Exhibit 7  E-mail                         120

16    Exhibit 8  Outlook invite                 125

17    Exhibit 9  E-mail                         132

18

19

20

21
```



800.211.DEPO (3376)
EsquireSolutions.com

```
 1                        PROCEEDINGS,

 2              THE VIDEOGRAPHER:  We are now on the

 3  record.  The time is 9:02 a.m. Eastern Standard Time on

 4  March 21st, 2022.  Thus begins the video conference

 5  deposition of Dr. Monica A. Buescher taken in the matter

 6  of Jesse Hammons versus the University of Maryland

 7  Medical System Corporation et al.  filed in the United

 8  States District Court for the District of Maryland.

 9  Case number is 1:20-cv-02088-DKC. My name is George

10  Ellis.  I am your remote videographer.  The court

11  reporter is Eric Leichter.  We are representing Esquire

12  Deposition Solutions.

13              Counsel, will you please state your name

14  and who you represent?  After which, the court reporter

15  will swear in the witness.

16              MR. DELMAN:  This is Edward Delman

17  representing Plaintiff Jesse Hammons from the firm

18  Patterson Belknap Webb & Tyler.

19              MS. VRABIE:  Danielle Vrabie from Sheppard

20  Mullin Richter & Hampter [sic] -- Hampton for Defendants

21  and the witness.
```



1          THE REPORTER:  All right.  The attorneys

2     participating in this deposition acknowledge I'm not

3     physically present in the deposition room and that I'll

4     be reporting this deposition remotely.  They further

5     acknowledge that in lieu of an oath administered in

6     person, I'll administer the oath remotely.  Parties

7     further agree that the witness is testifying from a

8     state where I'm not a notary, that the witness may be

9     sworn in by an out-of-state notary.

10          If any party has an objection to this

11     manner of reporting, please state now.

12          Hearing none, we can proceed.

13     Whereupon,

14          MONICA BUESCHER, M.D.,

15     called as a witness, having been first duly sworn to

16     tell the truth, the whole truth, and nothing but the

17     truth, was examined and testified as follows:

18          EXAMINATION BY MR. DELMAN:

19     Q     Dr. Busha [sic] -- Buescher, can you please

20     state your name for the record?

21     A     Monica A. Buescher.



1          Q       Dr. Buescher, are there different ways of

2     performing hysterectomies?

3                  MS. VRABIE:   Objection.

4          A       There are different -- there are different

5     techniques for performing hysterectomy.

6          Q       And what sorts of different techniques are

7     there?

8          A       You can have an open laparotomy, which is a

9     big incision, and do the hysterectomy directly.  You can

10    use a laparoscopic approach, which involves using a

11    laparoscope and small wounds with the uterus being

12    finally removed through the vagina.  You can do a

13    robotic hysterectomy, which is essentially a

14    laparoscopic hysterectomy but using a robot as the

15    vehicle for wielding the surgical instruments.  And you

16    can a vaginal hysterectomy, which is a direct

17    hysterectomy through the vaginal approach.

18         Q       In general, are hysterectomies performed as

19    elective sterilization procedures?

20         A       No.

21         Q       Even outside of St. Joseph, hysterectomies



 1  are never performed as elective sterilization

 2  procedures?

 3              MS. VRABIE:  Objection.

 4      A     They should not be --

 5              THE WITNESS:  Do I answer?

 6              MS. VRABIE:  Go ahead, Dr. Buescher.  You

 7  can answer if you know.

 8      A     They should not be performed for elective

 9  sterilization because it's a major surgical procedure

10  compared to a minor surgical procedure, which is

11  typically used for elective sterilization.

12      Q     In your experience at St. Joseph, are

13  hysterectomies ever performed as elective sterilization

14  procedures?

15      A     No.

16      Q     And concerning elective sterilization, what

17  sorts of minor procedures would be more appropriate?

18      A     For women, you're asking?

19      Q     Correct.  Yes.

20      A     For women, some form of tubal fallopian

21  tube interruption is used.  And typically, that is done



 1  laparoscopically or at the time of cesarian section if

 2  desired or through a hysteroscopic approach -- vagina

 3  through cervix into the uterine cavity.

 4       Q      And are those sorts of procedures performed

 5  at St. Joseph?

 6       A      No.

 7       Q      In general, are hysterectomies performed

 8  to treat a diagnosed medical condition?

 9       A      Yes.

10       Q      In your experience at St. Joseph, are you

11  aware of a hysterectomy ever being performed other than

12  to treat a diagnosed medical condition?

13       A      No.

14              MR. DELMAN:  One moment, Dr. Buescher.

15       Q      You wouldn't recommend a hysterectomy for

16  any procedure other than one with a medical diagnosis.

17  Right?

18              MS. VRABIE:  Objection.  You can answer,

19  Dr. Buescher, if you understand.

20       A      No. I would not recommend a hysterectomy

21  for any reason other than a specific medical condition.



1       Q       All right, Dr. Buescher.  In general, what

2   are some of the medical conditions that are treated by

3   hysterectomies?

4       A       Menorrhagia, which is heavy menstrual flow;

5   dysmenorrhea, which is severe pain during the menstrual

6   cycle; any sort of bleeding disorder.  This would be in

7   the reproductive age group, of course.  In the

8   postmenopausal age group, it's typically done for

9   neoplastic conditions.  Hysterectomies may also be done

10  as part of repair for pelvic organ prolapse, and that's

11  in any age group.

12      Q       So, in terms of excessive or abnormal

13  menstruation, what would constitute excessive or

14  abnormal menstruation?

15      A       Acceptable menstruation?

16      Q       Excessive.

17      A       Excessive?  Okay.  The easiest way to

18  quantify it is to show that the woman is iron-deficient.

19      Q       And you would say that excessive or

20  abnormal menstruation is a medically necessary reason to

21  perform a hysterectomy --



 1        A       It's a -- it is a medically sufficient

 2    reason to perform a hysterectomy.

 3        Q       So you wouldn't describe it as being

 4    medically necessary necessarily?

 5        A       Only in the circumstance where the woman

 6    has anemia.

 7        Q       Why is it -- why does anemia make it

 8    medically necessary?

 9        A       Because no individual should be operating

10    physiologically with significant anemia if it can be

11    helped.

12        Q       What would you say is the difference

13    between something being medically sufficient versus

14    medically necessary?

15        A       I consider anemia to be a medically

16    necessary condition.  I consider a woman's

17    quality-of-life circumstances to be a medically

18    sufficient reason.

19        Q       So what would be some other medically

20    necessary reasons for a hysterectomy other than anemia?

21        A       As I told you, pelvic organ prolapse -- if



1   it wasn't part of the medical record.  The checklist was

2   just a tool.  The -- the details of what was actually

3   assessed would be available either on the surgeon's

4   office chart or submitted in the medical record here at

5   the hospital.

6        Q     Is it a physical checklist that the surgeon

7   or whoever else actually goes through that exists on

8   paper or in a document somewhere?

9        A     It existed on paper.  Whether it was saved,

10  I don't know.

11       Q     And the hospital's policies around use of

12  the morcellator, were those formalized in any sort of

13  document anywhere?

14       A     Hm.  It preceded my becoming chief, so I

15  don't know the answer to that.  We have since abandoned

16  the use of morcellator not long after that.

17       Q     Are there other types of surgical equipment

18  that require getting approval from you before use?

19       A     Surgical equipment.  I don't know that this

20  would be -- this can be placed in the operating room.  I

21  need to approve the use of the Mirena IUD if it is



1  placed for therapy in this hospital.

2       Q     The Mirena IUD, that's typically a

3  contraceptive device?

4       A     It's used as a contraceptive device most

5  commonly, but it is also used for treatment of uterine

6  bleeding.

7       Q     And so you need to -- you need to approve

8  any insertion of that IUD before it's done?

9       A     Correct.

10      Q     And is that -- that policy where you need

11 to provide approval for that, is that formalized in any

12 sort of document anywhere?

13      A     Not that I'm aware of.  It's common

14 knowledge that they will not be able to place it in the

15 operating room unless I have approval.

16      Q     How does a -- as far -- to your

17 understanding, how is a physician with admitting

18 privileges aware that they need to speak to you first

19 before inserting that device?

20      A     It's because our surgeons are aware of the

21 ethical and religious directives of Catholic health care



1   organizations by which we function.  So there are

2   certain things that cannot be done in a Catholic

3   hospital.  Essentially, my approval says that it can be

4   used under certain circumstances because I have

5   ascertained that it falls appropriately within the

6   ethical and religious directives.

7        Q       And what analysis do you do to -- it falls

8   within the ethical and religious directives?

9        A       That there's a specific condition or

10  disease that's being treated specifically by that in

11  that procedure or bilat device.  It is not related to

12  either sterilization or contraception.

13       Q       And do you consult with anyone at the

14  hospital when you are making those -- those decisions?

15       A       Typically, I don't have to because it's

16  evident.  If I had any questions, I would consult our

17  ethics committee.

18       Q       And who is on the ethics committee?

19       A       I can tell you probably most of the people

20  who are on the ethics committee.  Our director of

21  mission is on the ethics committee.  The chief medical



Case 1:20-cv-02088-DKC   Document 98-17   Filed 06/24/22   Page 15 of 28
MONICA BUESCHER, M.D.                                March 21, 2022
Hammons vs University of Maryland Medical System              89

1    Church doesn't recognize it.

2         Q      In your -- putting aside the Catholic

3    Church, is it your understanding as a medical

4    professional that gender dysphoria is a medical

5    condition?

6         A      Yes.

7         Q      Just to confirm, physicians aren't required

8    to certify or verify that a patient suffers from a

9    life-threatening condition before scheduling a

10   hysterectomy.  Right?

11        A      Yes.  That's correct.

12        Q      Putting aside procedures involving

13   transgender patients, are you aware of any hysterectomy

14   that has not been permitted to occur because of the

15   ERDs?

16        A      Not that I'm aware of.

17        Q      And putting aside procedures involving

18   transgender patients, are you aware of any discussion of

19   whether a specific hysterectomy was compliant with the

20   ERDs?

21               MS. VRABIE:  Mr. Delman, just to confirm,



1  both this question and the other question, are you

2  asking during her time as chief?

3              MR. DELMAN:  In her personal -- in her

4  personal knowledge either as chief or just while she was

5  a physician with admitting privileges.

6      A     I'm not aware of any hysterectomy being

7  allowed that fell outside of the restrictions placed by

8  the ERDs.

9      Q     With that understood, are you aware in your

10 personal capacity and in your personal knowledge of any

11 discussion about whether a specific hysterectomy was

12 compliant with the ERDs?

13     A     No. I don't recall any such circumstance.

14     Q     And putting aside procedures involving

15 transgender policies, isn't it true that there is no

16 procedure in place at SJMC for reviewing whether a

17 hysterectomy is compliant with the ERDs?

18             MS. VRABIE:  Objection.

19     A     I am aware of no specific means by which

20 that happens.

21     Q     Are you aware of a nonspecific means by



1   which that happens?

2        A     Oh, I think our people know what's allowed

3   and what's not allowed, for the most part.  If a

4   physician were posting a hysterectomy without a

5   diagnosis other than sterilization, it wouldn't be

6   allowed.  It would never be posted.

7        Q     I think I'm confused.  You said if -- you

8   said a diagnosis other than sterilization would not be

9   allowed?

10       A     No. I said there has to be some type of

11  diagnosis attached to the reason for the hysterectomy,

12  and the OR crew who take the posting are pretty well

13  aware of what's allowed and what's not.  It would come

14  back to the physician trying to post it that such a

15  thing fell out of the ERDs.  So, if there was no

16  diagnosis for hysterectomy -- right?  If a physician was

17  queried and said, no, she just doesn't want to have

18  periods anymore and it's a way of preventing her from

19  having children, the answer would be no.  You can't post

20  that.  And that would come originally from the people

21  taking the posting.  It would undoubtedly be elevated to



1   me for confirmation, but our medical staff know that

2   they can't post that.  I can't even recall a time where

3   someone tried.

4        Q     That was my next question.  Do you -- you

5   do recall any scenario where a posting for hysterectomy

6   was escalated to you by the scheduling people?

7        A     No.

8        Q     But you would say it was part of the

9   scheduling people's responsibility to screen things

10  being posted?

11       A     I think it's part of our culture here at

12  St. Joe's that everyone has the ability to escalate

13  something for which they have a question, from the very

14  beginning of a circumstance to the end of a

15  circumstance.

16       Q     Do you know if it is part of the job

17  description for the personnel in the scheduling

18  department to verify --

19       A     I don't know their job description.

20       Q     Just in the future, Dr. Buescher, please

21  let me finish the question.



1          A      I will.

2          Q      Okay.  So, Dr. Buescher, my apologies if we

3     already covered this, but is it your understanding that

4     the ERDs prohibit Catholic hospitals from participating

5     in gender transitions or gender-affirming treatments for

6     transgender patients?

7                 MS. VRABIE:  Objection.

8          A      Yes.  Yes.  That's my understanding.

9          Q      And when did you become aware of that

10    understanding?

11         A      I believe when I took on this chief role.

12         Q      You don't believe you were aware of that

13    restriction prior to becoming chief?

14         A      I was not.

15         Q      Had you read the ERDs prior to becoming

16    chief?

17         A      No.

18                MR. DELMAN:  One moment, Dr. Buescher.  I'm

19    pulling up a new document.  Okay.  I'm showing here UMMS

20    1.  This is marked as Plaintiff's Exhibit -- I believe

21    we're up to 4.



1  cbriefly to provide your order of thetranscript of the

2  video and court reporter.  Mr. Delman, I am to

3  understand you have a standing order for the transcript

4  of the video?

5            MR. DELMAN:  Yes.  That's correct.

6            THE VIDEOGRAPHER:  Okay.  Ms. Vrabie, would

7  you like to order a copy of the transcript and/or video

8  at this time?

9            MS. VRABIE:  I -- I think we would but I

10 want to confer with my team internally to see what that

11 order will be, so, I'll get back to all of you.

12            THE VIDEOGRAPHER:  Okay.  Thank you.  We

13 are now going off the record on March 21st, 2022, at

14 1:03 p.m.

15            (Deposition concluded at 1:03 p.m.)

16

17

18

19

20

21



1  State of Maryland

2  City of Baltimore, to wit:

3       I, Eric Leichter, a Notary Public of the State of

4  Maryland, Baltimore City, do hereby certify that the

5  within-named witness personally appeared before me at

6  the time and place herein set out, and after having been

7  duly sworn by me, according to law, was examined by

8  counsel.

9       I further certify that the examination was recorded

10  stenographically by me and this transcript is a true

11  record of the proceedings.

12       I further certify that I am not of counsel to any

13  of the parties, nor in any way interested in the outcome

14  of this action.

15       As witness my hand this 21st day of March 2022

16

17                              Eric Leichter

18                              Notary Public

19  My Commission Expires:

20  January  13, 2024

21



1     DEPOSITION ERRATA SHEET

2 Our Assignment No. J8044248

3 Case Caption: JESSE HAMMONS

4 vs. UNIVERSITY OF MARYLAND MEDICAL SYSTEM

5

6   DECLARATION UNDER PENALTY OF PERJURY

7   I declare under penalty of perjury

8 that I have read the entire transcript of

9 my Deposition taken in the captioned matter

10 or the same has been read to me, and

11 the same is true and accurate, save and

12 except for changes and/or corrections, if

13 any, as indicated by me on the DEPOSITION

14 ERRATA SHEET hereof, with the understanding

15 that I offer these changes as if still under

16 oath.

17   Signed on the __21ST__ day of

18 __APRIL__ , 2022.

19

20 __MBO, MD__

21   MONICA BUESCHER, M.D.



MONICA BUESCHER, M.D.                                    March 21, 2022
Hammons vs University of Maryland Medical System

Page 1 of 6

1    DEPOSITION ERRATA SHEET

2    Page No. 6 Line No. 16 Change to:    "whofll" to

3    "who will"

4    Reason for change: Typographical error

5    Page No. 9 Line No. 1 Change to: insert "given"

6    between "previously" and "testimony"

7    Reason for change:    Transcription error

8    Page No. 10 Line No. 13 Change to:    change "is"

9    to "in"

10   Reason for change: Transcription error

11   Page No. 15 Line No. 5 Change to: "not" to

12   "title"

13   Reason for change:    Transcription error

14   Page No. 18 Line No. 7 Change to: insert "do"

15   between "can" and "vulvar"

16   Reason for change:    Transcription error

17   Page No. 20 Line No. 12 Change to:    "of" to

18   "as a", change "physician" to "position"

19   Reason for change:    Transcription error

20   SIGNATURE:           DATE: 4-21-2022

21           MONICA BUESCHER, M.D.

MONICA BUESCHER, M.D.                                    March 21, 2022
Hammons vs University of Maryland Medical System

1            DEPOSITION ERRATA SHEET        Page  2  of  6

2    Page No. 22 Line No. 11 Change to:   "that's" to

3      "that are"

4    Reason for change:   Transcription error

5    Page No.  27 Line No. 16  Change to:  insert "have"

6      between "can" and "a"

7    Reason for change:   Transcription error

8    Page No. 28  Line No. 11  Change to:   remove "tubal"

9

10   Reason for change:   Transcription error

11   Page No.  35 Line No.  7  Change to: remove second "or"

12     between "circumstance" and "is"

13   Reason for change:   Transcription error

14   Page No.  35 Line No.  8  Change to:   "that" to "and"

15

16   Reason for change:   Transcription error

17   Page No. 46 Line No. 16  Change to:   "is" to "was"

18

19   Reason for change:   Transcription error

20   SIGNATURE: _____    DATE: 4-21-2022

21          MONICA BUESCHER, M.D.



800.211.DEPO (3376)
EsquireSolutions.com

MONICA BUESCHER, M.D.                                    March 21, 2022
Hammons vs University of Maryland Medical System

DEPOSITION ERRATA SHEET                     Page 3 of 6

1

2   Page No. _47_ Line No. _16_ Change to: _"it's" to_

3   _"what's"_

4   Reason for change: _Transcription error_

5   Page No. _48_ Line No. _4_ Change to: _"Whofs" to_

6   _"Who is"_

7   Reason for change: _Typographical error_

8   Page No. _48_ Line No. _5_ Change to: _"Komugis" to_

9   _"Comegys"_

10  Reason for change: _Typographical error_

11  Page No. _48_ Line No. _6_ Change to: _"Komugis" to_

12  _"Comegys"_

13  Reason for change: _Typographical error_

14  Page No. _48_ Line No. _8_ Change to: _"query" to_

15  _"queried"; change "this to "as"_

16  Reason for change: _Transcription error_

17  Page No. _48_ Line No. _9_ Change to: _"who" to "whom"_

18  _____

19  Reason for change: _Transcription error_

20  SIGNATURE: _____ DATE: _4-21-2022_

21          MONICA BUESCHER, M.D.

MONICA BUESCHER, M.D.                                    March 21, 2022
Hammons vs University of Maryland Medical System

```
1          DEPOSITION ERRATA SHEET          Page 4 of 6

2     Page No._57_Line No._5_ Change to:_"whofs" to

3       "who's"

4     Reason for change:___Typographical error

5     Page No._63_Line No._15_Change to:_"have" to "give"

6       _____

7     Reason for change:___Transcription error

8     Page No._64_Line No._10_Change to:_remove "by that"

9       _____

10    Reason for change:___Transcription error

11    Page No._64_Line No._11_Change to:_"bilat" to

12      "by that"

13    Reason for change:___Transcription error

14    Page No._71_Line No._10_Change to:_"employee" to

15      "employed"

16    Reason for change:___Transcription error

17    Page No._72_Line No._1_ Change to:_"was" to "were"

18      _____

19    Reason for change:___Transcription error

20    SIGNATURE: _____  DATE: 4-21-2022

21              MONICA BUESCHER, M.D.
```



MONICA BUESCHER, M.D.                                          March 21, 2022
Hammons vs University of Maryland Medical System

```
 1              DEPOSITION ERRATA SHEET          Page 5 of 6

 2    Page No. 81 Line No. 4 Change to: "defendant"

 3     to "definite"

 4    Reason for change: Transcription error

 5    Page No. 82 Line No. 8 Change to: "whether to give"

 6     to "what could be done"

 7    Reason for change:

 8    Page No. 83 Line No. 2 Change to: "neonatal" to

 9     "lethal"

10    Reason for change: Transcription error

11    Page No. 83 Line No. 15 Change to: "demised" to

12     "demise"

13    Reason for change: Transcription error

14    Page No. 86 Line No. 19 Change to: "is oncologist

15    he" to "is on the"

16    Reason for change: Transcription error

17    Page No. 90 Line No. 15 Change to: "policies" to

18     "patients"

19    Reason for change: Transcription error

20    SIGNATURE: [signature]          DATE: 4-21-2022

21              MONICA BUESCHER, M.D.
```



800.211.DEPO (3376)
EsquireSolutions.com

MONICA BUESCHER, M.D.                                                 March 21, 2022
Hammons vs University of Maryland Medical System

| | |
|---|---|
| 1 | DEPOSITION ERRATA SHEET                     Page 6 of 6 |
| 2 | Page No. 114 Line No. 13 Change to: "and" to "an" |
| 3 | |
| 4 | Reason for change: Transcription error |
| 5 | Page No. 119 Line No. 9 Change to: add "Maryland" |
| 6 | after "University of" |
| 7 | Reason for change: Clarification |
| 8 | Page No. 126 Line No. 14 Change to: add "for" after |
| 9 | "chance"; move "to give" after "Adashek" |
| 10 | Reason for change: Clarification |
| 11 | Page No. 130 Line No. 2 Change to: "or" to "was" |
| 12 | |
| 13 | Reason for change: Transcription error |
| 14 | Page No. 131 Line No. 17 Change to: "is" to "are" |
| 15 | |
| 16 | Reason for change: Transcription error |
| 17 | Page No.____ Line No.____ Change to: |
| 18 | |
| 19 | Reason for change: |
| 20 | SIGNATURE: _____   DATE: 4-21-2022 |
| 21 | MONICA BUESCHER, M.D. |

