# Exhibit 2

1               UNITED STATES DISTRICT COURT

2              FOR THE DISTRICT OF MARYLAND

3

4    JESSE HAMMONS,                    )

5         Plaintiff,                   )

6         -v-                          ) Case No.

7    UNIVERSITY OF MARYLAND MEDICAL ) 1:20-cv-02088-DKC

8    SYSTEM CORPORATION, et al.        )

9         Defendants.                  )

10

11

12        Videotaped Deposition of Gail P. Cunningham

13                     Towson, MD

14              Thursday, April 14, 2022

15                     9:00 a.m.

16

17

18   Job No:  J8078725

19   Pages:   1-308

20   Reported by:  Kenneth Norris

21



1          Deposition of Gail P. Cunningham

2          Taken at:

3

4          UNIVERSITY OF MARYLAND

5          ST. JOSEPH MEDICAL CENTER

6          7601 Osler Drive

7          Towson, MD 21204

8          Telephone: (410)328-8667

9

10

11

12

13

14          Pursuant to Notice, before Kenneth Norris, a

15     Professional Reporter and Notary Public in and for the

16     State of Maryland.

17

18

19

20

21



```
 1   APPEARANCES:

 2        ON BEHALF OF THE PLAINTIFF:

 3        EDWARD J. DELMAN, ESQUIRE

 4             Patterson, Belknap, Webb & Tyler LLP

 5             1133 Avenue of the Americas

 6             New York, NY 10036

 7             Telephone(212)336-2000

 8             E-mail: edelman@pbwt.com

 9

10

11        ON BEHALF OF THE DEFENDANT, UNIVERSITY OF

12        MARYLAND MEDICAL SYSTEM CORPORATION:

13        PAUL A. WERNER, ESQUIRE

14             Sheppard, Mullin, Richter & Hampton LLP

15             2099 Pennsylvania Avenue, Suite 100

16             Washington, DC 20006

17             (Telephone)202-767-1900

18             E-mail:  pwerner@sheppardmullin.com

19

20             VIDEOGRAPHER: KIM JOHNSON

21
```



Case 1:20-cv-02088-DKC   Document 111-2   Filed 08/15/22   Page 5 of 38
DR. GAIL P. CUNNINGHAM                                    April 14, 2022
Hammons vs University of Maryland Medical System                      4

```
 1            CONTENTS

 2  EXAMINATION OF Gail P. Cunningham              Page

 3  By Mr. Delman                                    8

 4

 5

 6

 7

 8

 9

10  Exhibits                                       Page

11  Exhibit   1    Articles of organization of     37

12                 Northeastern Maryland Regional

13                 Health System

14  Exhibit   2    Articles of amendment from       37

15                 Northeastern Maryland Regional

16                 Health System

17  Exhibit   3    Form 990 for USMJ from 2017      39

18  Exhibit   4    Asset purchase agreement         41

19  Exhibit   5    Second amendment and restated    43

20                 Offering agreement for

21                 St. Joseph's Medical center
```



| 1  | Exhibit | 6  | Catholic identity agreement        | 60  |
| 2  | Exhibit | 7  | Minutes from Institutional         | 64  |
| 3  |         |    | Ethics Committee dated 3/19/2019   |     |
| 4  | Exhibit | 8  | Hysterectomy spreadsheet           | 87  |
| 5  | Exhibit | 9  | E-mail chain from November, 2019   | 105 |
| 6  | Exhibit | 10 | Printout of Catholic identity and  | 120 |
| 7  |         |    | Ethics review data analysis        |     |
| 8  |         |    | Spreadsheet                        |     |
| 9  | Exhibit | 11 | E-mail between Keith Riddle and    | 126 |
| 10 |         |    | Dr. Monica Buescher                |     |
| 11 | Exhibit | 12 | Document of Dr. Sewell's           | 128 |
| 12 |         |    | Comments                           |     |
| 13 | Exhibit | 13 | Document entitled Transgender      | 196 |
| 14 |         |    | Issues in Catholic Health Care     |     |
| 15 | Exhibit | 14 | E-mail dated November, 2014        | 203 |
| 16 | Exhibit | 15 | E-mail chain starting              | 216 |
| 17 |         |    | October 2018                       |     |
| 18 | Exhibit | 16 | E-mail chain starting              | 231 |
| 19 |         |    | January 14, 2020                   |     |
| 20 | Exhibit | 17 | Defendant's responses and          | 236 |
| 21 |         |    | Objections to Plaintiff's          |     |



Case 1:20-cv-02088-DKC   Document 111-2   Filed 08/15/22   Page 7 of 38
DR. GAIL P. CUNNINGHAM                                    April 14, 2022
Hammons vs University of Maryland Medical System                        6

```
 1                    First set of Interrogatories

 2   Exhibit   18   Plaintiff's complaint              247

 3   Exhibit   19   Audio recording                    266

 4   Exhibit   20   Audio recording                    267

 5   Exhibit   21   E-mail dated January 13, 2020      287

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21
```



```
 1                     P R O C E E D I N G S

 2

 3              VIDEOGRAPHER: Here begins the video-recorded

 4   deposition of Dr. Gail Cunningham taken in the matter

 5   of Hammons versus University of Maryland Medical

 6   System Corporation in the U.S. District Court of

 7   Maryland, Case No. 1:20-cv-02088.

 8              Today's date is April 14, 2022.  The time is

 9   9:00 a.m.

10              This deposition is being held at 7601 Osler

11   Drive, Towson, Maryland.

12              The court reporter is Kenneth Norris.  The

13   video camera operator is Kim Johnson, both on behalf

14   of Esquire.

15              Will counsel please introduce yourselves and

16   state who you represent.

17              MR. DELMAN:  This is Edward Delman from

18   Patterson, Belknap, Webb & Tyler representing the

19   Plaintiff Jesse R. Hammons.

20              MR. WERNER:  Paul Werner of Sheppard Mullin

21   for the Defendants.
```



1          VIDEOGRAPHER:  Attorneys on Zoom?

2          No one?  Okay.

3          Will the court reporter please swear the

4    witness?

5    Whereupon,

6                    Gail P. Cunningham

7    A witness of lawful age, after being duly sworn to

8    tell the truth, the whole truth and nothing but the

9    truth, testified as follows:

10                   EXAMINATION:

11   BY MR. DELMAN:

12      Q.   Dr. Cunningham, can you please state your

13   name for the record?

14      A.   Sure.  Gale Patricia Cunningham.

15      Q.   And, Dr. Cunningham, have you ever been

16   deposed before?

17      A.   Yes.

18      Q.   In what instances have you been deposed

19   before?

20      A.   As a defendant witness in malpractice cases,

21   maybe three to five times.



1        A.    Go ahead.

2        Q.    According to subsection E UMMS has the power

3    and authority to elect all of the elected directors

4    pursuant to a nomination process?

5              MR. WERNER:  Object to the form.

6              THE WITNESS:  If the member means UMMS, yes.

7    BY MR. DELMAN:

8        Q.    Now, if you'll just turn back to Exhibit 4,

9    please?

10             MR. WERNER:  Are we done with 5?

11             MR. DELMAN:  We might come back to it.

12   BY MR. DELMAN:

13       Q.    And turn to page 916.  Is that right?  Yes.

14   Look at Subsection C.

15             MR. WERNER:  Of 12.16, is that what we're

16   talking about?

17             MR. DELMAN:  Correct.

18             THE WITNESS:  Okay.

19   BY MR. DELMAN:

20       Q.    Okay.  So just according to Section C,

21   Subsection C, the UMSJ board is the -- strike that.



1              According to Subsection C, the board of UMSJ

2     Health System is also the board of SJMC?

3              MR. WERNER:  Object to the form.

4              THE WITNESS:  Yes.

5     BY MR. DELMAN:

6         Q.   As far as you're aware, UMMS still retains

7     the power to directly appoint two members to the UMSJ

8     and SJMC boards?

9         A.   As far as I know.

10        Q.   Do you know who those members are currently?

11        A.   Dr. Lisa Rowan, which is -- they've had some

12    board turnover recently.  I'm just trying to remember.

13             It had been the dean of the medical school.

14    Now it's Dr. Lisa Rowan and -- I'm not sure of the

15    other member right now.  It may come to me.

16        Q.   I'm sorry.  Just going to 915, the page

17    prior, it's Roman numeral 5.

18        A.   Yes.

19        Q.   It says here that apart from the

20    representative of the Archdiocese, the CEO, and the

21    two directly appointed voting members, all other



1   members shall be appointed by UMMS pursuant to a

2   nomination process?

3          MR. WERNER:  Object to the form.

4          THE WITNESS:  Yes.

5   BY MR. DELMAN:

6      Q.   Do you have any reason to believe that

7   that's no longer the case?

8      A.   No.

9      Q.   You don't know who those members are off the

10  top of your head?

11     A.   The two UMMS members?

12     Q.   No.  The members who are not either

13  ex officio representatives of the Archdiocese or the

14  two UMMS members.

15     A.   I could name some of them.

16     Q.   Do you have any -- do you have any sense of

17  approximately what percentage of the board those

18  members constitute?

19     A.   Probably between half and three quarters.

20     Q.   As we discussed previously, all decisions by

21  the board of UMSJ must be approved by UMMS; right?

1             MR. WERNER:  Object to the form.

2             THE WITNESS:  That's what it states, yes.

3     BY MR. DELMAN:

4         Q.   And as you discussed, you have no reason to

5     believe that's not the case?

6         A.   Correct.

7         Q.   If you will turn with me to on the same

8     exhibit, Exhibit 4 -- Exhibit 4 to 963.  So we're

9     looking at Exhibit F, which is titled UMMS's reserved

10    powers; right?

11        A.   Yes.

12        Q.   I think just for efficiency sake, please

13    feel free to just read through the three pages of that

14    exhibit, and then we can talk.

15        A.   Okay.

16        Q.   So, according to the asset purchase

17    agreement, UMMS has reserved certain powers for

18    itself; right?

19            MR. WERNER:  Object to the form.

20            THE WITNESS: Yes.

21    BY MR. DELMAN:



DR. GAIL P. CUNNINGHAM                                    April 14, 2022
Hammons vs University of Maryland Medical System                      52

1        Q.   For example, UMMS has to approve any

2    amendments to USMJ Health Systems' articles or

3    organizational operating agreement?

4             MR. WERNER:  Object to the form.

5    BY MR. DELMAN:

6        Q.   And UMMS has to approve of USMJ's annual

7    budget?

8             MR. WERNER:  Object to the form.

9             THE WITNESS:  Yes.

10   BY MR. DELMAN:

11       Q.   Does the annual budget include the salaries

12   and compensation for all employees of USMJ Health

13   System?

14       A.   I believe so.

15       Q.   And UMMS has to approve of UMSJ Heath

16   System's strategic plans; right?

17            MR. WERNER:  Object to form.

18            THE WITNESS:  Yes.

19   BY MR. DELMAN:

20       Q.   Do you know what this document means by

21   strategic plans?



Case 1:20-cv-02088-DKC   Document 111-2   Filed 08/15/22   Page 15 of 38
DR. GAIL P. CUNNINGHAM                                    April 14, 2022
Hammons vs University of Maryland Medical System              53

1        A.   Yes.  Each hospital has a five-year

2    strategic plan or three years, depends on -- a

3    five-year strategic plan as approved by the board and

4    then approved by UMMS.

5        Q.   What sorts of information is in the

6    strategic plan?

7        A.   Anything from quality goals to expansion

8    goals, you know.  Partnership goals.  Could be a

9    digital health strategy, an array of activities across

10   the hospital that would be strategic usually set with

11   some metrics or targets.

12       Q.   Would it ever involve any planned or

13   proposed changes in policies and procedures?

14       A.   It's not that specific, no.

15       Q.   UMMS also has to approve any material

16   additions, expansions, revisions or deletions of the

17   health care services not an approved budget or

18   strategic plan; right?

19            MR. WERNER:  Object to the form.

20            THE WITNESS:  Yes.

21   BY MR. DELMAN:



DR. GAIL P. CUNNINGHAM                                        April 14, 2022
Hammons vs University of Maryland Medical System                        54

```
1        Q.   And UMMS has also reserved the power to make

2    UMSJ Health System take certain actions without prior

3    approval of the board; right?

4              MR. WERNER:   Object to the form.

5              THE WITNESS:  Yes.

6    BY MR. DELMAN:

7        Q.   For example, UMMS can appoint and remove

8    UMSJ Health System's CEO; right?

9              MR. WERNER:   Object to the form.

10             THE WITNESS:  Yes.

11   BY MR. DELMAN:

12       Q.   And UMMS can add, expand, revise, or delete

13   certain health care services provided by UMSJ Health

14   System?

15             MR. WERNER:   Object to the form.

16             THE WITNESS:  Yes.

17   BY MR. DELMAN:

18       Q.   UMMS can make UMSJ Health Systems submit

19   corrective action plans if performance and financial

20   targets aren't met?

21             MR. WERNER:   Object to the form.
```



DR. GAIL P. CUNNINGHAM                              April 14, 2022
Hammons vs University of Maryland Medical System                    55

```
1              THE WITNESS:  Yes.

2   BY MR. DELMAN:

3      Q.   And it can enforce those corrective action

4   plans?

5              MR. WERNER:  Object to the form.

6              THE WITNESS:  Yes.

7   BY MR. DELMAN:

8      Q.   Do you have any reason to believe that UMMS

9   no longer holds any of those reserved powers?

10     A.   No.

11     Q.   Are you aware of any other powers that UMMS

12  exercises over the UMSJ Health System or SJMC?

13             MR. WERNER:  Object to the form.

14             THE WITNESS:  No.

15  BY MR. DELMAN:

16     Q.   Now, UMMS' 2012 acquisition of St. Joseph

17  was contingent on the approval from the Roman Catholic

18  Church; right?

19     A.   Yes.

20     Q.   And as part of the acquisition, UMMS

21  committed to continuing to operate SJMC in a manner
```



Case 1:20-cv-02088-DKC   Document 111-2   Filed 08/15/22   Page 18 of 38
DR. GAIL P. CUNNINGHAM                                    April 14, 2022
Hammons vs University of Maryland Medical System                      56

1   consistent with Catholic values and principles?

2           MR. WERNER:  Object to the form.

3   BY MR. DELMAN:

4       Q.   Now, are you aware that UMMS contractually

5   promised to ensure that St. Joseph establish and

6   maintain certain fundamentals in order to hold SJMC

7   accountable for its Catholic identity?

8           MR. WERNER: Object to the form.

9           THE WITNESS:  No.

10  BY MR. DELMAN:

11      Q.   Are you aware that one of those fundamentals

12  is that the ERDs is the operations lines of

13  St. Joseph?

14      A.   Yes.

15          MR. WERNER:  Object to the form.

16  BY MR. DELMAN:

17      Q.   And that one of those fundamentals is that

18  UMSJ Health Systems' Board establishes a committee

19  charged with overseeing the integration of the

20  Catholic mission into St. Joseph's structures,

21  policies, programs and practices?



1            MR. WERNER:  Object to the form.

2   BY MR. DELMAN:

3       Q.   Now, do you have any reason to believe that

4   the requirements set forth in the Catholic identity

5   agreement do not reflect the present reality of

6   operations at St. Joseph?

7            MR. WERNER:  Object to the form.

8            THE WITNESS:  No reason to think so.

9   BY MR. DELMAN:

10      Q.   And is it fair to say that physician

11  compliance with ERDs was the largest part of the focus

12  when UMMS purchased St. Joseph?

13           MR. WERNER:  Object to the form.

14           THE WITNESS:   When you -- I don't know.  I

15  don't know the physician complying with the ERDs was

16  the primary focus.

17  BY MR. DELMAN:

18      Q.   This is UMMS 817 going to be marked as

19  Plaintiff's Exhibit 7.

20           (Plaintiff's Exhibit No. 7 was thereupon

21  marked for identification.)



```
 1   BY MR. DELMAN:

 2        Q.    Dr. Cunningham, I'm showing you minutes from

 3   the institutional ethics committee dated March 19th of

 4   2019.  Do you see that?

 5        A.    Yes.

 6        Q.    Do you sit on the ethics committee?

 7        A.    I do.

 8        Q.    Do you recall if you were present for this

 9   meeting on March 19th, 2019?

10        A.    It doesn't have me listed as present.  So I

11   will presume I was not.

12        Q.    Are meetings [sic] also kept for meetings of

13   the institutional ethics committee?

14        A.    Minutes?

15             MR. WERNER:  Object to the form.

16   BY MR. DELMAN:

17        Q.    Minutes, yes?

18        A.    So far as I know, yes.

19        Q.    If you'll turn to the back side, do you see

20   a paragraph that starts with Dr. Rossiter?

21        A.    Um-um.
```



DR. GAIL P. CUNNINGHAM                                          April 14, 2022
Hammons vs University of Maryland Medical System                        66

1          Q.   And the document says here that Dr. Rossiter

2    mentioned that when a physician signs on, he signs to

3    all of the ERDs and that this was the largest part of

4    the focus when UMMS purchased St. Joseph.

5               MR. WERNER:   Object to the form.

6    BY MR. DELMAN:

7          Q.   Do you see that?

8          A.   Yes.   So Dr. Rossiter was the chief of OB at

9    the time, and that might have been her perception.

10         Q.   Do you have any reason to believe that that

11   perception was incorrect?

12              MR. WERNER:   Object to the form.

13              THE WITNESS:   Well, I know that there were

14   many other parts of the Catholic identity agreement

15   that were beyond the ERDs.

16   BY MR. DELMAN:

17         Q.   So, Dr. Cunningham, based on the agreements

18   we've reviewed, do you agree that St. Joseph does not

19   have the power to decide that it will no longer adhere

20   to and operationalize the ERDs?

21              MR. WERNER:   Object to the form.



1              THE WITNESS:  It's such an unfathomable

2    question.

3              I imagine in the -- per the legal documents

4    that would be the case.

5    BY MR. DELMAN:

6         Q.   And do you agree that the majority or at

7    least half of St. Joseph's board is selected either

8    directly or following a nomination process by UMMS?

9              MR. WERNER:  Object to the form.

10             THE WITNESS:  It's not quite half.  It's

11   depending on the number.

12   BY MR. DELMAN:

13        Q.   But a significant number?

14        A.   A significant number, yes.

15        Q.   Do you agree that St. Joseph lacks the power

16   to decide that it will no longer maintain a Catholic

17   identity committee?

18             MR. WERNER:  Object to the form.

19             You're just asking for a legal conclusion.

20   She's no here testifying as a lawyer.

21             THE WITNESS:  Yes.  I imagine if the legal



DR. GAIL P. CUNNINGHAM                                    April 14, 2022
Hammons vs University of Maryland Medical System                    68

 1   documents are written, that's the case.  But, again,

 2   I'm not an attorney.

 3   BY MR. DELMAN:

 4        Q.    Going back to the documents.

 5              Oh, I'll ask, do you believe that St. Joseph

 6   would face -- do you believe that St. Joseph would be

 7   free to no longer maintain a Catholic identity

 8   committee, if it wanted to?

 9              MR. WERNER:  Object to the form.

10              THE WITNESS:  No. It's one of our

11   obligations.

12   BY MR. DELMAN:

13        Q.   And do you believe that St. Joseph would be

14   free to no longer hire and have a vice president for

15   admission integration, if it wanted to?

16              MR. WERNER:  Objection to the form.

17              THE WITNESS:  No.  It's part of the

18   agreement.

19   BY MR. DELMAN:

20        Q.   And would St. Joseph be free to no longer

21   have an ethics committee if it wanted to?



DR. GAIL P. CUNNINGHAM                                        April 14, 2022
Hammons vs University of Maryland Medical System                          216

1        A.    Right.

2        Q.    This is UMMS 402, Exhibit 15.

3              (Plaintiff's Exhibit No. 15 was thereupon

4    marked for identification.)

5    BY MR. DELMAN:

6        Q.    Dr. Cunningham, I'm now showing you an

7    e-mail chain from October 2018.  Is this also one of

8    the e-mail chains that you reviewed in preparation for

9    this deposition?

10       A.    Yes.

11       Q.    And so this e-mail chain concerns a proposed

12   hysterectomy for a transgender patient; right?

13       A.    Correct.

14       Q.    Let's turn to 406.  And this bottom e-mail

15   is from Samantha McDougal.  That's a -- she's a

16   surgical scheduler; right?

17       A.    Correct.

18       Q.    And so she was the person that surgeons

19   would call when they wanted to schedule a procedure?

20       A.    Yes.  Probably one of, but yes.

21       Q.    And who is Kate Barbara?



1    A.   She's the Kate that we talked about before,

2  now Kate Christner, who is the business manager for

3  the surgical services.

4    Q.   Right.

5         And, so, the situation in this particular

6  e-mail arose because the scheduling department wasn't

7  sure if the proposed hysterectomy could take place in

8  a Catholic hospital; right?

9    A.   Correct.

10   Q.   Now, did -- so you said her marital name is

11 Christner?

12   A.   Yes.

13   Q.   So do you know why the issue was first

14 escalated to Ms. Christner?

15   A.   I suspect she is probably the boss of

16 Samantha.

17   Q.   And so in this case it was first elevated to

18 you at the time from Ms. Barbara, and then from there

19 to Dr. Marion?

20   A.   Yes.

21   Q.   Who was at the time the chief of surgery?



Case 1:20-cv-02088-DKC   Document 111-2   Filed 08/15/22   Page 26 of 38
DR. GAIL P. CUNNINGHAM                                    April 14, 2022
Hammons vs University of Maryland Medical System                      218

 1      A.   Yes.

 2      Q.   And still is the chief of surgery, I

 3  believe?

 4      A.   Yes.

 5      Q.   And so, do schedulers typically get the

 6  chief of surgery involved in whether proposed

 7  procedures should be posted?

 8          MR. WERNER:  Object to the form.

 9          THE WITNESS:  I think we discussed this

10  before.  He doesn't get involved in every case, no.

11  BY MR. DELMAN:

12      Q.   And so this hysterectomy in particular was

13  escalated to the chief of surgery because it involved

14  a transgender patient; right?

15      A.   Correct.

16      Q.   So now Keith Riddle explains in this e-mail

17  chain that the proposed hysterectomy would not be

18  allowed to take place if the reason for it was gender

19  reassignment; right?

20      A.   Correct.

21      Q.   And you also agreed that a Catholic hospital



 1  like St. Joe's cannot perform a hysterectomy if the

 2  reason was for gender reassignment?

 3      A.   Correct.

 4      Q.   But -- here, let's -- and on 404, the bottom

 5  of 404 you did write that if there were other medical

 6  indications, the procedure could in fact take place at

 7  St. Joe's; right?

 8      A.   Correct.

 9      Q.   And also Dr. Marion noted that abnormal

10  uterine bleeding was the primary diagnosis for this

11  procedure?

12      A.   Yes.

13      Q.   And what eventually happened here was that

14  the procedure was cancelled and then posted with

15  abnormal uterine bleeding as a preoperative diagnosis;

16  right?

17      A.   Correct.

18      Q.   And the surgeon for this one was

19  Dr. Adashek?

20      A.   Correct.

21      Q.   And he did, in fact, in the end perform this



Case 1:20-cv-02088-DKC   Document 111-2   Filed 08/15/22   Page 28 of 38
DR. GAIL P. CUNNINGHAM                                          April 14, 2022
Hammons vs University of Maryland Medical System                      220

 1  procedure here at St. Joe's?

 2       A.   I -- to my knowledge, yes, I don't know.

 3       Q.   Okay.  And assuming he did in fact perform

 4  it here, that would be because of normal uterine

 5  bleeding as a medical indication; right?

 6       A.   Correct.

 7       Q.   And would you say that generally abnormal

 8  uterine bleeding is a life-threatening condition?

 9       A.   It can be.

10       Q.   In what circumstances?

11       A.   Depending on the degree and the inability to

12  manage it in other ways.

13       Q.   Would it require such excessive blood loss

14  that the person needs to go to the hospital?

15            MR. WERNER:  Object to the form.

16            THE WITNESS:  Not necessarily.

17  BY MR. DELMAN:

18       Q.   Do you recall if this patient was assessed

19  to ensure that his abnormal uterine bleeding was

20  life-threatening?

21            MR. WERNER:  Object to the form.



Case 1:20-cv-02088-DKC  Document 111-2  Filed 08/15/22  Page 29 of 38
DR. GAIL P. CUNNINGHAM                                    April 14, 2022
Hammons vs University of Maryland Medical System                      221

1            THE WITNESS:  I don't know.  You would take

2    the surgeon's word for it.

3    BY MR. DELMAN:

4        Q.   And so it would have been Dr. Adashek who

5    would make that assessment?

6        A.   Yes.

7        Q.   Would Dr. Marion have been aware of that

8    assessment?

9        A.   He would be aware that Dr. Adashek changed

10   the indication for surgery and he would be presuming

11   like with all other surgeries that the indication is

12   honest and true.  That's redudant.  That it's true.

13       Q.   And, again, just to confirm, the context of

14   life-threatening doesn't appear anywhere in this

15   e-mail thread; right?

16       A.   No.

17       Q.   And, Dr. Cunningham, we discussed that you

18   sit on the ethics committee; right?

19       A.   Correct.

20       Q.   And did you sit on the ethics committee in

21   2018?



Case 1:20-cv-02088-DKC  Document 111-2  Filed 08/15/22  Page 30 of 38
DR. GAIL P. CUNNINGHAM                                    April 14, 2022
Hammons vs University of Maryland Medical System                    222

1        A.    Yes.

2        Q.    And also in 2019?

3        A.    Yes.

4        Q.    Do you recall if this 2018 case here was

5   ever discussed by the ethics committee?

6        A.    I don't know.  I would have to see the

7   minutes.

8        Q.    If it were discussed, it would be reflected

9   in the minutes?

10       A.    I believe so.

11       Q.    Is there any reason why the minutes would

12   not be kept for a meeting of the ethics committee?

13       A.    Not that I can think of.

14       Q.    And so, based on this e-mail chain here,

15   fair to say that medical personnel at St. Joe's cannot

16   perform hysterectomies for a transgender man for the

17   purpose of gender affirmation?

18       A.    That's correct.

19            MR. WERNER:  Object to the form.

20            THE WITNESS:  That's correct.

21   BY MR. DELMAN:



```
 1              REPORTER'S CERTIFICATE

 2              State of Maryland

 3              County of Baltimore, to wit:

 4                   I, KENNETH NORRIS, a Notary Public of

 5      the State of Maryland, County of Baltimore, do hereby

 6      certify that the within named witness personally

 7      appeared before me at the time and place herein set

 8      out, and after having been duly sworn by me, according

 9      to law, was examined.

10                   I further certify the examination was

11      recorded stenographically by me and this transcript is

12      a true record of the proceedings.

13                   I further certify that I am not of

14      counsel to any of the parties, nor in any way

15      interested in the outcome of this action.

16                   As witness my hand and notarial seal

17      this 14th day of April, 2022.

18                        _____

19                             KENNETH NORRIS

20                             Notary Public

21      My Commission Expires: 7-22-22
```



```
 1   Reference No.: 8078725

 2

 3   Case:  Hammons vs University of Maryland Medical System

 4

          DECLARATION UNDER PENALTY OF PERJURY
 5
          I declare under penalty of perjury that
 6   I have read the entire transcript of my Depo-
     sition taken in the captioned matter or the
 7   same has been read to me, and the same is
     true and accurate, save and except for
 8   changes and/or corrections, if any, as indi-
     cated by me on the DEPOSITION ERRATA SHEET
 9   hereof, with the understanding that I offer
     these changes as if still under oath.
10

11        _____  _____

12             Dr. Gail P. Cunningham

13

14             NOTARIZATION OF CHANGES

15                  (If Required)

16

17   Subscribed and sworn to on the _____ day of

18

19   _____, 20_____ before me,

20

21   (Notary Sign)_____

22

23   (Print Name)                    Notary Public,

24

25   in and for the State of _____
```



Reference No.: 8078725

Case:· Hammons vs University of Maryland Medical System

Page No. ___1__ Line No. __14___ Change to: From Gale to Gail

_____

Reason for change: Incorrect spelling _____

Page No. __30___ Line No. _12___ Change to: Not sure if that is USMJ

or meant to be UMMS?

Reason for change: _____

Page No. 40_____ Line No. _21___ Change to: UMS to UMMS

_____

Reason for change: Incorrect Spelling

Page No. 41_____ Line No. 9_____ Change to: Ums to Umms

_____

Reason for change: Incorrect Spelling

Page No.57_____ Line No.16_____ Change to: Father Sobey to Father

Asobi_____

Reason for change: Incorrect Spelling

Page No.68_____ Line No.15_____ Change to: Mission to Admission_____

_____

Reason for change: Incorrect Spelling _____

*Page No.71_____ Line No._____ Change to: Management to Anesthesia_____

_____

Reason for change: Wrong Wording _____

SIGNATURE: _____ DATE: _5/25/2022_

Dr. Gail P. Cunningham

Reference No.: 8078725

Case:· Hammons vs University of Maryland Medical System

Page No. <u>73</u>____ Line No. <u>19</u>____ Change to:<u> DPA to BPA_____</u>

_____

Reason for change: <u>Incorrect Spelling_____</u>

Page No. <u>74</u>____ Line No.<u>6</u>____ Change to:<u> DPA to BPA_____</u>

_____

Reason for change: <u>Incorrect Spelling_____</u>

Page No.<u> 74</u>____ Line No. <u>10</u>____ Change to: <u>Repair to Rare_____</u>

_____

Reason for change:<u> Incorrect wording_____</u>

*Page No. <u>101</u>____ Line No. <u>16</u>____ Change to: <u> Sobey to Asobi_____</u>

_____

Reason for change: <u>Incorrect Spelling_____</u>

Page No.<u> 118</u>____ Line No.<u> 18</u>____ Change to:<u> Sobey to Asobi_____</u>

_____

Reason for change:<u>__ Incorrect Spelling_____</u>

Page No.<u> 119</u>____ Line No. <u>6</u>____ Change to:<u> Sobey to Asobi_____</u>

_____

Reason for change:<u>_ Incorrect Spelling_____</u>

Page No.<u> 119</u>____ Line No. <u>15</u>____ Change to: <u>Employee to Employed_____</u>

_____

Reason for change: <u>Incorrect Wording_____</u>

SIGNATURE: _____ DATE: <u>5/25/2022</u>

Dr. Gail P. Cunningham

Page No. <u>120</u>     Line No. <u>1</u>     Change to: <u>Touhey to Tewey</u>

_____

Reason for change: Incorrect Spelling_____

Page No. <u>148</u>     Line No. <u>12</u>     Change to: <u>Fetal to Futile</u>

_____

Reason for change:_____

*Page No. <u>148</u>     Line No. <u>13</u>     Change to: <u>phone</u>

_____

Reason for change:_____

Page No. <u>149</u>     Line No. <u>16</u>     Change to: <u>Nelapas to  Manlapaz</u>

_____

Reason for change: <u>Incorrect Spelling</u>

Page No. <u>160</u>     Line No. <u>9</u>     Change to: <u>Eminence to Imminence</u>

_____

Reason for change: <u>Incorrect Spelling</u>

Page No. <u>161</u>     Line No. <u>18</u>     Change to: <u>Sobey to Asobi</u>

_____

Reason for change: <u>Incorrect Spelling</u>

Page No. <u>172</u>     Line No. <u>14</u>     Change to: <u>OBNR to OBGYN's</u>

_____

Reason for change: Incorrect Spelling

Page No. <u>173</u>     Line No. <u>19</u>     Change to: <u>Feel to be</u>

_____

Reason for change: <u>Incorrect wording</u>

SIGNATURE: _Gail P. C_____ DATE: 5/25/2022

Dr. Gail P. Cunningham

Page No. __186__ Line No. _20__ Change to: _Can to Can't_____

_____

Reason for change: _Incorrect Wording_____

*Page No. 188_____ Line No. _4_____ Change to: __It comes from_____

_____

Reason for change: _Incorrect Wording_____

*Page No. _188___ Line No. _21____ Change to: _Order to Corner_____

_____

Reason for change: _Incorrect Wording_____

*Page No. _189___ Line No._____ Change to:_____

_____

Reason for change:_____

Page No. _202_____ Line No. _2____ Change to: _I to In_____

_____

Reason for change: _Incorrect Wording_____

Page No. _211___ Line No. __21__ Change to: __Sobey to Asobi_____

_____

Reason for change: _Incorrect Spelling_____

Page No. _220____ Line No. __4__ Change to: _Normal to Abnormal_____

_____

Reason for change: _Incorrect Wording_____

Page No. _225___ Line No. _2____ Change to: _Remove F_____

_____

Reason for change: _Incorrect Spelling_____

Page No. _226_____ Line No. _2____ Change to: _Marks to Marx_____

_____

Reason for change: _Incorrect Spelling_____

Page No. _232___ Line No. _21____ Change to: _BPH to BPA_____

_____

Reason for change: Incorrect Spelling _____

Page No. 233____Line No. 10____Change to: EPIQ to EPIC_____

_____

Reason for change: Incorrect Spelling _____

Page No. 246____Line No. 7____Change to: Incorrect Spelling_____

_____

Reason for change: Incorrect Spelling _____

*Page No. 268_____Line No. 21___Change to: and he_____

_____

Reason for change: _____

Page No. 274____Line No. 4____Change to: Kuhn to Kunz_____

_____

Reason for change: Incorrect Spelling _____

Page No. 282____Line No. 10____Change to: Hough to Hodes_____

_____

Reason for change: Incorrect Spelling _____

Page No. 282____Line No. 12____Change to: Hough to Hodes_____

_____

Reason for change: Incorrect Spelling _____

Page No. 298____Line No. 8____Change to: Sobey to Asobi_____

_____

Reason for change: Incorrect Spelling _____

Page No. 298____Line No.14____Change to: Sobey to Asobi_____

_____

Reason for change: Incorrect Spelling _____

SIGNATURE: _____ DATE: 5/25/2022

Dr. Gail P. Cunningham

Page No. 298     Line No. 21     Change to: Sobey to Asobi

_____

Reason for change: Incorrect Spelling _____

Page No. 299     Line No. 15     Change to: Sobey to Asobi

_____

Reason for change:_____

Page No._____Line No._____Change to:_____

_____

Reason for change:_____

Page No._____Line No._____Change to:_____

_____

SIGNATURE:_____DATE: 5/25/2022

Dr. Gail P. Cunningham